IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. RDB-14-0186 |
| | * | |
| RICHARD BYRD, *et al.*, | * | |

\* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Pending before the Court is *pro se* Movant William C. Bond's ("Mr. Bond")[1] "Motion to Correct and/or Reconsider the Court's Order of October 31, 2014 with Expedition Request" (the "Motion"). (ECF No. 107.) Consistent with Local Rule 105.6, a hearing to resolve the Motion is unnecessary. For the reasons set forth below, the Motion is **DENIED**.

Previously, the Court found as moot Mr. Bond's "Motion to Intervene and Correct the Docket and/or Unseal the Attorney Inquiry Hearing with Expedition Request" (ECF No. 98). (*See* ECF No. 100 at 2.) In that motion, Mr. Bond sought an order "making public the 'Attorney

---

[1] Mr. Bond states that he is "the owner of 'Baltimore Corruption Wire,' a Maryland public policy initiative with many followers." (ECF Nos. 98 at 1 & 107 at 5.) It is well established that an entity may not be represented *pro se* by an individual, but may only appear through counsel. *See* Loc. R. 101.1. Mr. Bond, who is not admitted to practice before this Court will not be permitted to intervene on behalf of any organization. *See, e.g. United States v. Carmichael,* (M.D. Ala. 2004) (discussing generally the limited grounds upon which non-party individuals and organizations may seek to intervene in criminal cases). I note that the right of a non-party individual to intervene in a criminal case is unsettled, and I do not address that issue in this Memorandum. *See, e.g. United States v. Collins*, 2013 WL 4780927, at *2 (E.D. Wis. Sept. 5, 2013) (expressing doubt about whether members of the public are permitted to intervene in a criminal case to vindicate rights grounded in the First Amendment); *In re Application of New York Times*, 708 F. Supp. 603, 604 (S.D.N.Y. 1989) ("Given the clear inapplicability of the rules of civil procedure to criminal cases, the Court is constrained to deny the application for limited intervention under Rule 24 of the Federal Rules of Civil Procedure."); *United States v. Bromwell*, No. JFM-05-0358, ECF No. 221 (D. Md. July 16, 2009) ("In seeking intervention Bond relies upon Fed. R. Civ. P. 24 . . . [which] has no application in this case, which is a criminal case.").

Inquiry Hearing' transcript and any related information" in the case of *United States v. Richard Byrd, et al.*, No. RDB-14-0186. Mr. Bond noted that there was a discrepancy on the Court's docket related to a hearing that was to be held on September 11, 2014. Upon the Court's review of the docket, but before Mr. Bond's motion became ripe, the Court entered an order to the Clerk "that the docket should reflect (1) the September 1, 2014 hearing that continued the attorney inquiry hearing previously set for that date; and (2) the attorney inquiry hearing held on October 10, 2014." (ECF No. 100 at 1.) The Court further ordered that the electronic recordings and any transcripts of the hearings would remain sealed. (*Id.*)

Mr. Bond requests that the Court reconsider its ruling and that it answer a number of his questions about this case. I decline to reconsider my ruling and will deny the Motion in its entirety.

A U.S. magistrate judge's power to control public access to judicial proceedings and records "falls under the 'additional duties' prong of the Federal Magistrates Act, 28 U.S.C. § 636(b)(3)." *In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283, 289 (4th Cir. 2013). In general, the right of public access to judicial proceedings and documents derives from two independent sources: the First Amendment and the common law. *Id.* at 290. Where the public's right of access derives from the common law, there is a presumption of a right of access to all judicial records and documents, which can be rebutted if "the public's right of access is outweighed by competing interests." *Id.* (citing *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)). The public's right of access under the First Amendment only applies to particular judicial records and documents, and can be overcome by a "compelling governmental interest . . . [that is] narrowly tailored to serve that interest." *Id.* "The common law does not afford as much substantive protection to the interests of the press and

public as the First Amendment does." *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986).

Because it offers more protection, the Court will consider Mr. Bond's request under the First Amendment right of access. In *Press-Enterprise Co. v. Superior Court of California for the County of Riverside*, 478 U.S. 1, 8-9 (1986) ("*Press-Enterprise II*"), the Supreme Court set forth the "two complementary considerations" courts must use in determining the existence of a First Amendment right of access to a criminal proceeding. These considerations are whether the proceeding has "historically been open to the press and general public" (the "historical access" consideration) and whether "public access plays a significant positive role in the functioning of the particular process in question" (the "logic" consideration). *Id.* In this case, the purpose of the hearings was to determine whether the Defendant would be represented by his previously retained counsel or someone else. The Court has no information about whether proceedings such as these, which occur infrequently, have historically been open to the public or not. This prong, therefore, is of little use in determining whether the First Amendment right of access applies.[2] With respect to the "logic" consideration, the Court considers that unlike a criminal trial or some other type of adversarial criminal proceeding where the public's access helps to advance the "community therapeutic value of openness," *Id.* at 13 (internal quotation omitted), the type of hearings that took place in this case would be frustrated by such openness. This factor weighs against a finding that the First Amendment right of access applies.

---

[2] Mr. Bond cites *In re NBC, Inc.*, 828 F.2d 340, 343 (6th Cir. 1987), but the hearings in this case are factually dissimilar from the recusal and attorney conflict hearing in that case. In addition, while the majority in *In re NBC, Inc.* relied almost exclusively on the "logic" consideration of the *Press-Enterprise II* test, the dissent pointed out that it found "no historical basis for public access to the proceedings in question." *Id.* at 354 (noting the seemingly endless variety of motions (and motion hearings) that concern procedural matters that "have no bearing upon the substantive issues in the trial—the guilt or innocence of the accused.").

Attorney inquiry hearings in this district are designed to address a wide variety of problems that can arise between criminal defendants and their counsel. A great majority of these problems can only be addressed by the Court if the parties involved are invited to speak openly and with candor to the Court. This openness would be frustrated if counsel for the Government were permitted to attend the hearings, because the defendant would have to choose between openly explaining his problem with his attorney (in which case the Government may catch a glimpse of his defense strategy and takes steps to frustrate it) and explaining his problem in very general terms (leaving the presiding judge to guess at the nature of the problem and its solution). The same would be true if the public and media were permitted to attend such hearings.[3] For these reasons, I find that the purpose of the hearings in this case would be frustrated if open to the public and the Government. I find that there is not a First Amendment right of access to the hearings held in this case.

Alternatively, assuming that the First Amendment right of access does apply to the hearings in this case, I find that the public's right of access to the hearings is overcome by compelling governmental interests. "Criminal proceedings may be closed to the public without violating First Amendment rights" if a court makes factual findings that:

> (1) closure serves a compelling interest; (2) there is a "substantial probability" that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest.

*In re Washington Post Co.*, 807 F.2d at 392.

---

[3] Contrary to Mr. Bond's suggestion, I do not find "*per se* . . . that attorney inquiry hearings are automatically closed to the public." (ECF No. 107 ¶ 7.) While my observations about the nature of attorney inquiry hearings in this district are general, my findings apply only to the hearings held in this case.

Specifically, I find that Defendant Richard Byrd's Sixth Amendment rights would be undermined if the Court allowed the public or the Government access to the records of these proceedings. I further find that keeping the records of these proceedings under seal is required to safeguard the Defendant's due process rights and ensure that his right to a fair trial will not be jeopardized by the dissemination of confidential information. No alternatives short of sealing will safeguard the Defendant's rights. *See generally Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 379 (1979) ("Closure of pretrial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized.").

In the event that a Court is required to review my factual findings,[4] I will file separately a memorandum setting forth with greater particularity my reasons for keeping these proceedings sealed. The memorandum will be docketed under seal, as suggested in *In re Washington Post Co.*, 807 F.2d at 391 ("[I]f the court concludes that a denial of public access is warranted, the court may file its statement of the reasons for its decision under seal.").

---

[4] In *Under Seal v. Under Seal*, 326 F.3d 479, 485 n.5 (4th Cir. 2003), the Fourth Circuit stated:

> [P]arties dissatisfied with sealing or unsealing orders have at their disposal what is in fact the preferred vehicle for review: petitions for mandamus. Petitions for mandamus have long been recognized as the appropriate vehicle for challenges to cloture and unsealing orders. *Cf. Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ("Mandamus, not appeal, is the preferred method of review for orders restricting press activity related to criminal proceedings."); *In re: Washington Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986) (treating an appeal by a non-party to a district court order sealing documents in a criminal case as a petition for mandamus); *Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi v. Martin*, 556 F.2d 706 (4th Cir. 1977) (noting that "mandamus is the proper remedy to request the relief prayed for here" where appellant, on an interlocutory appeal, challenges a district court protective order); *see also United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998) (treating an interlocutory appeal from a district court's order to seal the record as a petition for mandamus, in light of the fact that mandamus is the proper vehicle for such review).

5

Mr. Bond makes a number of other requests in his Motion (*see* ECF No. 107 ¶¶ 22-25), all of which are denied because he is without any standing to make such requests, and the requests are otherwise without any legal basis.

The Clerk is directed to mail a copy of this Order to Mr. Bond at the address on file with the Court.

January 13, 2015                                                 /s/
Date                                                                         Timothy J. Sullivan
                                                                                 United States Magistrate Judge