**SEARCH WARRANT**

STATE OF ARIZONA

COUNTY OF MARICOPA

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | SEARCH WARRANT No. 2011-001699 |
| | ) | |
| | ) | |
| | ) | |
| Richard BYRD aka | ) | |
| Deandre BYRD | ) | |
| Robert SMITH | ) | |
| Stacie STEWART | ) | |
| | | |
| Defendant(s) | | |

TO ANY PEACE OFFICER IN  COUNTY, STATE OF ARIZONA.

Proof by affidavit having been made this day before me by  I am satisfied that there is probable cause to

believe that

( ) on the person(s)

(X) on the premises known as  and described as  including all the curtilage of said premises and all outbuildings, sheds, garages and any other buildings on the curtilage of the premises, attached or unattached

- 5346 E. Royal Palm Paradise Valley, AZ, further described as a single family residence, which sits on the northwest corner of Royal Palm and 54th Street.  It is a single story structure constructed of brown colored stucco.  There is a front door which faces southeast, towards the street corner.  Above the front door is a large wooden arch providing cover.  There is a circular drive in front of the residence. A (4) car garage sits to the north of the residence and faces north.  The numbers listed on the residence have not been observed.  This residence has been identified as the location where the suspects reside based on numerous surveillances.   The Maricopa County Assessors map program identifies this residence as "5346 E. Royal Palm", mail obtained from the trash identifies this residence as the same also.  The utilities under the known suspect name of Lincoln Davis identify the residence also as 5346 E. Royal Palm.

- "Extra Storage Space" storage locker facility at 4028 N. 7th Street in Phoenix, AZ. locker (A-331).  This facility is on the west side of the street and is an indoor climate controlled storage facility.  It consists of three floors and has light brown painted stucco, and dark

green trim.  Unit A-331 is on the third floor and is a 5' X 5' unit.  There is an office to the south of the storage entrance location.  The number "4028" is identified on the business sign in front of the business.

- 4340 E. Indian School Road, Suite 21. p.o. box 425,.  This is a UPS package delivery and mailbox location.  This business sits on the north side of the street.  This is a strip mall and the different stores are designated by suite numbers and U.P.S. is identified as suite #21 above the front door of the business.

(X) in the vehicle(s) described as

- AZ AJR8574, VIN # 4JGCB75E16A016484, white 2006 Mercedes
- AZ 62L6MC, VIN # 2BXJADA16AV000230, 2010 Can-Am motorcycle
- AZ AMC7192, VIN # WDDNG71X17A044685, silver 2007 Mercedes
- AZ Temp 0N00644, VIN # WBAKB83539CY58273, black 2009 BMW

in the City of Paradise Valley and Phoenix, County of Maricopa , State of Arizona, there is now being possessed or concealed certain person(s), property or things described as:

1. Books, records, receipts, notes, notations, letters, ledgers and any other item, papers, and memoranda, or copies of such items or documents, relating to the ordering, purchase, transportation, possession, and/or distribution of marijuana and/or the producing of marijuana.

2. Address and/or telephone books, rolodex indices, and any papers or items reflecting names, addresses, and/or telephone numbers, pager numbers, fax numbers and/or telex numbers of any persons who may be co-conspirators, sources of supply, customers, financial institutions, or other businesses or persons who may be involved in the illegal possession, distribution, and/or producing of marijuana.

3. Books, records, invoices, receipts, government records, bank statements and records, money drafts, letters of credit, money order and cashiers check receipts, passbooks, bank checks, notes, notations, letters, canceled checks, check registers, safe deposit box records and/or keys, records of real estate transactions, deeds, and any other item, papers and memoranda, or copies of such items or documents, evidencing or tending to show the acquiring or maintaining an interest in, receiving, transferring, transporting, or concealing the existence of any type of asset  and/or the obtaining, secreting, transferring, concealing and/or the expending of money which constitutes the proceeds of illicit drug transactions.

4. United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds and real estate deeds of trust.

5. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, or any other type of image tending to identify co-conspirators, assets, and/or of marijuana.

-2-

6. A usable quantity of marijuana and/or marijuana in cultivation.

7. Paraphernalia for packaging, manicuring, weighing, distributing and using marijuana, including but not limited to, scales, plastic envelopes, grinders, pipes, sniffers, syringes and needles.

8. Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to, utility and telephone bills, canceled envelopes and keys, rental, purchase or lease agreements, or other indicia of ownership, dominion or control of the above described premises and/or vehicles.

9. Electronic equipment referred to in Attachment "One",

10. Any and all other material evidence of violations of ARS13-3405.

(X) and rent receipts, phone bills, utility bills or other indicia of ownership, dominion or control of the above described premises and/or vehicle(s),

which person, property or things:

() is the subject of an outstanding arrest warrant

() were stolen or embezzled

(X) were used as a means for committing a public offense

(X) is being possessed with the intent to use it as a means of committing a public offense

(X) are in the possession of  to whom it was delivered for the purpose of concealing it or preventing it from being discovered

(X) consists of any item or constitutes any evidence which tends to show that the herein described public offense has been committed, or tends to show that a particular person has committed said offense

such being more fully described in the affidavit, to wit:    which offense occurred on or about the day of , 2011, in .

YOU ARE THEREFORE COMMANDED

(X) in the daytime

( ) or nighttime (good cause therefore having been shown)

-3-

to make a search of the above named or described person(s), premises, and vehicle(s) for the herein

above described person(s), property or things, and if you find the same or any part thereof, to arrest

him, or retain such in your custody or in the custody of the agency you represent, as provided by

ARS ' 13-3920 and ' 13-3409(C).

Return this warrant to me with five (5) days of the date thereof, as directed by ARS ' 13-3918.

Given under my hand and dated this ___6th___ day of _March_ , 2011 .

_Monica A Garfinkel_
_____
Judge, Justice of the Peace or Magistrate

Of _____HONORABLE MONICA S. GARFINKEL_____ Court
              MARICOPA COUNTY SUPERIOR COURT

-4-

# ATTACHMENT ONE

(X)        On/In the electric devices described as follow: On/In the electric devices described as follow: Any personal style mobile telephone that may contain the storage of data including, but not limited to, type written notes and photo image/s, other storages devices, as well as voice mail and/or the mobile telephone number, complete history of all data stored within the mobile telephone, including all incoming and outgoing calls, all contact numbers and names, reproduction of all voice messages, voice message access code and all text messages including points of origin and points of receipt, telephone books, telephone numbers and/or names.


(X)     Digital Storage devices

(X)     Computer hardware; described as any and all computer equipment, including any electronic devices, which are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data and include but are not limited to any data-processing hardware, such as central processing units, memory typewriters, and self contained laptop or notebook computers; internal and peripheral storage devices, such as fixed disks, external hard drives, floppy disk drivers and diskettes, tape drives and tapes, optical storage devices, and other memory storage devices; peripheral input/output devices such as,

keyboards, printer, scanners, plotters, video display monitors, and optical readers; and related communications devices such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone generating devices; as well as any device, mechanism, or

-38-

parts that can be used to restrict access to such hardware such as physical keys and locks; computer software; described as any and all information, including any instructions, programs, or program code, stored in the form of electronic, magnetic, optical or other media which are capable of being interpreted by a computer or its related components, and may also include certain data, data fragments, or control characters integral to the operation of computer software, utility programs, compilers, interpreters, communications software, and other programming used or intended for use to communicate with computer components; computer related documentation, passwords and data security devices may be utilized by one engaging in criminal activity in two distinct and important respects:(1) as instrumentalities for the violation of state laws enumerated herein, and (2) as devices used in conjunction with the collection and storage or electronic data and records.  Therefore, the above mentioned computer hardware, software, computer documentation, passwords and data security devices constitute means of committing criminal offenses, and are thus instrumentalities in, as well as evidence of, the violations recited herein and may be retained, examined, analyzed, and tested as evidence and instrumentalities used in the commission of a crime for a reasonable period of time by Arizona Department of Public Safety, Forensic Crimes Unit.

# AFFIDAVIT FOR SEARCH WARRANT

## COUNTY OF MARICOPA

## STATE OF ARIZONA

No. _2011 - 001699_

Your affiant, Detective Tod Kleinman, a peace officer in the State of Arizona, being first duly sworn, upon oath, deposes and says:

That on or about the __6th___ day of _March___ , 2011-, in the County of _Maricopa___ , State of Arizona

() the crime of (was) (is being) committed by  in the following manner:

() an arrest warrant #  was issued for the arrest of .

That the affiant has probable cause to believe and he does believe

that there is now:

() in the possession of

() in and on the premises and building(s) described as , in the County of , including all the curtilage of said premises and all outbuildings, sheds, garages and any other buildings on the curtilage of the premises, attached or unattached

- 5346 E. Royal Palm Paradise Valley, AZ, further described as a single family residence,which sits on the northwest corner of Royal Palm and 54th Street.  It is a single story structure constructed of brown stucco, with a flat roof.  There is a front door which faces southeast, towards the street corner.  There is a circular drive in front of the residence.

- "Extra Storage Space" storage locker facility at 4028 N. 7th Street in Phoenix, AZ. locker (A-331).  This facility is on the west side of the street and is an indoor climate controlled storage facility.  It consists of three floors.  Unit A-331 is on the third floor and is a 5' X 5' unit.

- 4340 Indian School Road, Suite 21. p.o. box 425,.  This is a UPS package delivery and mailbox location.  This business sits on the north side of the street.  This is a strip mall and the different stores are designated by suite numbers and U.P.S. is identified as suite #21.  There is an office to the south of the storage entrance location.

-6-

(X) in the vehicle(s) described as

- AZ AJR8574, VIN # 4JGCB75E16A016484, white 2006 Mercedes
- AZ 62L6MC, VIN # 2BXJADA16AV000230, 2010 Can-Am motorcycle
- AZ AMC7192, VIN # WDDNG71X17A044685, silver 2007 Mercedes
- AZ Temp 0N00644, VIN # WBAKB83539CY58273, black 2009 BMW

certain persons, property or things:

() is the subject of an outstanding arrest warrant #

() which were stolen or embezzled from

() were used as a means for committing

(X) is being possessed with the intent to use as a means of committing

(X) are in the possession of  to whom it was delivered for the purpose of concealing it or preventing
it from being discovered

(X) consists of any item or constitutes any evidence which tends to show that  has been committed,
or tends to show that  has committed

That said person, property or things are described particularly as
follows:

1. Books, records, receipts, notes, notations, letters, ledgers and any other item, papers, and
   memoranda, or copies of such items or documents, relating to the ordering, purchase,
   transportation, possession, and/or distribution of marijuana and/or the producing of
   marijuana.

2. Address and/or telephone books, rolodex indices, and any papers or items reflecting names,
   addresses, and/or telephone numbers, pager numbers, fax numbers and/or telex numbers of
   any persons who may be co-conspirators, sources of supply, customers, financial
   institutions, or other businesses or persons who may be involved in the illegal possession,
   distribution, and/or producing of marijuana.

3. Books, records, invoices, receipts, government records, bank statements and records, money
   drafts, letters of credit, money order and cashiers check receipts, passbooks, bank checks,
   notes, notations, letters, canceled checks, check registers, safe deposit box records and/or

keys, records of real estate transactions, deeds, and any other item, papers and memoranda, or copies of such items or documents, evidencing or tending to show the acquiring or maintaining an interest in, receiving, transferring, transporting, or concealing the existence of any type of asset and/or the obtaining, secreting, transferring, concealing and/or the expending of money which constitutes the proceeds of illicit drug transactions.

4. United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds and real estate deeds of trust.

5. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, or any other type of image tending to identify co-conspirators, assets, and/or of marijuana.

6. Electronic equipment, refer to attachment "One"

7. A usable quantity of marijuana and/or marijuana in cultivation.

8. Paraphernalia for packaging, manicuring, weighing, distributing and using marijuana, including but not limited to, scales, plastic envelopes, grinders, pipes, sniffers, syringes and needles.

9. Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to, utility and telephone bills, canceled envelopes and keys, rental, purchase or lease agreements, or other indicia of ownership, dominion or control of the above described premises and/or vehicles.

10. Any and all other material evidence of violations of ARS    13-3405.

That the following facts establish probable cause for believing that grounds for the issuance of a search warrant for the aforementioned items exist:

1.   During November 2009, your affiant was contacted by Mr. Jeff Ross, Head of Money Laundering Compliance employed by Green Dot Financial Services in California. Ross stated that an individual named Stacie STEWART had purchased pre-paid debit card and from 11/29/2009 until 01/11/2010, over $13,500 in cash was deposited into the associated account. The deposits were from (6) different states including Arizona although Stacie STEWART provided a mailing address in Houston, Texas, while claimed to reside in Arizona.. Green Dot felt this was suspicious and cancelled the debit card on January 4th, 2010 and filed an internal report. No additional funds could be deposited but the customer could use the balance on the card. Green Dot identified Stacie STEWART with a DOB of 02/06/1974, residing at 4550 N. 62nd Place in Scottsdale, AZ.

2.   Your affiant conducted financial research and identified several other reports, where other businesses filed reports related to what they considered suspicious activity. Some

-8-

of these reports also linked a Najah STEWART to Stacie STEWART. Bank of America stated that Stacie STEWART, with the same DOB 02/06/1974 and SSN 214- 96-5707, and listing an address of 8726 Magnolia Forest in Sugarland, TX, had deposited into her account $127, 854.22 from 09/02/2008 until 10/06/2009. She listed herself as a student and the associated account is 586005837734. 74 of these deposits were made with cash and totaled $106,077. There were no wire transfers. One deposit represented $5,000.00 and consisted of 5 consecutively ordered postal money orders for $1,000.00 each. During this same period, there were 465 debits totaling $126,849.42. 259 of these debits were for cash and totaled $71,505.91. Debits from the account included payments for two cell phones, clothing, and hotel rooms, airline flights etc. There were no debits for mortgage, rent, utility or vehicle payments. Several of the transactions listed above occurred in Scottsdale, AZ, Covina, CA, Pearland, TX, and Baltimore, MD. The U.S. Postal Service also filed a report concerning the above listed money orders, and indicating they were all purchased in Pittsburg, PA.

3. Western Union officials advised affiant that they were aware of several subjects who they have considered to be involved in money laundering. They reported that in 2002, Stacie STEWART, with an address in Baltimore, MD and Najah STEWART, 1814 S. 18th Street in Philadelphia, PA. (Further identified by PA DL 25106131) were involved multiple suspicious money transfers. The amount of funds identified was $40,629.00.

4. Financial research has revealed that the DTO's numerous cash transactions have connections to Baltimore, MD which is where Stacey and Najah STEWART and Richard BYRD all previously resided. The most current bank transactions continue to show a pattern of large amounts of currency being deposited into their bank accounts from the Baltimore area as well as other locations.

5. Early in the investigation your Affiants was advised by Detective Burk of the Arizona Financial Crimes Task Force that Stacey STEWART was listed as a target on a "Funnel Account Seizure Warrant". Although this could have resulted in a possible seizure of funds, this probably would have not led to criminal charges, by the nature of the funnel account warrant. Your Affiants requested that Stacey STEWART be removed from this seizure warrant so that this case could be investigated more thoroughly, and so that other co-conspirators such as BYRD could be identified.

6. Your affiant ran the address listed by Stacie STEWART on Green Dot documents of 4550 N. 62nd Place in Scottsdale, Az. This appears, according to Maricopa County

-9-

Assessors Office, to be a luxury rental home owned by Finocchiaro Agata of 6134 E Windstone Trail in Cave Creek, AZ, according to the Maricopa County Assessors Office. They list a market value on this home at $1,130,800.00. Your affiant ran utilities on this residence through CIRU and it indicates the utilities were turned on at 06/01/2009 under the name of Andrea KING, DOB 06/06/1974 and a SSN 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. This DOB and SSN match Stacie STEWART with a minor variation on the DOB, 02/06/1974. A phone number was also listed, (713) 446-3084.

7.   Your affiant spoke with Finocchiaro Agata on the telephone reference her property at 4550 N. 62nd Place in Phoenix, AZ.   She stated that she rents the property out herself and does not use a company. She said that her last renter at this address was a female named Andrea KING and that she also had two children, a boy and a girl. Andrea KING told Finocchario Agata that she worked for a real estate company out of state and that she worked in management at the company. She showed a check to Finocchiaro Agata with the name Andrea KING on it and was issued by a real estate company out of state. She also provided a social security number on her contract. She did not provide any employment in Arizona.   She said that all rental payments were made to her by deposit into her bank account by Andrea KING. Finocchiaro Agata said that no men were listed as living at the residence however, she kept hearing from workers and others that several men were living at the residence, but she did not follow up on this.

8.   A report filed by Comerica Bank in Sugarland, Texas revealed that a cashier's check was purchased through an account used by Stacie STEWART.  The check was made payable to J & T properties and Andrea KING, for the amount of $4,500.00 dated 03/02/2010. This appears to coincide with what the homeowner stated above and is clearly an attempt to possibly rent the new house under a fictitious name.  This check was later refunded at the bank by the purchaser.  Andrea KING has been identified as a real person with the DOB of 09/09/75, from Baltimore, MD and is linked on other financial transactions associated with members of the DTO.  It is believed that the organization has stolen and or is using Adrea King's identity.

9.  A search of Najah STEWART in Arizona was conducted through a public database. Two residences were located, 11000 N. 77th Place #2072 in Scottsdale, AZ and 11640 N. Tatum #206 in Phoenix, AZ. The first residence is a condominium in a gated community. It appears to be a rental property valued at over $350,000.00. The utilities are in the name of Najah STEWART and she lists several phone numbers (678) 817-5571, (678) 759-1067, and (856) 627-6477. Criminal Investigations Research Unit (CIRU) also identified Najah STEWART with matching identifiers as also in January 2010 residing in Blackwood, NJ and Philadelphia, PA.

10. On 02/23/2010 at 1130 hours, your affiant conducted surveillance at the residence of 4550 N. 62nd Place in Phoenix, AZ. This is believed to be rental house being utilized by Stacie STEWART. At 1240 hours, Sgt. J. Maddux drove past the residence and observes a black Nissan 4 door parked in the driveway. Your affiant did not see this vehicle arrive from his location, so it is assumed that the vehicle was removed from the garage. Detective Kleinman drove past the residence at 1242 hours and watched a brown Chevrolet Suburban, AZ 310YLY/ (Currently ANK4399, registered to Winnie Valena CLARK), depart from the residence being driven by a Hispanic male. Sgt. Maddux follows this vehicle west on Camelback Road when at 24th Street, the vehicle swerved across several lanes and turned south on 24th Street. Sgt. Maddux was not able to stay with the vehicle.

11. At 1244 hours, the black Nissan 4 door registered to Najah STEWART departed the residence. It was driven by a black male with short hair. Your affiant followed the vehicle north on Scottsdale Road. The vehicle appeared to be conducting counter surveillance but was able to be followed to 11000 N. 77th Place in Scottsdale, where Najah STEWART resides.

12. On 02/24/2010 at 0830 hours, surveillance was initiated at 4550 N. 62nd Place in Phoenix. At approximately 0940 hours, a silver 2010 Chevrolet Tahoe arrived at the residence and drove into the garage. It had CA. registration 6KAZ968, which reflected that it is a rental car from Avis/Budget. At approximately 1000 hours, the Chevrolet Tahoe, CA 6KAZ968 departed from the residence, being driven by a black female, believed to be

-11-

Stacie STEWART. A black Lincoln Navigator followed the Tahoe from the residence and they both drove north on 64th Street to Camelback. Surveillance followed the Chevrolet Tahoe. Your affiant attempted to identify the black Lincoln but was unable to do so due to it driving in an erratic manor indicating that counter surveillance was being conducted. Your affiant did observe two black males in the vehicle and that it had a white license plate believed to be from California. Officers followed the Chevrolet Tahoe to a Bank of America drive through and later to a doctor's office. They placed a GPS tracker on the vehicle, in the public parking lot there.

13.    At 1212 hours, the brown Chevrolet Suburban, AZ 310YLY, arrived back at the residence and was backed into the garage. At 1220 hours this vehicle departed. The driver was a Hispanic male. Detectives attempted to follow this vehicle when it left but it was ultimately lost.

### Seizure of 400 pounds of marijuana on 03/01/2010

14.    On Monday, 03/01/2010 at approximately 0620 hours, your affiant ran a query on the electronic tracker which had been placed on the silver Chevrolet Tahoe, CA 6KAZ968, on 02/24/2010. Your affiant had not identified the location of this vehicle since the surveillance on 02/24/2010. Affiant discovered that this vehicle was now located at a hotel parking lot at the Ontario Airport Inn, in Ontario, California. Your affiant had DPS Detective K. Nelson contact supervisor Bob Weinke of the Regional Narcotics Suppression Program (RNSP) Task Force to see if they could follow the vehicle and observe any suspicious activity. The RNSP task force located the vehicle. They followed the vehicle to a residence at 8128 Brookgreen Rd, Downey, CA. Also at this residence, parked in the driveway was a blue Volkswagen Jetta CA: 6HLA322. After a few minutes the Tahoe departed the residence and went to a small "mom and pop" packing and shipping company and dropped off three large boxes weighing approximately 50 to 100 lbs each. Upon request, the owners of the store allowed RNSP members to view the boxes. They brought in a drug dog and a sniff was conducted. An alert was provided by the dog and a search warrant was obtained. Prior to serving the

-12-

search warrant, the Volkswagen Jetta, CA 6HLA322, which had previously identified at the stash house at 8128 Brookgreen Road in Downey, CA arrived at the commercial parking lot adjacent to the shipping business occupied by three persons. One of which had gotten out of the Jetta and was looking over the wall toward the RNSP Detectives who were waiting on a search warrant. Officers made contact with occupants of the vehicle and identified Darrion THOMAS, DOB 08/18/1957, Allysia Nicole JOHNSON, DOB 09/16/1978, and Robert SMITH 05/05/74 (alias of Richard BYRD).   All three subjects denied involvement and were released after field interview cards were completed.  The boxes contained approximately 150 pounds of marijuana total. A search warrant was also obtained for the residence where three hundred more pounds of marijuana, an assault rifle, body armor vests, a hand gun and close to twenty thousand dollars were found.  The electronic tracker indicates that the Chevrolet Tahoe departed the Scottsdale residence on 02/27/2010 at approximately 2300 hours.

15. It should be noted that numerous financial transactions link all three of these subjects identified in the RNSP case.  One example is on 03/10/2010, nine days after this narcotics transaction, Allysia JOHNSON deposited $19,000 into the Bank of America account of Deandre BYRD aka Richard BYRD.  She deposited the cash in Baltimore, MD.  Allysia Johnson and Darion Thomas both have prior narcotics related arrests.

16. Your affiant contacted Avis/Budget in reference to the silver 2010 Chevrolet Tahoe, registration 6KAZ968 which was identified on surveillance on 02/24/2010 and which later was observed in California delivering the packages to the shipping store where the marijuana was identified and seized. Affiant received information from Avis-Budget on 03/17/2010 and he learned that the vehicle was rented by Lincoln DAVIS, DOB 11/28/1963 with a Florida drivers license #D120527634280.  He has an address listed 5712 Fusion Street Hollywood, Florida 33023.  Lincoln DAVIS is currently on the APS account for 5346 E. Royal Palm Rd.  The vehicle was rented in Ontario, California.  In addition to this rental, Avis-Budget also has past rentals listed by Lincoln DAVIS using the same biographical information. All of these rentals occurred in Ontario, California on the dates listed:

-13-

| Check out date | Check in date |
| --- | --- |
| 09/07/2009 | 10/05/2009 |
| 10/05/2009 | 10/19/2009 |
| 10/19/2009 | 11/16/2009 |
| 11/16/2009 | 12/18/2009 |
| 12/18/2009 | 01/16/2009 |
| 01/16/2009 | Present     (Tahoe Vehicle) |

There is a consistent pattern of one vehicle being dropped off and another is rented on the same date which indicates ongoing criminal behavior. All of these rentals were by use of a Mastercard credit card. Avis-Budget also had a history of Najah STEWART also renting vehicles from them. She is listed as providing a Pennsylvania drivers license #25106131, 753 S. 22nd Philadelphia, Pennsylvania. She rented a vehicle in Ontario, California on 10/27/2009 and returned on 12/03/2009 and also in Morrow, Georgia on 03/02/2009 and returned on 03/09/2009. She used different credit cards on each rental.

**Affiant confronted by suspect on 05/03/2010**

17.    On 05/03/2010 your affiant monitored the pole camera which identified two U-Haul trucks at the residence of 4550 N. 62nd Place in Phoenix. Affiant observed furniture was being loaded from the house into the trucks. Affiant and other Task Force Detectives drove to the area of the target address in an attempt to see when the U-Haul's departed, so that they can be followed and the new residence positively identified. The affiant parked one street north of the target house, near a residence under construction.

18.    At 1228 hours, a white Mercedes SUV/Wagon departed the residence and drove out into the street as if he is going to go eastbound then suddenly made a northbound turn and drove toward your affiant. Your affiant laid his seat down and pretended to be sleeping so that the driver of the Mercedes would not see him or suspect him of being law enforcement. Your affiant next heard a tapping on his passenger side window and

-14-

1    observed a black male looking through the windows of his assigned under cover vehicle.

2    The black male motioned for affiant to open the window.  Your affiant rolled down the

3    window slightly and the heavy set black male, approximately 35 years old wearing black

4    shirt and black pants then walked from the passenger window to his driver's side door.

5    Your affiant observed that he has a scar above his lip on his right side. The subject

6    attempted to look over affiants shoulder and into the vehicle at affiants hidden Police

7    equipment.  Your affiant asked the black male what he was doing, and he responds "what

8    are you doing in this neighborhood, you do not live here."  Your affiant found this

9    abnormal since the subject (later identified as Richard BYRD was in the process of

10   moving out of the residence in that neighborhood.  Affiant advised BYRD that he was

11   overseeing construction on the residence and BYRD then asked why affiant had a gun

12   (located on passenger seat hidden under paperwork, with the tip of barrel exposed).  Byrd

     was very confrontational and demanding throughout this contact.

13   **19.**  1256 Hours, surveillance saw U-Haul trucks pull out onto the street and the white

14   Mercedes drove back into the driveway.  The subjects from the trucks all got out and

15   spoke with a black female.  The U-Haul trucks departed and were observed by Detective

16   Flick, of the Arizona Attorney Generals Office.  Officers then followed the trucks as they

17   drove all over town. Both trucks traveled in all direction and went to as far away as 51st

18   Avenue and I-10.  The two trucks made U turns on freeway overpasses, separated and

19   then rejoined and drove north and east through central phoenix utilizing side, residential

20   streets.  It was obvious that they were attempting to lose officers and once stopped in the

21   middle of a busy street for approximately one minute to create a back up of traffic in all

22   directions before departing making it difficult for officers to follow.  The trucks were

23   followed to 5346 E. Royal Palm Drive, a little over a mile away from where the trucks

24   left from at 4550 N. 62nd Place.  The white Mercedes, and an additional moving truck

25   were also at 5346 E. Royal Palm Drive.  Your affiant during surveillance ran the license

plates on both vehicles through U-Haul security.  The plates were identified as AZ

AB88965, and AZ AA56012.  They were both rented by Staci STEWART, Visa card

#4750-1500-2178-1916.

-15-

20.   Your affiant conducted a background check into this residence and learned that the property is a rental and is owned by Golshani Forouzan/Rezvanieh.  The Maricopa County Assessor list the assessed property value on this property in 2009 at $2,312,171.00.  The utilities at 5346 E Royal Palm Drive are under the name of Lincoln DAVIS as are the trash services however the phone number **(832) 576-7726** was provided as a contact number.  This phone is believed to be used by Stacie STEWART and was called by Richard BYRD from jail after his 02/17/2011 arrest.  STEWART also listed this phone number on FEDEX related documents found during the course of this investigation.  Lincoln DAVIS is associated with Stacie STEWART and Najah STEWART through financial transactions, and also as being listed as the renter of the Chevrolet Tahoe rental car which was later identified in Los Angeles on 03/01/2010, by the RNSP Task Force, as delivering the packages to the shipping business which contained marijuana.

### Identification of Richard BYRD, AKA: Robert Smith

21.   On 07/09/2010 your affiant drove past the residence located at 5346 E. Royal Palm Road and observed the white Mercedes 4 door crossover which the suspects commonly drive.  This is also the vehicle which was observed being driven by Robert BYRD who confronted your affiant on 05/03/2010.  The vehicle was parked in the driveway at 5346 E. Royal Palm Drive, with AZ registration AJR8574.  The registration lists it as a 2006 Mercedes 4 door wagon, registered to a Robert SMITH, 8124 W. Campbell Avenue in Phoenix, AZ (bogus address).  A driver's license number is identified for the registered owner as #D07174134.  The driver's license number identifies the driver as Robert SMITH.  He is further identified by DOB 05/05/1975.  Your affiant observed the drivers license photograph of Robert SMITH and recognized him as the driver who confronted him on 05/03/2010.  He was recognizable by the scar or skin blemish above his lip on the right side of his face and his height, weight, build and facial structure.  No criminal history was found under the name Robert Smith.  The listed SSN 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 returns to a female name.

-16-

22.   Your affiant had questioned the true identity of Robert SMITH when he observed the Arizona MVD drivers license photograph. The background screen looked faded and did not seem to be the same background as most MVD photos. Affiant could not find a criminal history or any public database documents associated with Robert SMITH. Your affiant found on a trash run, the thrown away health provider cards listing the name of Stacie STEWART-BYRD. There were also numerous financial transactions involving Stacy STEWART and different individuals with the last name BYRD.

23.   On 08/24/2010, your affiant Kleinman received a phone call from Special Agent Andrew Cheramie from ATF in Charlotte, NC. He explained that they had a triple homicide in North Carolina in 2008, in which a Jamaican drug dealer, his girlfriend and her niece were killed. An individual named Richard Christopher BYRD is the primary suspect and was associated with Stacie STEWART. SA Chermaine became aware that your affiant was investigating Stacie STEWART, Robert SMITH and other members of the BYRD family. After some discussion, it was determined there was a strong possibility that Robert SMITH was Richard Christopher BYRD.  Photographs of Richard Christopher BYRD were e-mailed to Detective Kleinman from an earlier arrest in Baltimore, MD and these photographs do clearly match the driver's license photograph or Robert SMITH, as is clearly visible by the scar above his lip. S/A Cheramie stated that Richard BYRD also goes by the name of Deandre BYRD. Cheramie also explained that Richard BYRD had been tried for a double homicide in Baltimore a few years before but was acquitted after a trial. The triple homicide in Charlotte was committed in the same manner, as to the execution style murders in Baltimore. Family members of the deceased male in Charlotte indicated that Richard BYRD is a cousin of the deceased and had an argument with him about money owed him, before being killed. For clarity, Robert Smith and Deandre BYRD will now be referred to as Richard BYRD.

**Fed-Ex Transactions**

24.   Trash runs were conducted at 5346 E. Royal Palm Road and several times Fed-Ex documents or receipts were obtained. On 08/22/2010 your affiant went to the primary

-17-

Fed-Ex hub located at 8210 S. Hardy Drive Tempe, AZ and met with a manager there. Your affiant presented several receipt copies from Fed-Ex, which were originally obtained from the trash can. The Fed-Ex manager was able to provide some information. A receipt dated 08/02/2010 identifies a package that was sent from Stacey STEWART who provided her old address of **4550 N. 62nd Place** in Scottsdale, even though she clearly resided at **5346 E. Royal Palm** at the time the package was sent. She also listed a phone number of **(832) 576-7726**. The package was sent to Robert SMITH and delivered to a hotel at **465 S. La Cienga Blvd. in Los Angeles, CA**. The package was sent from a Fed-Ex/Kinko's location at 4513 N. Scottsdale Road in Scottsdale, AZ. A receipt dated 08/04/2010 indicates a package was sent from the same location on Scottsdale road by Robert SMITH and sent to Baltimore, MD to a residence and left at the front door. A receipt dated 08/06/2010 indicates a 3.5 pound package was sent from the same location in Scottsdale by Robert SMITH to the same residential address in Baltimore, MD and left on the front door. A receipt not dated was identified as a package being sent on 07/29/2010 by Robert SMITH who listed a senders address of 342 E. 100 Street in Los Angeles, CA although the package was sent from the same Fed-Ex/Kinko's at 4513 N. Scottsdale Road in Scottsdale, AZ. The package was sent to Sharon Hill at Comerica Bank, One Center Creek Blvd. Suite 100 Sugarland, TX. A clear pattern exists of both Stacey STEWART and Richard BYRD, using addresses which they can not be linked to as the sender of these packages. Based on your affiants experience dealing with parcel cases, it is not uncommon for illegal contraband and or currency to be sent from fictitious names and addresses.

**Marijuana cigarettes obtained from trash**

25.   On 08/19/2010, a trash run was conducted at the residence of Stacie STEWART and Richard BYRD . Several items were removed from the trash can which showed indicia of the above subjects residing at this address. A hand rolled cigarette was also found. This item was submitted to the DPS crime lab to check for cannabis or marijuana

substance. Mark Cardwell #6306 of the DPS crime lab checked item #B and determined that it did test positive for marijuana and was a usable quantity.

### Purcahse of Can-Am Motorcycle

26.   A trash run conducted on 08/12/2010 at 5346 E. Royal Palm Road identified a receipt from United Road Towing signed by Robert Smith, with an invoice # T296247.  A large portion of this bill was missing.  On 08/18/2010 your affiant went to United Road Towing and an employee there was able to locate this invoice and provided a copy.  It identified a Can-Am motorcycle being towed from 4550 E. Washington (A Loft Hotel) and delivered to 13690 W. Test Drive in Goodyear, AZ.  This motorcycle was towed on 07/23/2010 and the towing charge was paid for with $160.00 cash.  The towing bill listed the motorcycle being towed at the request of Stacie STEWART, and her name is crossed out. The name Robert SMITH is then listed. The vehicle was further identified by AZ temporary sticker 809449B, VIN #2BXJADA16AV000230.  Your affiant ran the registration and it returned on a 2010 Can-Am Spider motorcycle, registered to Laura IRROBALI, **8118 W. Campbell Phoenix, AZ** (bogus address), very close to the address of **8124 W. Campbell Avenue** (also bogus address), which was listed on the registration of the white, SUV/station wagon Mercedes vehicle being driven by Robert SMITH. Smith's driver's license also lists an address of **8124 W. Campbell Phoenix,** AZ. Affiant  went to the 8100 block of west Campbell in Phoenix, AZ and observed that neither the address listed on Robert SMITH drivers license (8124 W. Campbell), nor the address listed on the registration of the motorcycle (8118 W. Campbell) exist.  Your affiant went to the address listed where the motorcycle was towed to, 13690 W. Test Drive in Goodyear, AZ.  This address is the business of "Ride Now Power Sports".

27.   Your affiant went into the business and spoke with Jeff Selig a sales manager for Ride Now.  He identified the motorcycle by the VIN number and provided a copy of the sales invoice.  He said that the Can-Am motorcycle was purchased by Laura IRROBALI on 06/25/2010, but the motorcycle was being given to a black male that was accompanying her. The motorcycle was purchased for $21,500 and was paid for in cash.  Jeff Selig

-19-

1  remembered the motorcycle being returned for service a couple of weeks prior.  Jeff Selig

2  provided a copy of Laura IRROBALI's driver's license, issued out of California.

3  **28.**   A financial search identified that on 07/16/2010, a $19,600 deposit was made into Laura

4  IRROBALI's Bank of America Account in Baltimore, Maryland, and $19,200 was

5  withdrawn on the same date from her account in Scottsdale, AZ.  On 07/19/2010,

6  $19,600 was deposited into her Bank of America account in Pakville, Maryland and

7  $19,200 was withdrawn the same date from her account in Scottsdale, AZ.  This is

8  consistent with these accounts being used as a funnel account (transit account from other

9  parts of the country) and the organization's use of friends, family and associates to move

10  illicit proceeds.  Several more current large deposits from the east coast have occurred

11  followed by withdrawals by Laura IRRABOLI in Arizona showing a consistent pattern of

12  her financial involvement for the DTO.  Your affiant ran a criminal history on Laura

13  IRROBALI and discovered she had several arrests for PC-Force/ADW not firearm,

14  Vehicle Theft, driving without a license.  AZ DES lists no employment for her for the last

15  (4) years.

16  **Surveillance of 5346 E. Royal Palm Road Paradise Valley**

17  **29.**   On 09/30/2010, your Affiants conducted a drive-by surveillance of 5346 E. Royal Palm

18  Road in Paradise Valley. Parked in the circular driveway in front of the house was a

19  maroon Chevrolet Tahoe bearing Texas license PZR637, registered to Lamar Aaron

20  THOMPSON, 1435 Damby Heath Houston, TX.  A public database search further

21  identified him at the above address with a DOB 09/09/1970. A criminal history search

22  was then completed which further identified Lamar A. THOMPSON by FBI

23  #270573KA2.  It identifies him as being from Jamaica.  He has past arrests for:

| Date | Charge | Location |
|------|--------|----------|
| 1989, | Receiving stolen property, | Bakersfield, CA |
| 1989, | Stolen vehicle, | Bakersfield, CA |
| 1992, | Grand Theft, | Caidalameda, CO |
| 1992, | Possession of marijuana for sale | Caidalameda, CO |
| 1992, | Grand theft property, | Caidalameda, CO |
| 1992, | Forgery of access card, | Caidalameda, CO |
| 1992, | Battery, | Caidalameda, CO |

| | | |
|---|---|---|
| 1993, | Counterfeiting, | Richmond, CA |
| 1993, | Grand theft, | Richmond, CA |
| 1994, | Burglary 2nd Degree, | Contra Costa, CA |
| 1994, | Theft, | Contra Costa, CA |
| 1995, | Theft by access card, | Los Angeles, CA |
| 1995, | Possession of forged notes, | Los Angeles, CA |
| 1995, | Possession forged drivers lcns. | Los Angeles, CA |
| 1998, | Forgery, | Vallejo, CA |
| 1998, | Possession forged notes, | Vallejo, CA |
| 1998, | Perjury, | Vallejo, CA |
| 1998, | Forged access card, | Palo Alto, CA |
| 1998, | Theft by forged instrument, | Palo Alto, CA |
| 2004, | Tampering gov't record, | Houston, TX |
| 2005, | Tampering gov't record | Houston, TX |
| 2007, | Trafficking ecstasy, | Charlotte, NC |
| 2007, | possession marijuana, | Charlotte, NC |
| 2008, | Possession forged notes, | Los Angeles, CA |
| 2008, | Forged drivers license, for fraud, | Los Angeles, CA |
| 2008, | Possession firearm by felon, | Houston, TX |

### Identification of storage locker

30.  On 02/08/2011 Affiants Kleinman and Shallue, served a subpoena at "Extra Storage Space" storage locker facility at 4028 N. 7th Street in Phoenix, AZ. This location was identified during a trash run. The new customer information sheet identified Stacie STEWART as the person signing the contract. She provided a Texas driver's license #: 24256633, and an address for her as **6310 Calhoun Road in Houston**, TX (home of Kimberly Reid). Stacie STEWART identified herself as employed at "Von a Don Entertainment", **6318 64th Street in Phoenix, AZ.** This is a fictitious address and is in close proximity to the address she is renting now. Von a Don Entertainment is not an incorporated business in the state of Arizona. Stacie STEWART requested access to the locker for Robert SMITH, James BOWIE and Rasan BYRD. James BOWIE is a non practicing attorney who resides in Houston, TX, and has been identified in numerous financial transactions involving Stacie STEWART and Richard BYRD.

31.  Access to locker A-331, like all other lockers, is through a large door which is accessed through an electronic key pad, and is also monitored by a surveillance camera. Whenever someone enters the three story building, it can only be done through the monitored door.

Management can normally provide times entered by the access code assigned to the specific user, and provide corresponding video footage. As of 02/08/2011, management stated that they had no access ever recorded for Stacey STEWART.

32.  Affiants Kleinman and Shallue went to locker # A-331, along with the manager. There was a lock on unit #A-331. The manager, without being asked, used a flashlight and looked through a crack between the door and the wall and reported that there was a single box in the storage locker. This means the only way that they could have accessed the locker is by following someone else into the building before the door closed. Affiants arranged to have a Phoenix K-9 sniff outside the storage vault, but there was no alert. The K-9 handler advised that his dog would not alert on money, cocaine or methamphetamine at a distance of where the box had been placed in the unit and depending on how the substance contained therein was packaged. Stacey STEWART listed on the contract that she would be placing household items in the locker with a value of $5,000.00. Also of interest is the distance between where Stacey STEWART and Richard BYRD reside and where this locker is located. There are several miles between them and Detective Kleinman observed several other storage unit businesses which were closer to where they reside. Detective Shallue returned to Extra Space Storage at 4028 N. 7th Street on 03/01/2011 to do follow up on an earlier served Grand Jury subpoena. Shallue met with Store Manager who handed him two video disks which depicted the following:

**Disk 1:**

Dated 11/17/2010, marked Unit # A331

This series of videos encompassed the times 11:14 through 11:30 on November 17th, 2010. They show Stacie STEWART arrive alone in her silver Mercedes sedan (AMC7192 registered to Shantell ROSHELL). This vehicle has been seen consistently by surveillance, coming and going from 5346 E. Royal Palm on a daily basis. It has never been seen at the address of 5717 N 73rd Street, Scottsdale, AZ which is listed on the registration.) STEWART took some plastic bags from the front of the car and walked around to her opened trunk. She appeared to have placed the bags in the trunk or into a box which was in the trunk. She then retrieved some paperwork

-22-

from the passenger side of the vehicle, picked up one of the bags from the trunk, walked to a trash dumpster and threw the bag away. She returned to the trunk, retrieved a large cardboard box and walked to the storage building. STEWART could not immediately gain access. A white male, possibly an employee, assisted her to get into the building. STEWART then put the box on a push cart and took it to unit #A331 and placed it in the unit. STEWART exited the building, tore up some papers in the trash dumpster and left in the Mercedes. According to management this was the first time STEWART had accessed the unit.

**Disk II:**

Dated 02/25/2011, marked Unit # A331

This series of videos encompassed the times 12:08 through 12:29 on February 25th, 2010. They show Stacie STEWART arrive, driving a newer model white, four door, Lincoln MKS with a large sun roof. STEWART had a large, black female companion with her. The vehicle appeared to have a white license plate on the front and rear, indicating it is possibly from California. STEWART's companion walked to the driver's side of the vehicle and retrieved a large, brown shopping bag from the rear seat. The both walked to the building but could not enter the storage area. They then walked into the office. STEWART approached the counter and pulled out a wad of cash from her purse, pulled a rubber band off of it and counted out several dollar bills to make her payment. She then straightened out the stack of cash on the counter, re-banded it and secured it back in her purse. STEWART and her companion walked out of the office and into the storage area. STEWART's companion carried the large, brown paper bag into the building. Both females were also carrying large purses. The two proceeded to walk to Unit # A331 where they put the bag into the storage unit. They then left the building and the property, STEWART driving the Lincoln. Shallue asked the manager about STEWART's demeanor and the vehicle she had arrived in. The manager advised that STEWART was arrogant but not nervous. The manager saw the car keys that STEWART had with her and they looked to have a rental car type key chain. Both items placed in the unit are not very large and or item's normally stored in a 5 X5 storage unit by themselves. STEWART and BYRD rent a very large luxury home in Paradise Valley and could easily store these items in their residence and avoid paying an extra

-23-

rental fee.  Affiants have probable cause to believe that these subjects are concealing evidence of their ongoing criminal enterprise and that this is consistent with how drug trafficking organizations operate.

### Surveillance of Stacey STEWART

33.   On 02/10/2011 at 0908 hours, a silver colored Mercedes, which has been regularly observed at the residence, 5346 E. Royal Palm Road , departed.  This vehicle, although observed often on the camera, had not been identified by registration.  The vehicle passed Affiant Kleinman while northbound on 56th Street from Mockingbird.  Kleinman identified a black female believed to be Stacey STEWART alone in the vehicle.  It was identified with AZ. license plate AMC7192.  It returns on a 2007 Mercedes 500 class, 4 door sedan.  The vehicle is registered to Shantell ROSHELL, 5717 N. 73rd Street in Scottsdale, AZ.  The vehicle listed no lien.

34.   The silver Mercedes was followed to a building on the north side of Shea Boulevard and 71st Street.  It is believed that she went into a business area where there is a dance studio named Dancesport on the bottom floor and Signature Salon on the top floor.

35.   The registered owner of the Mercedes, "Shantell ROSHELL," does not have an Arizona driver's license applied for.  A dummy file is assigned to this name however by Arizona MVD, D07352345 when Shantell ROSHELL registered the vehicle by provided this name and a DOB 05/21/1972. The address listed on the registration, 5717 N. 73rd Street in Scottsdale was familiar to affiant Kleinman.  This is believed to be the location where Lincoln Harris resides.  He was identified on 02/24/2010 at the residence where Stacey STEWART and Richard BYRD then resided, 4550 N. 62nd Place. On that day and around the time HARRIS was there, a Chevy Suburban was seen backing into the garage, it

stayed for a short period of time and then drove off.   Affiants recognize this type of activity frequently seen at illicit money and or drug drop off or pickup locations.   The Suburban was not registered to that location, however utilized the garage for a short period of time.  Lincoln Harris was driving a grey Nissan Maxima on that date.  It displayed AZ registration AGN3212, which is registered to him at that address, 5717 N. 73rd Street in Scottsdale.  His vehicle was later observed at this residence as well. Lincoln Harris was also identified as the driver of the vehicle by affiant Kleinman who matched him against his Arizona driver's license, D06323684.   A public database lists Lincoln Harris with a past address in Houston, Texas which is where there are many ties to Stacey STEWART and Richard BYRD.

36.   On 02/15/2011, your Affiants conducted surveillance at 5346 E. Royal Palm Road and observed a black BMW depart.  This vehicle has been observed numerous times at the residence, via surveillance.  A heavy set black female, approximately 500/230 was observed driving the BMW and it had a temporary AZ registration 0N00644, which returns on a 2009 BMW 4 door.  The vehicle is registered to Shantell ROSHELL, 1932 W. 27th Street Los Angeles, CA.  The vehicle listed no lien.  This is the same registered owner as the Mercedes identified on 02/10/2011.  The black female driving the vehicle was the same female who accompanied STEWART to the storage rental locker on 02/25/2011.  This vehicle was purchased at Sun Motors LLC.  Shantell ROSHELL's CA DL # A6219283 listed her physical description as 503/140 which is not consistent with the driver on 02/15/2011.

**Funnel Accounts**

37.   Affiants have been party to and investigators on no less than two "Funnel Account" warrants in the past four years where accounts receiving and withdrawing large amounts

-25-

of cash have been identified, detained, investigated and seized. These accounts all exercise the same method of moving cash by having almost always unidentified persons out of state, deposit sums of cash into bank accounts held by drug and human smuggling organizations operating in and through Arizona. The sums are almost always under the $10,000.00 cash reporting limit in order to attempt to go undetected by law enforcement. The cash is almost always withdrawn in cash on the same or following few days in a like manor. These accounts are usually opened and utilized by low to mid-level participants in the criminal organizations on a regular basis. The account holders are often friends, family members or associates of the high level managers. The higher level persons tend to use their own account on a less frequent basis, not wanting to draw attention to themselves, to avoid prosecution and to insulate themselves from suspicious activity.

**Richard Byrd Funnel Account**

38. Cash Transaction Records show that on 03/10/2010, Allysia Johnson; 09/16/78, SSN: 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 deposited $19,000.00 into two of Richard BYRD's **Bank of America accounts; 586005838775 and 457017876650**. One of these accounts was opened under his alias Robert SMITH's; 05/05/74 and the other under the name Deandre BYRD. Johnson has a criminal history for Possession of Marijuana out of Baltimore, MD on 07/29/2005 and on 01/28/2010.

39. Cash Transaction Records further revealed that between 05/12/2003 and 03/07/2007, $265,210.00 in cash was deposited into various bank accounts directly associated with **Richard BYRD** in Baltimore, Maryland, Atlanta, Georgia, and Houston, TX. Many of these deposits were done on behalf of an entity called **"10 Fingers Entertainment"**. During that same time frame, BYRD withdrew over $340,600.00 in cash, some of which were negotiable instruments paid by "10 Fingers Entertainment".

-26-

**Stacie STEWART Funnel Accounts**

40.   Stacie Stewart made 74 cash deposits totaling $106,077.77 into her **B of A checking account # 586005837734** between 09/02/2008 and 10/06/2009.  During the same period, 259 cash withdrawals were made totaling $71,505.91.  Additional activity showed deposits of money orders (5 consecutive for 1k each on 09/17/2009) and withdrawals via checks written to herself for cash.  Debit activity consisted of cell phone payments, food, clothing, hotel and airline flight purchases. (Stewart used SSN: 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, DOB: 02/06/1974 and the address 8726 Magnolia Forest, Sugarland, TX on the account).

41.   Between 11/30/2009 and 04/16/2010 Stacie STEWART and a subject named James BOWIE from Houston, TX, moved $24,119.00 in cash through their independent Comerica Bank Accounts, moving the money to one another and independently.  Money was structured to avoid reporting requirements.  **STEWART's Comerica account number was 7002143365.  BOWIE's Comerica account number was 7002212749.**

42.   On 12/31/2009 $10,050.00 cash was deposited into Stacie STEWART's **B of A account # 586005837734** in a Baltimore, MD branch.

**Najah STEWART Funnel Accounts**

43.   From 08/12/2009 to 03/04/2010, Najah Stewart had $88,357.80, in 79 deposits, deposited into her **B of A accounts: 457016443291 and 457000800594** from three different states: CA, MD and VA.  43 of those deposits were made with cash, totaling $61,036.86.  Approximately twenty (20) money orders totaling $10,000.00 were also deposited into the account.  Almost every deposit was followed by a cash withdrawal at B of A locations in or near Paradise Valley and north east Scottsdale, AZ. (PV mall, 69th Street and Shea and at Lincoln Scottsdale) (Najah Stewart listed her DOB as 03/27/76; SSN:

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; address: 11000 N. 77th Place, unit 2072, Scottsdale, 85260.  She used PA DL 362359874 as her identification to open the accounts.)

**Shantel ROSHELL Funnel Accounts**

44.  Affiants located bank records regarding Shantell ROSHELL witch show a series of transactions which show 4 transactions between 09/07/10 and 12/08/10 where **$16,250.00** in cash was deposited into her **US Bank** account and then withdrawn.  $50.00 was deposited in CA, $200.00 in AZ and the other two consisting of $16,000.00 was made in Ohio.  Of this deposited money, $7000.00 was withdrawn in two cash withdrawals in California and one check was issued for $9,000.00 to BMW/Mini, North Scottsdale.

45.  ROSHELL also had a **J.P. Morgan Chase** (Funnel) account where **$36,500.00** in cash flowed from multiple states such as Florida and Ohio, withdrawn at multiple branches in the Los Angles, California area from 06/29/2010 to 10/07/2010.

46.  ROSHELL also had a **Wells Fargo** (Funnel) account where **$40,900.00** cash was deposited in seven out of state deposits from Maryland, Georgia and Florida followed by six cash withdrawals totaling $40,700.00 from July 6, 2010 through 09/07/2010.  There were also cash deposits made in California and the subject used the cash to purchase two official bank checks made payable to Statewide Auto Sales, a Luxury car dealership in CA.  The white Mercedes SUV/Wagon driven by BYRD on 05/03/2010 was also purchased at that same dealership.

47.  ROSHELL had two **Bank of America** (Funnel) accounts were **$19,200.00** in cash was deposited on 10/13/2010 in Lutherville, MD and $17,800.00 cash was withdrawn on 10/14/2010 in Los Angeles, CA.

48.     **Western Union** records reflect that Stacie STEWART sent Shantel ROSHEL $2,990.00 in cash via money transfer on 03/29/2002, documenting a long standing financial relationship.

**Identification of surveillance cameras**

49.     While conducting surveillance, on 02/15/2011, at the residence of Stacey STEWART and Richard BYRD, 5346 E. Royal Palm Road in Paradise Valley, AZ Detective Thomas observed that several new surveillance cameras had been installed on the residence, which covers the garage area, the front driveway area, and the front yard area.

**Trash Run**

50.     On 02/03/2011, your Affiants conducted a trash run at the residence of 5346 E. Royal Palm Road. In addition to finding the documents related to the storage locker listed above, other items of interest were identified. A drug ledger was removed that had the following notations including;    Bowie-7000, Kent-5200, Billie wife-2500, green dot 5,000 =14,700, 7000+1550+2950=10,500, 15,550 + 4000 = 19550, 35450 with 2500 written under it.

51.     A letter was removed which was sent to Robert SMITH, 6310 Calhoun Road Houston, Texas. The letter states that Robert SMITH was denied a credit card due to length of time accounts have been established, delinquency on payments and lack of payment on open accounts. This credit card request was conducted by Richard BYRD under his fictitious name.

52.     UPS receipts, Western Union Receipts and billings were removed listing and address for Stacey STEWART and Richard BYRD of 4340 E. Indian School Road #21-425 in Phoenix. This number corresponds with a postal mailbox at a UPS store location, with post office mailboxes.

53.     A financial search identified several reports indicating a check fraud through Chase Bank

-29-

in 2010 by Lamar THOMPSON.  An earlier report in 2005 relates to a suspect in possession of a suitcase at the Houston airport and the suitcase contained a fake driver's license and numerous blank checks which were in possession of Lamar THOMPSON.

54.   In addition to the date listed above, Lamar THOMPSON vehicle has been observed on via a pole camera on several occasions at the residence of Stacey STEWART and Richard BYRD.  Your Affiants suspect Lamar THOMPSON as the source of the fictitious driver's license being used by Richard BYRD, in the name Robert SMITH, here as well as a past case in California where Richard BYRD was charged there with the same crime.

**Fort Bend, Texas report**

55.   Your Affiants received report 07-1885 from Ft. Bend, Texas in regards to Stacie STEWART.  She was arrested there on a charge related to "Criminal Syndicate."  In brief, Stacey STEWART and several other suspects had fake driver's licenses from Kentucky which matched fraudulent names on checks and credit cards.  Stacey STEWART was accused of flying frequently on Southwest Airlines by payment made on fraudulent or counterfeit checks.  Kimberly REID was identified as living with and flying with STEWART to and from Baltimore, MD using tickets purchased with counterfeit checks.  It is possible that Lamar THOMPSON is the source of the fictitious driver's licenses in this case as well.  FT. Bend Police Department did not address the source of the fictitious identifications in the reports sent to your affiants.

56.   Kimberly REID has further been identified recently as a result of trash runs and also a mail cover in your Affiants case.  Kimberly REID has sent Stacey STEWART large 8" X 11"envelopes.  Stacey STEWART has also sent packages to Kimberly REID via FedEx.  Based on the packages being sent back and forth between STEWART and REID, and the

frequent visits from Lamar THOMPSON, that STEWART is also utilizing fraudulent means to hide her identity, Richard BYRD's true identity and the source of their illicit funds in order to assist in their criminal syndicate. The lead Detective in Ft. Bend, TX advised your Affiant that Stacey STEWART has not been indicted in their case yet.

### Arrest of Richard BYRD (2,700 lb Marijuana deal)

57.     On 02/17/2011, Chandler Police Department conducted an undercover operation known as a "reversal", whereby they pose as sellers of marijuana. The goal is to have a buyer show up with money for the purchase, make an arrest and seize the illicit proceeds. By the use of Confidential Reliable Informants (CRI) they were able to have the buyer known as "Fatboy" arrive at their undercover warehouse in Phoenix to purchase 2700 pounds of marijuana. "Fatboy" later identified as Richard BYRD, arrived in the Chevrolet Suburban registered to Winnie CLARK. They negotiated the entire 2700 pounds but "Fatboy" said he would buy the 500 pounds of marijuana on this date and the remaining on the following day. "Fatboy" took a rolling suitcase out of the Suburban and walked it into the meeting location. The bag contained $267,920.00 in U.S. currency. The marijuana was stacked in the room where BYRD was arrested. This transaction was recorded both audio and video. An additional $18,000.00 was located in the glove box of the Suburban. A black female identified as Chryl WASHINGTON was in the passenger seat of the Suburban. She had several rubber bands in her purse which matched the rubber bands on the currency, but made no incriminating statements and was not charged. She is identified as residing in California. Richard BYRD was in possession of (9) cell phones at the time of arrest.

58.     Several days after Richard BYRD was incarcerated on the Chandler charges, he was released after posting a $150,000.00 cash bond, paid for by Kimberly Renee Reid. Your

-31-

affiant obtained by subpoena phone calls made by Richard BYRD while incarcerated. Richard BYRD told Stacie STEWART that she had to turn off the phones. STEWART also advised that she was utilizing a rental vehicle (as seen at the storage rental place on 02/25/2011).

### AFFIANTS' EXPERIENCE

59. Detective Tod B. Kleinman has been a Police Officer with the Arizona Department of Public Safety (DPS) since July 1987. After (5) years in Highway Patrol, the next (18) have been assigned as a Detective in Criminal Investigations. While assigned as a Detective, he has been assigned to several federal and state task forces. Prior to this employment, Detective Kleinman was employed by the Maricopa County Sheriff Department (MCSO) for over (3) years. Before becoming a police officer, Detective Kleinman attended a (14) week police academy known as Arizona Law Enforcement Training Academy (ALETA). While at the ALETA training academy, he received instruction in investigative techniques, drug identification, and drug-related law. Prior to becoming a detective, another (2) weeks of specialized training in narcotics and money laundering was provided. Detective Kleinman is currently assigned to the Phoenix Financial Crimes Task Force comprised of DPS, Phoenix Police Department, Arizona Attorney Generals Office, and Immigration and Customs Enforcement (ICE).

60. By virtue of his employment as a Detective, Affiant Kleinman has performed various tasks, which include, but are not limited to:

    A.    Functioning as a surveillance officer, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs;

    B.    Participating in the tracing of monies and assets obtained by drug traffickers from the illegal sale of drugs (laundering of monetary instruments);

    C.    Interviewing witnesses, cooperating sources (CS) and sources of information (SOI) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments);

-32-

      **D.**    Functioning as a case agent, entailing the supervision of specific investigations involving the trafficking of drugs and the laundering of monetary instruments.

      **E.**    Acting in an undercover (UC) capacity.

**61.**   During the course of his employment with the DPS, Affiant Kleinman has conducted numerous investigations into illegal drug distribution conspiracies, participated in the arrests of individuals for drug-related offenses and participated in the execution of search warrants for evidence of drug-related offenses.   Some of these previous cases have resulted in wiretap investigations.   Affiant Kleinman has participated in eight previous wiretap investigations which have included supervising the monitoring of line interceptions, coordinating and conducting surveillance of target subjects and assisting prosecutors in the prosecution of target subjects.

**62.**   In the course of conducting drug investigations, Affiant Kleinman has personally interviewed informants and persons involved in the distribution of illegal drugs.  He has consulted with other experienced investigators concerning the practices of drug traffickers and the best methods of investigating them. In preparing this affidavit, Affiant Kleinman has conferred with other with other law enforcement officers.  Furthermore, he has personal knowledge of the following facts or has learned them from the individuals mentioned herein.

**63.**   The statements contained in this affidavit are based in part on information provided to your Affiants by  Detectives of DPS, Special Agents of ICE, ATF, and other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; and analysis of telephone toll records.  Affiant Kleinman also relies on his experience, training, and background as a Detective with DPS in evaluating this information.    Since this affidavit is being submitted for the limited purpose of securing authorization of the interception of wire communications, your Affiants have not included each and every fact known to them concerning this investigation.  They have set forth only the facts that they believe are necessary to establish the required foundation for an order authorizing the interception of wire communications.

**64.**   Your co affiant, Detective John Shallue, worked as a contract asset forfeiture analyst for the Drug Enforcement Agency (DEA) from November 1993 to February 1996.  There, your co affiant assisted Local, State and Federal Agents in conducting complex money

laundering cases that were tied to multimillion dollar drug organizations. Your co affiant analyzed bank records, the purchases of real and other property and business practices of known drug traffickers. Your co affiant investigated the laundering of drug proceeds to include the transportation, concealment and reinvestment of such proceeds. While working in this capacity, your co affiant attended a week long asset forfeiture training class at the DEA headquarters in Alexandria, Virginia, a week long Money Laundering class by the Internal Revenue Service in Tempe, Arizona and several other training seminars on drug trafficking, dealing and the laundering of illegal proceeds.

65. Your co affiant has been employed by the Phoenix Police Department since February of 1996. From June 1996 to October 2001 your co affiant was assigned as a uniformed patrol officer, field training officer, and a neighborhood enforcement officer. Your co affiant has made numerous drug arrests and attended numerous classes and seminars regarding drug dealing and trafficking while working in this capacity.

66. From February of 2004 to January of 2006 your co affiant was assigned to the Violent Crime Bureau's International Criminal Apprehension team. During this time, your co affiant investigated several crimes connected to the smuggling of human beings and drugs from Mexico into the United States, to include but not limited to; aggravated assault, kidnapping, extortion, rape, money laundering and murder. At this assignment your co affiant was temporarily assigned to the Arizona Financial Crimes Task Force on two occasions to assist with money remitter damming warrants.

67. Your co affiant was officially assigned to the Arizona Financial Crimes Task Force in January of 2006. At this capacity, your co affiant has participated in five money remitter damming warrants and two bank damming warrants, where money was blocked coming into Arizona from all over the United States for the purposes of purchasing drugs or paying human smuggling fees. In connection with these warrants, your co affiant has conducted hundreds of telephonic investigations into the purpose of these proceeds. During these investigations, your co affiant found that human and drug smugglers were not only using remitters and banks to collect their illicit funds, but that they were directing sponsors and or customers to send money via pre paid money cards.

68. Your co affiant has participated in no less than seven wire intercept investigations in several capacities. Co affiant has conducted surveillance on no less than six wire intercept investigations and on numerous non wire intercept investigations. Co affiant has conducted hundreds of hours of surveillance on narcotics and human smuggling

organizations.    Co affiant has been a line investigator on four wire intercept investigations where he monitored multiple phone lines and compiled evidence, conversations and surveillance reports for the prosecution of suspects.    Co affiant has learned the common practices of drug and human smuggling organizations and their usage of traditional and non traditional banking methods to further their organizations criminal goals.

Based upon your affiant's background, training and experience, your affiants knows:

a. That drug traffickers very often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by law enforcement agencies;

b. That even though these assets are in other persons' names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them;

c. That drug traffickers maintain on hand amounts of U.S. currency in order to maintain and finance their ongoing drug business, and/or have on hand amounts of U.S. currency as a result of drug transactions in $1.00, $5.00, $10.00, $20.00, $50.00, and $100.00 denominations;

d. That it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of illegal drugs;

e. That persons involved in drug trafficking conceal contraband, records of drug transactions, financial instruments and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of sums of money made from engaging in drug trafficking activities;

f. That in order to accomplish this concealment, drug traffickers frequently build "stash" places within their residences or businesses;

g. That it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing and/or expending of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers;

h. That drug traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines and telephone answering machines, digital papers, and cellular telephones to generate, transfer, count, record and/or store the information described herein, and/or are used to facilitate their drug transactions or to facilitate their money laundering transactions;

i. That when drug traffickers amass proceeds from the sale of drugs, they attempt to legitimize these profits.    Your affiant knows that to accomplish these goals, drug traffickers utilize, including, but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts, fictitious financial statements, fictitious income statements, and fictitious income tax returns;

-35-

1       j. That drug traffickers frequently maintain names, addresses, telephone numbers, and/or

2   pager numbers of their various associates in the drug trafficking activities; and

    k. That drug traffickers frequently take or cause to be taken photographs or other images of

3   themselves, their associates, their property and assets, and illegal drugs and narcotics.

4   Your affiant knows through training and experience that drug traffickers will keep many of the

above described papers and documents for an extended period of time after the commission of

5   narcotics transactions.  Your affiant knows through training and experience that some of the above

described papers, documents and items are frequently and regularly used or utilized in daily living.

6   Your affiant knows through training and experience that some of the above described papers and

documents become permanent once created.

7

8

9

10  Affiant believes that the preceding information demonstrates good cause, pursuant to ARS '13-

11  3917 for permitting this warrant to be served any time of the day or night:

12

13  Wherefore affiant prays that a search warrant issue commanding that an immediate search be made

14  for the person, property or things herein described, of the persons, premises and buildings, and

15  vehicles described, and that the same be arrested, or retained in the custody of affiant or in the

16  custody of the agency which affiant represents and disposed of according to law, pursuant to ARS

17  '13-3920.

18

19  _____ 4012

20  Affiant              Badge or ID#

21  _____
    AZ DPS

22  Agency

23

24

25

_____    _____
Affiant                                   Badge or ID#

_____
Agency

SUBSCRIBED AND SWORN TO before me this _____ day of

_____, 2011

_____
Judge, Justice of the Peace or Magistrate

Of _____ Court
     HONORABLE MONICA S. GARFINKEL
     MARICOPA COUNTY SUPERIOR COURT

-37-