IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. RDB-14-0186 |
| | : | |
| RICHARD BYRD, | : | |
| Defendant. | : | |
| | : | |

...oooOooo...

**GOVERNMENT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR AN ORDER TO
COMPEL COMPLIANCE WITH SEIZURE WARRANT
AND APPLICATION FOR A PROTECTIVE ORDER**

The United States of America, through undersigned counsel and pursuant to 21 U.S.C. section 853(e)(1)(A), hereby submits this memorandum in support of its requests for an order (1) that directs the law firm of Perkins Coie to comply with a valid seizure warrant pertaining to funds and vehicles in their possession; (2) that directs the State of Arizona to turn over to the U.S. Marshals Service certain assets in the State's possession; and (3) that directs the U.S. Marshals Service to hold the assets that are turned over by the Perkins Coie law firm and the State of Arizona pending further order of this court.

Following findings of probable cause to forfeit the assets in question (by both the grand jury and a magistrate judge of this court), the defendant has not – and cannot – make the required prima facie showing of a lack of probable cause that is necessary to entitle him to a pre-trial hearing.  Because the law requires the court to protect assets that are subject to forfeiture, the defendant cannot be allowed to spend those assets to hire counsel.   There is no reason for the Perkins Coie law firm to fail to comply with the seizure warrant and, because those assets must

be protected, the law firm should be directed to comply with the seizure warrant executed in July 2013.

## Background

This matter arises from a lengthy investigation into narcotics trafficking and money laundering by the defendant and a number of his associates.   Under Mr. Byrd's leadership, that group obtained large quantities of cocaine and marijuana from suppliers in Arizona and California and shipped them back to the Baltimore, Maryland area and other east coast destinations.  During the course of the investigation, investigators seized bulk quantities of marijuana, cocaine, cash, and firearms from members of the organization.  For example, on February 17, 2011, Mr. Byrd was arrested in Chandler, Arizona after trying to negotiate for the purchase of 2,200 pounds of marijuana from undercover police officers.  At that time, he provided officers with a suitcase containing $267,920 in cash for the first 500 pounds of marijuana.  A few weeks later, investigators executed a search warrant at a house in Arizona used by Mr. Byrd and recovered $749,080 in cash that was vacuum sealed and found contained in two suitcases (packaged in the same manner as the money seized a few weeks earlier from Mr. Byrd) in a closet attached to the master bedroom.

These cash seizures (among other assets) were the subject of litigation in state court in Arizona.   The Arizona authorities filed forfeiture actions against the various property items but, in a final judgment dated March 18, 2013, the Arizona Superior Court dismissed the forfeiture actions, based on procedural issues, and directed that some of the seized property be released to Richard Byrd.   While the case was on appeal, the Arizona Court of Appeals issued a protective order that directed Byrd not to transfer or dissipate any of the released assets.   After the Arizona Court of Appeals issued its protective order, assets were released by the Arizona authorities to

the law firm of Perkins Coie in Arizona, counsel for Richard Byrd. The law firm placed the funds in a trust account controlled by the firm and placed a number of vehicles in a secure storage facility, where they remain.

While the Arizona forfeiture action was pending, a federal investigation into Mr. Byrd's involvement in drug trafficking and money laundering activities was on-going. For example, on April 22, 2013, investigators seized approximately 527 pounds of marijuana and 16 kilograms of cocaine that an associate of Mr. Byrd had delivered to a shipping company in Scottsdale, Arizona for shipment to Baltimore, Maryland. On the same day, investigators executed a number of search warrants in the Baltimore, Maryland area, during which they recovered approximately 342 pounds of marijuana that had arrived from the same shipping company. Investigators determined that, between November 2012 and April 2013, the shipping company had made approximately 88 shipments containing marijuana and/or cocaine from Scottsdale, Arizona to Baltimore, Ohio, Pennsylvania, and Georgia on behalf of the Byrd organization. From other locations used by the organization, they recovered approximately 10 additional kilograms of cocaine, over 70 large black plastic containers (the same type used to ship drugs from the shipping company) numerous fake identifications, an AK-47 assault rifle, seven handguns, and body armor.

As a part of the federal investigation, on July 12, 2013, the Honorable Beth P. Gesner, United States Magistrate Judge, issued a seizure warrant based on a finding of probable cause to believe that a number of specific assets – including those assets at issue here – were proceeds traceable to drug transactions of the defendant. A copy of the seizure warrant and affidavit is attached to the government's motion as Exhibit A. In addition to detailing the facts supporting the request for the warrant, in that affidavit the case agent advised the court that all of the

targeted items, funds and vehicles, had been in the custody of Arizona authorities until the Arizona Superior Court issued an order releasing some of the seized property to Richard Byrd. (Exhibit A, affidavit at 7.)   The agent also advised that the Arizona Court of Appeals had issued a protective order that directed Byrd not to transfer or otherwise dispose of those assets pending resolution of the appeal of the Superior Court's release order.   (*Id.*, affidavit at 7-8.)   The agent also attached a copy of the Arizona Superior Court order, reflecting that the order was based on procedural issues.

On or about July 13, 2013, agents executed the seizure warrant by delivering a copy to the Perkins Coie law firm in Arizona.   Counsel for Byrd acknowledged receipt of the warrant. A copy of the warrant also was provided to attorneys for the State of Arizona.[1]

A Superseding Indictment was returned in July 2014 that provided notice, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, that the government intends to seek the forfeiture of the proceeds traceable to the drug offense, pursuant to 21 U.S.C. section 853(a)(1), and forfeiture of the property involved in the money laundering offense, pursuant to 18 U.S.C. section 981(a)(1)(A).   The Information that was filed on October 14, 2015, also identified some specific assets that the government intends to forfeit as proceeds traceable to the drug offense charged in the Indictment.

As the federal case progressed, the Arizona appeal was concluded, by a memorandum opinion issued by the Arizona Court of Appeals on May 28, 2015, that affirmed the judgment of the Arizona Superior Court.   Since that time, counsel for Byrd continues to hold the property described in the federal seizure warrant issued by Judge Gesner.   By letter dated October 7,

---

1       The Arizona authorities have expressed a willingness to release property to the U.S. Marshals Service and have stated that they are prepared to respond to the protective order requested by the government.

2015, counsel alerted government counsel that Byrd wishes to use the funds to hire the Perkins Coie firm to represent him in this case.   Because the Perkins Coie law firm has not complied with the outstanding warrant, on October 14, 2015, the government filed the Motion to Compel Compliance (EFC 223), and an Information seeking to secure the property at issue that remains in the custody of Perkins Coie.   (ECF 222.)   Just two days later, the defendant filed a motion seeking to postpone his trial based in part on his wish to use the funds held in the custody of the Perkins Coie law firm to pay for new counsel to represent him in this case.

A Second Superseding Indictment was returned on October 20, 2015, that also identified the same specific assets as proceeds traceable to the drug offense in Count One, and involved in the money laundering charge in Count Two ("the targeted assets").   The assets specified in the Information and in the Second Superseding Indictment are presently held by the law firm of Perkins Coie in Phoenix, Arizona, and by the State of Arizona.

This memorandum will address (1) the reasons why the law firm should be required to comply with the executed warrant and turn over the targeted property, and (2) why the defendant cannot be permitted to use the targeted assets to pay for attorney fees.

<div align="center">**Argument**</div>

I.      The Court must take action to preserve property for forfeiture.

As is demonstrated in the government's motion to compel, it is critical that the targeted assets be secured so that their value is not diminished or is otherwise placed beyond the jurisdiction of this Court.   The forfeiture statute provides in pertinent part as follows:

> Upon application of the United States, the court may enter a restraining order or injunction . . . or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section-

> (A) upon the filing of an indictment charging a violation of this subchapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would in the event of conviction be subject to forfeiture under this section.

21 U.S.C. § 853(e)(1)(A).   An indictment charging a drug offense (as was returned in this case) is a "violation of this subchapter" and, thus, the Court may enter a restraining order "or take any other action to preserve the availability of property" that is subject to forfeiture.   *See United States v. Monsanto*, 491 U.S. 600, 615-16 (1989) (the standard for issuing a restraining order is probable cause); *United States v. Farmer*, 274 F.3d 800, 805-06 (4th Cir. 2001) (same).

In the Fourth Circuit, the grand jury's finding of probable cause to believe that assets are subject to forfeiture is sufficient, by itself, to satisfy the probable cause requirement.   *United States v. Bollin*, 264 F.3d 391, 421 (4th Cir. 2001); *In re Billman*, 915 F.2d 916, 919 (4th Cir. 1990); *United States v. Park*, 825 F. Supp. 2d 644, 646 (D. Md. 2011) ("the court may rely on the finding of the probable cause made by the grand jury;" following *Bollin*).   In this case, the grand jury found probable cause to believe that Byrd engaged in drug trafficking and that the targeted property was traceable to that offense.

In addition, as is mentioned above, Magistrate Judge Gesner found probable cause in order to support the issuance of the seizure warrant.   So, there can be little argument about whether there was a finding of probable cause to forfeit the assets.

Once the government makes the required probable cause showing, the issuance of an order protecting the targeted property is mandatory – the court's only discretion concerns <u>the manner</u> of the restraint.   *See Monsanto*, 491 U.S. at 612-13.   In *Monsanto*, the Court concluded that the word "may" in section 853(e) means only that the district court may enter a restraining order if the Government requests it, but not otherwise, and that it is not required to enter the

order if a bond or other means exists to preserve the property.  *Id.* ("Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction occurs cannot be sanctioned.").   As the *Monsanto* Court explained, the governing law "cannot sensibly be construed to give the district court discretion to permit the dissipation of the very property [that section 853(a)] requires be forfeited upon conviction…." *Id.*; *see also United States v. Wingerter*, 369 F.Supp.2d 799, 811 (E.D. Va. 2005) ("[T]here is no discretion to permit a defendant to spend assets that are subject to forfeiture, including substitute assets.   They must be preserved for forfeiture."); *United States v. Amoruso,* 2009 WL 1037917, at *1 (N.D. W. Va. Mar. 30, 2009) (citing *Monsanto* and *Wingerter*) (granting government motion for protective order).   Once entered, a pre-indictment restraining order remains in effect through the conclusion of the defendant's trial.  *See United States v. Adams,* 782 F.Supp.2d 229, 234 (N.D. W.Va. 2011) (contrasting a pre-indictment protective order which expires after a period of time, with a post-indictment order issued under §853(e)(1), which remains in effect until the conclusion of the trial).

In light of the requirement that the assets be protected, and the lack of compliance thus far, an order compelling the Perkins Coie law firm to comply with the seizure warrant is appropriate.[2]   That is particularly so where, as here, the defendant has indicated that he does not wish to preserve the availability of the assets but, rather, wants to spend them on attorney's fees.

---

2        In *United States v. McCorkle,* the government sought a contempt order for a lawyer who refused to transfer funds to the court registry. 2000 WL 133759 (M.D.Fla. 2000).   Here, the government is not requesting a contempt finding.

II.     The defendant cannot support a request to spend funds on attorney fees that are subject to forfeiture.

There are limited circumstances where a defendant can seek a pretrial hearing on the restraint of forfeitable assets.   Where a defendant can show a need for the funds to pay for attorney's fees, the defendant can only access restrained funs if he can allege and prove that there is no probable cause to believe that he committed the charged drug offense or that there is no probable cause to connect the targeted property to the charged offense.   *United States v. Monsanto*, 924 F.2d 1186, 1194 (2nd Cir. 1991); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 631 (1989) ("It is our view that there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense.").

Even to obtain a hearing to address those issues, however, the defendant must make a two-part preliminary showing.   The Fourth Circuit held in *United States v. Farmer* that a defendant is only entitled to a pretrial probable cause hearing if: (1) he demonstrates that he has no other assets available with which to retain counsel, and (2) he also makes a prima facie showing that the restrained property is not subject to forfeiture.   274 F.3d at 804-05; s*ee also Park*, 825 F. Supp.2d at 646.   Here, the defendant is not entitled to a hearing because he cannot meet this burden.

First, although the defendant has already qualified for the appointment of CJA counsel, he must still allege and prove the point, which he has not done.   *United States v. Jamieson*, 189 F.Supp.2d 754, 757 (N.D. Ohio 2002) (defendant must show that he has no funds available to him from family and friends).

Second, the defendant must make an initial showing that there is <u>no</u> probable cause to restrain the assets in question – i.e., that they are not subject to forfeiture.    Where, as here, the grand jury has already found probable cause, the defendant must "make a prima facie showing of a bona fide reason to believe that the grand jury erred in determining that the restrained assets 'constitute[ ] or [are] derived directly or indirectly, from gross proceeds traceable to the commission of the offense.'"    *United States v. St. George*, 241 F.Supp.2d 875, 880 (E.D. Tenn. 2003) (quoting 18 U.S.C. § 982(a)(6)); *see also United States v. Peppel*, 2008 WL 687125, *6 (S.D. Ohio 2008) (defendant "failed to make a prima facie showing that the Grand Jury 'misfired' by finding the existence of probable cause").    Moreover, here, a magistrate judge also issued a seizure warrant based on a finding of probable cause for a substantial portion of the targeted property.    Consequently, the defendant has the additional heavy burden of proving that the magistrate judge issued the seizure warrant in error, without probable cause.    *United States v. Dupree*, 781 F. Supp. 2d 115, 142 (E.D.N.Y. 2011) ("in the instant case, the government, in its affidavit and complaint in support of arrest warrants and affidavits in support of the search and seizure warrants, has established probable cause that the funds are forfeitable…").    To date, the defendant has made no such showing.

Indeed, in his motion seeking to postpone the trial, the defendant does not make any allegation that there was a lack of probable cause.    The defendant must allege and prove both parts of the *Farmer* test in order to qualify for a probable cause hearing.    *Farmer*, 274 F.3d at 804-05; *see also United States v. Melrose East Subdivision*, 357 F.3d 493, 507 n.17 (5th Cir. 2004); *United States v. Emor*, 794 F. Supp. 2d 143, 149 (D.D.C. 2011); *Monsanto*, 491 U.S. at 616 (holding that the Government may maintain custody of property for forfeiture based on a

finding of probable cause, even if the defendant claims that he needs the restrained property to retain counsel); *United States v. Jamieson*, 427 F.3d 394, 405-07 (6th Cir. 2005) (property remained restrained where government established probable cause at *Monsanto* hearing); *United States v. Yusuf*, 199 Fed. Appx. 127, 132 n.3 (3d Cir. 2006) (following *Jamieson*; if the Government establishes probable cause, the property must remain under restraint because the defendant's Sixth Amendment right to obtain counsel of his choice applies only to the use of his own, legitimate, non-forfeitable funds).

Highlighting the defendant's inability to meet his burden, the affidavit submitted in support of the seizure warrant details ample probable cause to support forfeiture of the assets in question.   For example, the affidavit states, in part:

> In early 2011, Arizona Police detectives learned that BYRD was interested in buying a large load of marijuana, and officers made arrangements to sell marijuana to BYRD.  On February 17, 2011, Richard BYRD was arrested by Arizona Police officers as he attempted to take delivery of 500 pounds of marijuana.  He arrived at the transaction location driving a 2002 Chevrolet Suburban, Arizona Registration ANK4399, VIN# 1GNEC16ZX2J306541.  He had agreed to buy a total of approximately 2700 pounds of marijuana in two deliveries.
> According to the Arizona authorities, BYRD personally inspected a bale of marijuana on February 17, 2011, and turned over a suitcase containing $267,920 in cash for the first 500 pounds; the cash was bundled with rubber bands.  During a recorded conversation, BYRD agreed to take delivery of the remaining 2200 pounds on the following day.  BYRD was arrested but was released on bond.

(Exhibit A, affidavit page 3.)   Thus, the defendant was arrested (and recorded) attempting to purchase 500 pounds of marijuana.   The $267,920 in cash was used by the defendant to purchase the initial 500 pounds of marijuana, and the defendant intended to purchase an additional 1,700 pounds of marijuana the following day.

The affidavit also provided details about the subsequent seizure of cash from the

Defendant's house:

> Three weeks later, on March 7, 2011, detectives executed a search warrant at 5346 East Royal Palm Road, Paradise Valley, Arizona, which had been identified by investigators as the primary residence of Richard BYRD.   During the search, investigators seized $749,080 in cash that was vacuum sealed and found contained in two suitcases in a closet attached to the master bedroom.   The vacuum sealed stacks of U.S. Currency were rubber-banded and divided into bundles of varying amounts with hand-written amounts on each bundle, similar in fashion to the cash in the suitcase that BYRD used to buy the marijuana on February 17th.   At the time of the search and the period leading up to it, Richard BYRD had no known legitimate source of income.   Based on the sequence of events, there is reason to believe that the cash found in BYRD's residence was intended to be used to complete the 2700 pound transaction for the remaining 2200 pounds of marijuana.

(Exhibit A, affidavit at 4.)   Thus, another $749,080 in cash was found in the defendant's

residence, and it was found in suitcases, bundled in similar fashion to the cash that he used to

buy marijuana from the police.   In addition, the affidavit explained that the defendant "had no

known legitimate source of income."   (*Id.*, affidavit at 4.)

Because the affidavit states that the defendant took partial delivery (i.e., 500 pounds) on

the day that he was arrested and planned to take delivery of a larger amount of marijuana (i.e.,

2,200 pounds) the very next day, there was reason to believe that the similarly-packaged cash

seized from the residence (approximately three times what he brought to the initial purchase) was

intended to be used to complete the purchase of marijuana (which was a little more than four

times the 500 pounds of marijuana he tried to purchase initially).   Because the defendant "had

no known legitimate source of income," there was reason to believe that the cash was all the

proceeds of prior drug transactions.

The affidavit also describes other money seizures and the shipment of a number of packages believed to contain drugs.   Records established that the defendant was making those package shipments "at least since January of 2010, and … some of the recent packages have been confirmed to contain marijuana and cocaine."   (Exhibit A, affidavit at 6.)   The affidavit then provides an outline of the purchase of a number of vehicles during that same period.   (*Id.*) Thus, the affidavit establishes probable cause to believe that the defendant was engaged in large-scale drug trafficking, that he had a large quantities of unexplained cash that he was using to conduct drug transactions, and that he bought a number of vehicles during a time when he had no known legitimate source of income.

Although the defendant may be able to show that he has no assets to hire counsel, he has not made a prima facie showing of a lack of probable cause to believe that he was involved in drug trafficking or to find that the targeted assets were connected to the charged offense.   This despite the fact that the grand jury and a magistrate judge both found that there was probable cause. Because the defendant has failed to make the required showing to qualify for a probable cause hearing, such a hearing is not required or necessary, and the request to spend funds subject to forfeiture should be denied.

## Conclusion

Based on the foregoing, the government respectfully requests an order (1) that directs the law firm of Perkins Coie to comply with the valid seizure warrant for the funds and vehicles in their possession; (2) that directs the State of Arizona to turn over to the U.S. Marshals Service certain assets in the State's possession; and (3) that directs the U.S. Marshals Service to hold the

assets that are turned over by the Perkins Coie law firm and the State of Arizona pending further

order of this Court.    The government also respectfully submits that the defendant's request for a

pretrial hearing on probable cause should be denied.

<div style="margin-left: 45%;">

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


       //s//
James G. Warwick
Kenneth S. Clark
Assistant United States Attorney
36 South Charles Street
Fourth floor
Baltimore, Maryland 21201

</div>

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 30, 2015, a copy of the foregoing Government's

Response to Defendant's Motion to Postpone Trial was provided to counsel of record by efiling.


        //s//

Kenneth S. Clark
Assistant United States Attorney