# *Exhibit D*

13-1683 BPG

### UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

In the Matter of the Seizure of
(address or brief description of property to be seized)

**Various funds and vehicles.**   **APPLICATION AND**
**AFFIDAVIT FOR SEIZURE WARRANT**
CASE NUMBER:   13-1683 BPG

Kevin M. Ermer, Task Force Officer, United States Drug Enforcement Administration, being duly sworn deposes and says:

I have reason to believe that there is now certain property in Arizona, and elsewhere, which is the subject of forfeiture to the United States, namely (describe property to be seized):

    the various funds and vehicles specified on ATTACHMENT A
    in the custody or control of Richard C. Byrd,

which are (state one or more bases for seizure under the U.S. Code)

subject to forfeiture pursuant to 21 U.S.C. section 881(a)(6) because the contents are proceeds of drug transactions or are intended to be furnished in exchange for controlled dangerous substances in violation of 21 U.S.C. section 841, and, as to the 2002 Chevrolet Suburban, which is subject to forfeiture pursuant to 21 U.S.C. section 881(a)(4) because it was used and was intended to be used to transport marijuana in violation of 21 U.S.C. section 841.

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are set forth in the attached Affidavit.

_____
Kevin M. Ermer
Task Force Officer with the Drug Enforcement Administration
Officer, Maryland Transportation Authority Police Department

Sworn to before me, and subscribed in my presence on (Date) July 12, 2013 at Baltimore, Maryland.

                         _____
                         Honorable Beth P. Gesner
                         United States Magistrate Judge

13-1683 BPG

**AFFIDAVIT**

I. **Purpose of Affidavit**

This affidavit is submitted in support of an application for a seizure warrant for the following:

A.  $749,080.00 in U.S. Currency seized from 5346 E. Royal Palm Road, Paradise Valley, AZ 85253, on or about March 7, 2011.
B.  $267,920.00 in U.S. Currency seized from Richard BYRD on or about February 17, 2011.
C.  $18,000.00 in U.S. Currency seized from the 2002 Chevrolet Suburban, VIN# 1GNEC16ZX2J306541, AZ Registration ANK4399, on or about February 17, 2011.
D.  One 2007 Silver Mercedes, AZ Registration AMC7192, VIN #WDDNG71X17A044685 registered to Shantel ROSHELL.
E.  One 2010 Can AM Spyder Motorcycle, AZ Registration 62L6MC, VIN# 2BXJADA16AV000230 registered to Laura IRROBALL.
F.  One 2008 Mercedes CLS 550, CA Registration 6NWK853, VIN# Unknown.
G.  One 2007 Mercedes SL500, CA Registration 6MTF429, VIN# WDDNG71X47A032840.
H.  One 2002 Chevrolet Suburban, AZ Registration ANK4399, VIN# 1GNEC16ZX2J306541.

I submit that there is probable cause to believe that these items are all money or other things of value furnished or intended to be furnished in exchange for controlled substances in violation of 21 U.S.C. section 841, or are proceeds traceable to such an exchange, and that these items, therefore, are subject to seizure and forfeiture pursuant to 21 U.S.C. section 881(a)(6). I submit that there is also probable cause to believe that the 2002 Suburban was used and was intended to be used to transport and to facilitate the transportation, receipt, and possession of marijuana, and, therefore, it is subject to seizure and forfeiture pursuant to 21 U.S.C. section 881(a)(4). Because of an order issued by the Court of Appeals for the State of Arizona, dated April 22, 2013, there is probable cause to believe that items A through I above are in the custody and control of Richard Byrd in Arizona.

II. **Affiant**

I, Kevin M. Ermer, have been a law enforcement officer with the Maryland Transportation Authority Police Department since 2005, and I have been serving as a Task Force Officer with the U.S. Drug Enforcement Administration (DEA) for two years. During that time, I

1

have prepared and executed numerous search and seizure warrants, seized evidence of both state and federal violations, interviewed numerous suspects, witnesses, and informants, and evaluated evidence obtained during the course of these investigations.

## III. Applicable Statutes

### 21 U.S.C. § 841(a) (distribution of controlled substances)

(a)  **Unlawful acts-** Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally-
   (1)  to … distribute … or possess with intent to … distribute … a controlled substance…. [Marihuana is a controlled substance listed in Schedule I(c)(10) of 21 U.S.C. section 812(c).]

### 21 U.S.C. section 881 (asset forfeiture)

(a)  **Subject property-** The following shall be subject to forfeiture to the United States and no property right shall exist in them:

\* \* \*

(4)  All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale receipt, possession, or concealment of [controlled substances].

\* \* \*

(6)  All moneys … or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance … in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys … used or intended to be used to facilitate any violation of this subchapter. [section 841 and section 881 are both found in Subchapter I of Chapter 13 of Title 21.]

## IV. Probable Cause

This affidavit is based upon my conversations with other law enforcement officers and upon my examination of various transcripts, reports, and bank records. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of a seizure warrant for the listed items of property, it does not include all the facts that have been developed during the course of the investigation.

Since February of 2011, Agents and Task Force Officers from DEA Baltimore HIDTA Group 51, Arizona Financial Crimes Taskforce (AFCTF) and Homeland Security Investigations have been conducting an

2

investigation involving the importation and distribution of Marijuana and Cocaine into the Baltimore Metropolitan area and various other areas around the country by Richard BYRD and others. Confidential Informants reported to investigators that Richard BYRD and people working with him have been obtaining large quantities of marijuana and cocaine from unknown sources in Texas, Arizona, and California, and that they have been distributing that marijuana and cocaine in the Baltimore Metropolitan area, Virginia, Ohio, Georgia, South Carolina, and Florida over the past ten years. Through surveillance, controlled purchases, and reviews of records, investigators corroborated the information provided by the confidential informants. In fact, records confirm that BYRD was convicted in Baltimore City in 1993 for possession with intent to distribute controlled substances.

In early 2011, Arizona Police detectives learned that BYRD was interested in buying a large load of marijuana, and officers made arrangements to sell marijuana to BYRD. On February 17, 2011, Richard BYRD was arrested by Arizona Police officers as he attempted to take delivery of 500 pounds of marijuana. He arrived at the transaction location driving a 2002 Chevrolet Suburban, Arizona Registration ANK4399, VIN# 1GNEC16ZX2J306541. He had agreed to buy a total of approximately 2700 pounds of marijuana in two deliveries.

According to the Arizona authorities, BYRD personally inspected a bale of marijuana on February 17, 2011, and turned over a suitcase containing $267,920 in cash for the first 500 pounds; the cash was bundled with rubber bands. During a recorded conversation, BYRD agreed to take delivery of the remaining 2200 pounds on the following day. BYRD was arrested but was released on bond.

The Suburban also was seized by Arizona authorities on February 17, 2011, and during a search of the vehicle, police found $18,000 in cash that was bundled and banded in the same way as the money that was in the suitcase that Byrd had used to pay for the marijuana. Based on my training and experience, I believe that it is apparent that Byrd brought the extra money along in case there was an unexpected change in the price for the marijuana.

Three weeks later, on March 7, 2011, detectives executed a search warrant at 5346 East Royal Palm Road, Paradise Valley, Arizona, which had been identified by investigators as the primary residence of Richard BYRD. During the search, investigators seized $749,080 in cash that was vacuum sealed and found contained in two suitcases in a closet attached to the master bedroom. The vacuum sealed stacks of U.S. Currency were rubber-banded and divided into bundles of varying amounts with hand-written amounts on each bundle, similar in fashion to the cash in the suitcase that BYRD used to buy the marijuana on February 17th. At the time of the search and the period leading up to it, Richard BYRD had no known legitimate source of income. Based on the sequence of events, there is reason to believe that the cash found in BYRD's residence was intended to be used to complete the 2700 pound transaction for the remaining 2200 pounds of marijuana.

After the arrest of BYRD, officers with the Arizona Financial Crimes Task Force located documents indicating that Andrea KING, BYRD's sister, was involved in money laundering. Based in part on that information, in April 2011, DEA Baltimore executed a search warrant at KING's residence at 9500 Sidebrook Road, Apartment 407, Owings Mills, Maryland 21117, and seized approximately $46,000 in cash and money orders. At the time of the search, Richard BYRD was found in the apartment with his sister.

In July 2012, Phoenix Police executed a search warrant at a house occupied by Richard BYRD and his brother Rasan BYRD. During the search, officers seized about 1½ pounds of marijuana and approximately $372,540 in cash.

During March 2013, DEA agents learned that large freight shipments were sent from "Airpark Pak N Ship" in Scottsdale, Arizona, to 5819 Moravia Road, Baltimore, Maryland. Investigators in Maryland conducted surveillance of 5819 Moravia Road, and on March 20, March 30, and April 5, 2013, saw freight shipments delivered. Each delivery consisted of two, large, cardboard boxes attached to a pallet.

On April 17, 2013, an Arizona surveillance detective saw Rasan BYRD, Richard BYRD's brother, meet with a person who was later identified as Thurston LINDSEY. The next day, on April 18th, a

4

detective followed LINDSEY to Airpark Pak N Ship in Scottsdale, where LINDSEY was observed unloading large, cardboard boxes from his van. Airpark Pak N Ship records show that a 668 pound shipment was being sent by Lindsey to 5819 Moravia Road, Baltimore, Maryland 21206.

On April 20th, three days later, LINDSEY's vehicle returned to the Airpark Pak N Ship, and LINDSEY dropped off additional large, cardboard boxes to be shipped. Two days later, on April 22, 2013, LINDSEY's vehicle again traveled to Airpark Pak N Ship where a detective saw LINDSEY drop off additional boxes of the same size and type previously dropped off there, and previously sent to Moravia Road. These boxes also matched the description of the boxes that agents saw being delivered to Moravia Road on March 20th and 30th and April 5th.

LINDSEY then returned to a residence at 8223 West Hazelwood Street; surveillance agents twice saw Rasan BYRD near that residence. Later that same day, LINDSEY's vehicle left 8223 West Hazelwood Street and appeared to be traveling back to Airpark Pak N Ship. Officers executed a traffic stop on LINDSEY's vehicle and LINDSEY fled on foot but was apprehended shortly thereafter. During a search of LINDSEY's van, officers found approximately 233 pounds of marijuana in a large, cardboard box.

Detectives then went to Airpark Pak N Ship and seized four large, cardboard boxes that contained 35 pounds of cocaine and 527 pounds of marijuana. Store records indicate that the four boxes had been dropped off by LINDSEY to be shipped, but that a destination address had not yet been provided.

That same day, on April 22, 2013, investigators executed six search warrants in Baltimore at locations associated with members of Richard BYRD's organization. Investigators seized approximately 342 pounds of marijuana at 5819 Moravia Road. Just before the warrant was executed at the Moravia Road location, agents watched the delivery of a shipment that was accepted by Joseph Byrd, Harold Byrd, and Maurice Jones. During the execution of the several warrants, agents found records showing prior shipping information from Airpark Pak N Ship and records of payments made to Airpark Pak N Ship.

In an interview on April 25, 2013, the owner of Airpark Pak N Ship in Scottsdale identified Richard BYRD as the owner of a cabinet company who came into the store approximately three years ago and stated that his company would be shipping cabinets to various locations on the East Coast. The owner also stated that, since that time, two individuals have shipped multi-hundred pound shipments as representatives of the cabinet company from his store to Maryland and Georgia <u>on a weekly basis</u>. The owner provided records showing <u>shipments sent to 5819 Moravia Road, Baltimore, Maryland 21206, beginning in January 2010</u>.

Based on information from the confidential informants mentioned above, it appears that Richard BYRD has been engaged in large-scale marijuana and cocaine trafficking for at least ten years. The owner of Airpark Pak N Ship confirms that <u>BYRD's company has been shipping large packages at least since January of 2010, and, as is demonstrated above, some of the recent packages have been confirmed to contain marijuana and cocaine</u>.

Government motor vehicle records indicate that the following vehicles were purchased by BYRD:

- One 2007 Silver Mercedes, AZ Registration AMC7192, VIN #WDDNG71X17A044685 registered to Shantel ROSHELL. This vehicle was purchased in June 2010 by Ms. Roshell using personal checks and a cashier's check. During an interview, Ms. Roshell stated that she bought the car for Robert Smith and that she provided none of the funds used to pay for the car. The California driver's license used by Robert Smith has Richard Byrd's photograph. After the real Robert Smith, who lives in North Carolina, received a number of traffic violation notices from Arizona, he filed a letter stating that someone was using his identity and that he had never had an Arizona driver's license.

- One 2010 Can AM Spyder Motorcycle, AZ Registration 62L6MC, VIN# 2BXJADA16AV000230 registered to Laura IRROBALI. Part of the purchase price was paid by a debit of $8,500 to Byrd's Robert Smith bank account on June 23, 2010. Purchase records indicate that the entire $21,500 was paid at the time of delivery. Byrd's Robert Smith bank account also indicates a cash withdrawal of $9,540 on June 23, 2010. Towing company records show that Robert Smith called to

13-1683 BPG

have the towing company pick up this motorcycle on July 23, 2010. Also, a surveillance agent observed Byrd driving this motorcycle in 2011.

One 2008 Black Mercedes CLS 550, CA Registration 6NWK853, VIN WDDDJ72X28A129550. Robert Smith purchased this vehicle in October 2010 for $34,900. He used another Mercedes as a trade in worth $16,000. This left a balance of $18,900 to be financed and paid off over a period of only 4 months. The California driver's license used by Robert Smith in connection with this purchase has Richard Byrd's photograph.

One 2007 Mercedes SL500, CA Registration 6MTF429, VIN# WDDNG71X47A032840. This vehicle was purchased in July 2010 by Robert Smith for $47,900. The purchase was made using cashier's checks and some personal checks drawn on a Robert Smith bank account. The California driver's license used by Robert Smith in connection with this purchase has Richard Byrd's photograph.

One 2002 Chevrolet Suburban, AZ Registration ANK4399, VIN# 1GNEC16ZX2J306541. Byrd used this vehicle to carry the $267,920 to purchase 500 pounds of marijuana in February 2011. Because he intended to take the 500 pounds away with him, there is reason to believe that this Suburban was used and was intended to be used to transport and to facilitate the transportation, receipt, and possession of marijuana. The Suburban is registered in the name of Fernando Sanchez at a Post Office Box address. Agents have been unable to further identify Sanchez or locate him.

All of the items specified on Attachment A were in the custody of the Arizona authorities until after April 22, 2013. On March 18th, a judge of the Arizona Superior Court issued an order directing the release of all of the items specified on Attachment A to Richard Byrd after Byrd claimed ownership of all of those items. The State of Arizona has appealed that order, but the Arizona Court of Appeals issued an order dated April 22, 2013, that denies a stay of the release order pending the appeal. However, the Court of Appeals also issued protective order language that directs BYRD not to transfer or otherwise dispose of any of the items specified on Attachment A to this warrant application. A copy of the opinion and order of the

Arizona Superior Court on this matter is annexed hereto as **Attachment B**. Because that order was based on procedural issues in the state forfeiture proceedings and not on the merits of any seizure or forfeiture, this application is not affected by any findings in that case.

Bank records show that during July and October 2010, a total of $58,200 was deposited into Laura Irrobali's bank accounts at branches in Maryland and that $57,200 then was withdrawn from the same accounts at branches in Scottsdale, Arizona. As is mentioned above, Laura Irrobali also acted as a nominee for Robert Smith (Byrd) in the purchase of a motorcycle in Arizona. Based on my training and experience, I know that this activity resembles transactions that are known as "funnel accounts," frequently used for drug transactions. West Coast traffickers open a "funnel account" with a national bank, then the proceeds from East Coast drug sales are deposited in the account in East Coast branches of that bank. Then, the trafficker simply withdraws the funds in cash from the account using West Coast bank branches.

During the month of August 2012, investigators observed Richard BYRD in the Baltimore area meeting with three people at a restaurant. Several hours later, surveillance agents saw Richard BYRD in the vicinity of the Waterfront Marriott Hotel in Baltimore. They watched as Richard BYRD pulled a large, black trash bag out of the trunk of an Audi sedan. Byrd approached a Cadillac Escalade with the bag and handed the trash bag through the driver's side window of the Escalade to someone in the car. Richard BYRD then left the area in the Audi. Your affiant believes, based on knowledge, training, and experience that this was a drug or money transfer.

Based upon my training and experience, I know that 18 U.S.C. section 981(b)(3) provides that "a seizure warrant may be issued ... by a judicial officer in any district in which a forfeiture action against the property may be filed under Section 1355(b) of title 28, and may be executed in any district in which the property is found…." According to 28 U.S.C. Section 1355(b)(1)(A), a forfeiture action may

8

be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred...."

In this case, shipments of marijuana and cocaine were sent from Arizona to 5819 Moravia Road in Baltimore in the District of Maryland, by Byrd and others, since at least January 2010; therefore, there are reasons to believe that some of the acts in furtherance of the drug conspiracy occurred in Maryland. See United States v. Property Identified as $88,260 in U.S. Currency, 925 F.Supp. 838, 840 (D.D.C. 1996)("The government could therefore have proceeded against the defendant property in any of the jurisdictions wherein the [drug] conspiracy allegedly took place..."). See also United States v. Premises Known as 6 Tenby Court, 1997 WL 549989 (E.D.Pa. 1997)(forfeiture action in Pennsylvania drug case against real property located in New Jersey). Because the Byrd drug conspiracy took place in Maryland and in Arizona, the forfeiture action can be pursued in Maryland. Consequently, a seizure warrant for property connected with the drug conspiracy can be issued in Maryland.

Because Byrd apparently did not have a legitimate source of income during that same period of time, there is probable cause to believe that the proceeds of the sales of the marijuana and cocaine in Maryland were accumulated and held by Byrd in Arizona, and were used to finance the purchase of more marijuana and cocaine in Arizona, California, and elsewhere. For the same reasons, there is probable cause to believe that some of those same proceeds were used to purchase the vehicles specified in Attachment A. Indeed, none of the vehicles are in Byrd's name, and, yet, as is mentioned above, Byrd claimed ownership of all of them in Arizona. For these reasons, the forfeiture action can be brought in the District of Maryland, and the seizure warrants may be issued in the District of Maryland.

According to 18 U.S.C. section 981(b)(3), once the warrants are issued, they "may be executed in any district in which the property is found." A seizure warrant, however, does not authorize an agent to enter onto private property to execute it; the seizure warrant expressly only authorizes a seizure. It is self-evident that a search warrant would be required before an agent could enter onto private

9

property to seize an item targeted in a seizure warrant, unless there is an exception to the warrant requirement. See Florida v. White, 526 U.S. 559, 565-66 (1999)(no Fourth Amendment violation in seizure of a car subject to forfeiture when it was found in a public place); United States v. Nelson, 530 F.Supp.2d 719, 729-30 (D.Md. 2008)(agents executing a search warrant can conduct a seizure of cars not named in the warrant); United States v. Gaskin, 364 F.3d 438, 458 (2nd Cir. 2004)(agents can seize a vehicle without a warrant if it is in a public place); United States v. Wright, 171 F.Supp.2d 1195, 1209-10 (D.Kan. 2001)(same). See also United States v. $291,828 in U.S. Currency, 536 F.3d 1234, 1237 (11th Cir. 2008)(seizure of property found inside a residence is allowed if entry into the home was justified by exigent circumstances and there is probable cause to believe that the property is subject to forfeiture); United States v. Warren, 181 F.Supp.2d 1232, 1244-47 (D.Kan. 2001)(items found during the execution of a search warrant but not specified in the warrant may be seized for forfeiture); United States v. Medina, 301 F.Supp.2d 322, 332-33 (S.D.N.Y. 2004)(cash found during a protective sweep of an apartment may be seized for forfeiture). This application does not seek a warrant to enter onto private property to execute a seizure.

Indeed, as is mentioned above, the Arizona Court of Appeals issued an opinion, which is dated April 22, 2013, and is still pending and in effect, that directed Byrd as follows:

> IT IS FURTHER ORDERED that appellee [Byrd] shall place the seized monies in an interest-bearing account of his choice and shall not remove the funds from that account during the pendency of this appeal;
> IT IS FURTHER ORDERED that appellee [Byrd] shall not convey the seized vehicles or remove any of the seized property from the court's jurisdiction during the pendency of this appeal.

Thus, there is reason to believe that the property specified on Attachment A is in the custody of Richard Byrd in Arizona. Consequently, the seizure warrant pertaining to those items, if executed, can be presented directly to Richard Byrd's counsel in Arizona, and a search warrant will not be necessary.

13-1683 BPG

## V. Conclusion

Based on the foregoing, I submit that there is probable cause to believe that all of the items specified on Attachment A are money or other things of value furnished or intended to be furnished in exchange for controlled substances in violation of 21 U.S.C. section 841, or are proceeds traceable to such an exchange, and that these items, therefore, are subject to seizure and forfeiture pursuant to 21 U.S.C. section 881(a)(6). I submit that there is also probable cause to believe that the 2002 Suburban was used and was intended to be used to transport and to facilitate the transportation, receipt, and possession of marijuana, and, therefore, it is subject to seizure and forfeiture pursuant to 21 U.S.C. section 881(a)(4).

_____
Kevin M. Ermer
Detective
Maryland Transportation Authority Police Department
Drug Enforcement Administration Task Force Officer

Subscribed and sworn to before me on July 12, 2013.

_____
Beth P. Gesner
United States Magistrate Judge

11

13-1683 BPG

## ATTACHMENT A

### Items to be seized from Richard Byrd

A.  $749,080.00 in U.S. Currency seized from 5346 E. Royal Palm Road, Paradise Valley, AZ 85253, on or about March 7, 2011.

B.  $267,920.00 in U.S. Currency seized from Richard BYRD on or about February 17, 2011.

C.  $18,000.00 in U.S. Currency seized from the 2002 Chevrolet Suburban, VIN# 1GNEC16ZX2J306541, AZ Registration ANK4399, on or about February 17, 2011.

D.  One 2007 Silver Mercedes, AZ Registration AMC7192, VIN #WDDNG71X17A044685 registered to Shantel ROSHELL.

E.  One 2010 Can AM Spyder Motorcycle, AZ Registration 62L6MC, VIN# 2BXJADA16AV000230 registered to Laura IRROBALL.

F.  One 2008 Mercedes CLS 550, CA Registration 6NWK853, VIN# Unknown.

G.  One 2007 Mercedes SL500, CA Registration 6MTF429, VIN# WDDNG71X47A032840.

H.  One 2002 Chevrolet Suburban, AZ Registration ANK4399, VIN# 1GNEC16ZX2J306541.