*Exhibit G*

13-1683 BPG

Michael K Jeanes, Clerk of Court
\*\*\* Electronically Filed \*\*\*
02/19/2013 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                        02/15/2013

                                                    CLERK OF THE COURT
HONORABLE LISA DANIEL FLORES                             D. Glab
                                                          Deputy

IN THE MATTER OF RICHARD C BYRD, et al.    JEFFREY RYAN BORUP

                                                    JEAN JACQUES CABOU
                                                    SHARAD H DESAI
                                                    KENNETH W RAVENELL

UNDER ADVISEMENT RULING

    The Court held a probable cause hearing in a forfeiture matter, pursuant to ARS § 13-4310(B), over the course of several days. At the conclusion of the hearing, counsel argued Defendant's Motion to Dismiss, filed June 12, 2012. The parties filed simultaneous written closing arguments related to the probable cause hearing. The date agreed upon by both the Court and counsel for the written closing arguments was December 17, 2012.

    <u>Defendant's Motion to Strike and Motion for Sanctions, filed December 21, 2012.</u> Two days after the parties filed their simultaneous closing arguments, the State filed another document entitled "Appendix 'A' to Plaintiff's Summation Re: ARS § 13-3210(B) Hearing Held September 20, 2012 and November 26 – 27." Despite its title, which might lead one to believe that it contained exhibits referenced in the State's Summation, it was additional argument. Although in its response to the Motion to Strike, the State claimed that Appendix "A" was a "supplemental submission in response to this Court's order to explain Arizona's civil forfeiture scheme," the December 17, 2012 Summation at pp. 2 – 6 already included the State's explanation of the forfeiture statutory scheme. The State did not seek leave to file any additional argument, and the filing of Appendix "A" was improper.

Docket Code 926                              Form V000A                              Page 1

— ATTACHMENT B —

13-1683 BPG

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                02/15/2013

IT IS ORDERED granting Defendant's Motion to Strike the State's Appendix "A," filed December 19, 2012. Appendix "A" will not be considered.

The Motion for Sanctions was based on the State's decision to attach a transcript of the July 16, 2012 Grand Jury proceeding which lead to Defendant being indicted. The Court agrees with Defendant that the Grand Jury transcript was, and is, sealed and should not have been attached to the State's Summation, which is in the public record. See ARS § 13-2812. Although the State failed to note in the Summation that the attached Grand Jury transcript resulted in an indictment that was vacated by the assigned Criminal Department judge, the Court was aware of this fact from evidence admitted during the evidentiary hearing, and was not mislead.

The State raised other issues in its response that must be addressed.

1. <u>The Court did not order that the Grand Jury transcript be presented.</u> The hearing was an opportunity for the State to present its witnesses to establish probable cause, and for those witnesses to be cross-examined. The transcript of an *ex parte* proceeding was neither requested nor ordered by the Court.

2. <u>The State has no "due process right" to present the Grand Jury transcript.</u> In the case cited by the State to support its claim to due process rights, the government admitted that "the government does not share a defendant's right to due process." *US v. Thoms*, 684 F.3d 893, 900 (2012).

The *Thoms* case discussed the importance of federal district court judges holding *de novo* evidentiary hearings before departing from a magistrate judge's credibility findings. "Put another way, before a district court calls a police officer a liar, there is a strong presumption that the judge should look him in the eye first." *Id.* at 904. The decision was based not on the government's due process right but on the Court's desire "to further the integrity and accuracy of our judicial process and to facilitate the search for truth." *Id.* at 903. It has no application here, where both sides were given an opportunity to offer testimony and documentary evidence, and where – as the State said – the witness's Grand Jury testimony "is considerably the same as was offered in this case."

3. <u>The "Rules" do not require this type of evidence.</u> The statute governing the probable cause hearing directs the Court to receive and consider all evidence that would be permissible in determining probable cause at a preliminary hearing, grand jury or in a hearing before a magistrate. See ARS § 13-4310(E)(2). In other words, hearsay

13-1683 BPG

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                                  02/15/2013

comes in and foundation requirements for documents are relaxed. This statute in no way requires the Court to admit or consider a Grand Jury transcript.

4. <u>Whether the State's error was technical.</u> Unlawful disclosure of grand jury testimony is a misdemeanor. Whether it was technical, or otherwise excusable, is better left to the discretion of the Maricopa County Attorney whose office is prosecuting the criminal case.

<u>Defendant's Motion to Dismiss, filed June 12, 2012</u>. A timeline of events is necessary to this ruling.

<u>February 17, 2011</u>: Defendant allegedly was present at a "reversal" where undercover officers agreed to sell him 2,700 pounds of marijuana. On that day, Defendant allegedly presented a suitcase containing $267,920 to purchase 500 pounds of marijuana. A second buy of 2,200 pounds allegedly was planned. Defendant was taken into custody by the Chandler PD before the first buy could be completed and the suitcase and money were seized. Another $18,000 in cash was discovered in the glove compartment of his vehicle and it too was seized. Some days later, Defendant posted a $150,000 cash bond and was released.

<u>March 7, 2011</u>: Detectives from the Arizona Financial Crimes Task Force executed a search warrant and a seizure warrant at Defendant's residence. Included in the seized property were two suitcases containing a total of $749,080, additional currency from wallets, a purse and an envelope, multiple vehicles and other miscellaneous property.

<u>March 29, 2011</u>: The State filed a Notice of Pending Forfeiture and Notice of Seizure for Forfeiture, initiating the first civil forfeiture case under CV2011-005949. Defendant filed a timely claim.

<u>June 3, 2011</u>: Defendant filed a Motion for Return of Property alleging that no Complaint was filed within 60 days of the Notice of Pending Forfeiture. A response and reply were filed.

<u>July 26, 2011</u>: The State filed its Verified Complaint seeking forfeiture of the seized property both *in personam* and *in rem*.

<u>October 17, 2011</u>: Defendant filed a Motion to Dismiss.

<u>October 27, 2011</u>: The Court set oral argument on the Motion for Return of Property on December 2, 2011, and oral argument on the Motion to Dismiss on January 23, 2012.

13-1683 BPG

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                          02/15/2013

      December 1, 2011: The AAG asked AG Special Agent Steve Adelstein to review a new affidavit for seizure warrant and documents to determine if there was probable cause to retain assets. SA Adelstein's prior involvement in this case was solely to serve subpoenas on banks. He testified that he never before had been presented with a draft affidavit based on other peoples' observations and asked to determine if probable cause existed. He understood that the matter was urgent and that if he did not find probable cause, the property would have to be returned and could not be re-seized. He determined that probable cause existed only for *in rem* seizures, not for *in personam*. He did not personally take possession of any item and never saw any item. Within a couple of days of December 1, 2011, he served a Notice of Seizure for Forfeiture on Defendant's attorney as well as on the DPS finance office. SA Adelstein was aware that the State planned to seek a seizure warrant, after the "seizure," from a superior court judge. He testified that he never executed the warrant, never filed a Return or an estimate of value, as required by the Warrant (which was drafted by the State) to be made within fifteen (15) days after seizure. See SW2011-003179.

      After 4 pm that day, the State filed a Notice of Dismissal of its forfeiture complaint and a Notice of Release of Property. The State has never denied Defendant's characterization of the dismissal as having been done to avoid losing at the December 2, 2011 hearing. See the State's Summation, page 17, line 14, acknowledging "miss-steps." Although the Notice of Release of Property was filed, Defendant did not receive it that day and Defendant had no opportunity to actually get his property back.

      December 2, 2011: At the scheduled hearing, the State informed the Court (another judicial officer in the Civil Department) and Defendant's counsel that the case had been dismissed by a notice of dismissal that was self-executing, that the Attorney General seized the property which was in the possession of DPS pursuant to "a notice of seizure for forfeiture initiating seizure under a different matter." See partial transcript of December 2, 2011 hearing, attached as Exhibit B to Claimant Richard C. Byrd's Notice of Re-Urging of Application for Order to Show Cause Pursuant to ARS § 13-4310(B), filed April 12, 2012.

      Later that afternoon, Defendant filed an Emergency Motion for Release of Property and a telephonic hearing was held at 4:34 p.m. The matter was taken under advisement and the Court later ruled that it had no jurisdiction to act after the State dismissed pursuant to Rule 41(a)(1). See minute entry of February 14, 2012 in CV2011-005949.

      December 16, 2011: Defendant filed an Application for Order to Show Cause Pursuant to ARS § 13-4310(B) under the dismissed cause number. The e-filing stamp shows that it was e-filed at 5:31 p.m. December 16, 2011 was a Friday. The mailing certificate shows that the document was e-mailed and mailed to the State's attorneys that same day.

Docket Code 926                          Form V000A                              Page 4

13-1683 BPG

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                             02/15/2013

<u>December 19, 2011</u>: The State filed its Application for Seizure Warrant *In Personam* and *In Rem* under cause number SW2011-003179. The clerk's stamp shows it was filed at 4:03 p.m. The Seizure Warrant was signed by another superior court judge (in the criminal department) that same day and was filed at the same time. Whether the criminal department judge had a draft application and draft warrant prior to December 19, 2011 is unknown, but likely. (See transcript from September 20, 2012, starting at page 167.) The Application stated on page two, lines 8 - 9 that the property "was previously seized under SW2011-001716, that case having been dismissed with prejudice." This was the only reference to the fact that there had been other proceedings involving the same property. While it is unknowable whether it would have made a difference to the judge who signed the warrant, it is clear that he was not told how long the State had held Defendant's property, the circumstances of the State's dismissal of the first forfeiture action (i.e. that the State dismissed to avoid a return of the property), that a civil department judge still had under advisement Defendant's emergency motion for release of property, or that Defendant had filed, about 71 hours prior, an Application for Order to Show Cause under the dismissed cause number – the only cause number available to Defendant – in his continuing effort to get his property back[1].

<u>January 3, 2012</u>: The State filed a Notice of Pending Forfeiture and Notice of Seizure for Forfeiture, which initiated the instant cause number, CV2012-000121. The Notice document does not include a mailing certificate and there is no document in the docket indicating when it was served on Defendant or his attorney. Defendant filed a claim to the property on February 8, 2012.

<u>March 5, 2012</u>: The State filed its Verified Complaint for forfeiture *in personam* and *in rem*.

<u>April 12, 2012</u>: Defendant filed a Notice of Re-Urging of Application for Order to Show Cause Pursuant to ARS § 13-4310(B). On May 10, 2012, another judicial officer set the OSC for a return hearing on July 9, 2012.

The State said in its Summation that nothing that occurred in CV2011-005949 is before this Court because the matter was dismissed, and the State is correct. This Court cannot review anything that happened in the prior action. However, Defendant has requested dismissal for several reasons including violation of Defendant's due process right to a prompt post-deprivation hearing. The Court can, and should, consider all of the State's actions since seizing his property on March 7, 2011 to determine whether Defendant's due process rights have been violated.

---

[1] Defendant made two other attempts under cause number CV2011-005949 that also went nowhere. See documents filed December 30, 2011 and January 25, 2012.

Docket Code 926                          Form V000A                                Page 5

13-1683 BPG

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                02/15/2013

   To sum up the timeline of events, Defendant's property was seized March 7, 2011. The State failed to file its Complaint within 60 days of the Notice of Pending Forfeiture, and when the Court was about to hear argument on Defendant's Motion for Return of Property because of that failure, the State dismissed that Complaint and "seized" the property which was already being held by DPS. By that conduct, the State prevented Defendant from arguing for (and likely obtaining) the immediate return of his property because of the State's procedural errors.

   The State argued that forfeiture matters are civil in nature, subject to the Arizona Rules of Civil Procedure, and that it had the right under Rule 41 to dismiss the complaint without prejudice. Again, the State is correct. However, the State's right as a civil litigant to voluntarily dismiss a complaint does not trump the Defendant's right to Due Process when his property is seized, and does not trump the forfeiture statute that requires return of seized property if the State fails to initiate forfeiture proceedings within 60 days of the Notice of Pending Forfeiture. See ARS § 13-4308(B).

   Rather than acting immediately when the late filing of the initial complaint was brought to the State's attention on June 3, 2011, the State waited until the day before the December 2, 2011 oral argument that it expected to lose and dismissed the complaint, depriving the Court of jurisdiction to act and depriving Defendant of return of his property pursuant to Arizona law. Rather than acting immediately and filing a Notice of Pending Forfeiture under a new civil cause number that same day or within a few days, which would have given a court jurisdiction to consider Defendant's arguments (which the State was well aware of), the State waited until January 3, 2012 to file it and later (the date is unknown) to provide it to Defendant. Rather than acting immediately and filing its Verified Complaint soon after the Notice of Pending Forfeiture, the State waited until March 5, 2012 to initiate proceedings, even though the new complaint was essentially the same as the first. The State then tried hard to convince this Court not to have a probable cause hearing, which it ironically now argues gave Defendant all the process he was due.

   The State argued that it "possesses a unique status that separates it from any other civil litigant, and some statutes that apply to the usual civil litigants, e.g., provisional remedy statutes, do not apply to the State <u>when it is exercising its police powers</u>." State's Summation, page 3, lines 21 – 24 [emphasis in original]. Once again, the State is correct. However, when the State is exercising its police powers to seize property from a person who has not been convicted of any predicate criminal offense and who has not been given any opportunity for a pre-deprivation hearing, the State is required by the 5th Amendment to provide due process. At minimum, the State must comply with the statutes that authorize its conduct. Here, the State failed to do so. Due process requires notice and an opportunity to be heard. *Wohlstrom v. Buchanan*, 180 Ariz. 389, 884 P.2d 687 (1994), citing *United States v. Crozier*, 777 F.2d 1376, 1383 (9th Cir. 1985)

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                              02/15/2013

(forfeiture claimants had significant property interests and due process requires meaningful opportunity for hearing). Through a continuing course of conduct, the State deprived Defendant of the prompt hearing he was entitled to. The result was that Defendant's property was retained by the State for an unreasonable, excessive period of time in violation of Defendant's right to Due Process[2].

"Re-seizure." The Court does not find that any second seizure, effected while the State maintains possession of previously-seized property, would be a violation of due process. Indeed, if the State had immediately dismissed and "seized again" Defendant's property when the untimely first complaint was brought to its attention – which was within three months of the first seizure – the pre-hearing deprivation would have been much shorter and the outcome may have been different.

*In rem* and/or *in personam* seizure. The State has never been clear about whether it seized Defendant's property *in rem* or *in personam*. The Application for Warrant, the Warrant and the Complaint all list both theories. Special Agent Adelstein testified that he found probable cause only on an *in rem* theory. In its Summation, the State asked this Court to issue a seizure warrant now – almost two years after the seizure -- for *in personam* forfeiture if this Court finds that the property is not subject to *in rem* forfeiture. Summation, page 22, lines 23 – 27.

Seizure as evidence. In its Summation, the State raised for the first time that the seized property "is seemingly evidence" in the criminal case, and therefore "this forfeiture action is not necessarily responsible, entirely, for the deprivation of Defendant's property." Summation, page 17 line 23 through Page 18 line 4. The currency and other items seized during the Chandler Reversal likely are evidence in the criminal case [Items 2.7, 2.8, 4.8, 6.9 and 6.11.]. It is not clear whether any other items are needed as evidence, but it is also not clear why this issue has not been resolved prior to now[3]. On the Court's own motion, the ruling will be stayed in part to give the Maricopa County Attorney's Office an opportunity to clarify whether any seized property is needed as evidence in the criminal proceeding.

Dismissal with prejudice is required for violation of Defendant's due process right. Quite simply, there is no other remedy. See *United States v. James Daniel Good Property*, 510 U.S. 43, 52 - 53 (1993) (the Due Process Clause requires pre-deprivation notice and a hearing absent extraordinary situations where some valid governmental interest is at stake). *United States v.*

---

[2] The State cited no authority for its assertion that the "[t]imeliness of the instant forfeiture action must be calibrated in relationship to the date this case was initiated . . ." Plaintiff's Summation, page 17, lines 8 – 10.

[3] It is the Court's understanding that the seized currency was deposited into a DPS account and is no longer available. The possible evidentiary value of the other seized evidence is not immediately obvious.

13-1683 BPG

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                    02/15/2013

2751. *Peyton Woods Trail*, 66 F.3d 1164, 1167 (11th Cir. 1995) (where a seizure in a civil forfeiture action violates due process rights, "the forfeiture action must be dismissed").

The Court does not take lightly the result of this ruling. However, if the Defendant is convicted of any felony offense, he faces the possibility of a fine of up to $150,000 per charge for individuals, up to $1,000,000 per charge for enterprises, and up to three times the value of the drugs for drug offenses. In other words, Defendant still faces substantial financial penalties (as well as prison) if he is convicted of the predicate offenses.

The Court finds that the interests of justice require dismissal of the Forfeiture Complaint with prejudice because of the State's violation of Defendant's due process rights.

IT IS ORDERED dismissing with prejudice the State's Verified Complaint for Forfeiture filed March 5, 2012 and ordering return of the following property to Defendant Richard Christopher Byrd:

- 2.1  $749,080.00 in U.S. currency seized from 5346 E. Royal Palm Rd., Paradise Valley, AZ 85253-2528

- 2.5  $1,300.00 in U.S. currency seized from 5346 E. Royal Palm Rd., Paradise Valley, AZ (white envelope on the northwest wall)

- 4.1  2006 White Mercedes, AZ License Plate #AJR8574, VIN: 4JGCB75E16A016484

- 4.2  2007 Silver Mercedes, AZ License Plate #AMC7192, VIN: WDDNG71X17A044685

- 4.3  2009 Black BMW, AZ Temp. License Plate #0N00644, VIN: WBAKB83539CY58273

- 4.4  2010 Can AM Spyder Motorcycle, AZ License Plate #62L6MC, VIN: 2BXJADA16AV000230

- 4.5  2008 Mercedes CLS 550, CA License Plate #6NWK853, VIN: Unknown

- 4.6  2007 Mercedes SL500, CA License Plate #6MTF429, VIN: WDDNG71X47A032840

- 4.7  2007 Cadillac Escalade, License Plate: Unknown, VIN: 1GYEC638X7R260987

13-1683 BPG

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2012-000121                                                02/15/2013

IT IS ORDERED, on the Court's own motion, staying the order for return of property until April 1, 2013 for the following purposes:

- To allow the Maricopa County Attorney's Office to identify any item of seized property, released above, that is needed as evidence in the criminal proceeding.

- To allow the State to determine whether to appeal this ruling. If it is appealed, any further stay must be requested from the appellate court.

The Court notes that, for purposes of appeal, the record for CV2011-005949 and SW2011-003179 may also be necessary for a complete understanding of what happened here.

Because the Court finds that the State violated Defendant's Due Process rights by the combination of violating Arizona forfeiture statutes and its conduct to delay resolution for an unreasonable, excessive period of time, the Court does not need to reach the issue of constitutionality of the forfeiture statutes themselves.

Similarly, the Court does not reach the Rule 12(b)(6) issues raised in Defendant's Motion to Dismiss or the issue of whether probable cause existed, at the time of the hearing, for the seizures.

ALERT: The Arizona Supreme Court Administrative Order 2011-140 directs the Clerk's Office not to accept paper filings from attorneys in civil cases. Civil cases must still be initiated on paper; however, subsequent documents must be eFiled through AZTurboCourt unless an exception defined in the Administrative Order applies.