## AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

### I. AFFIANT AND EXPERTISE

1. Your Affiant, David Phillips, is an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code. Specifically, your Affiant is currently deputized as a federal Task Force Officer with the Drug Enforcement Administration.

2. Your Affiant has been a duly constituted member of the Baltimore County Police Department since October 1995. Upon graduation of the Baltimore County Police Department Training Academy, your Affiant was assigned to the Precinct 11/Essex patrol division. In August of 2000, your Affiant was assigned to the Precinct 11 Investigative Services Unit and has been assigned to the Baltimore County Narcotics Section since July of 2002.

3. Your Affiant has received 40 hours of training in the investigation of controlled dangerous substances while attending the Baltimore County Police Academy which dealt with the identification, distribution and packaging of different types of controlled dangerous substances. Your Affiant has also updated training every year at in-service training classes. Your Affiant has received specialized training that has included the following: DEA SOD Telecommunications Exploitation Program; DEA SOD Internet Telecommunications Exploitation Program; DEA Financial Investigation Seminar; DEA Task Force Officer Training; Maryland State Police Top Gun Undercover Narcotic Investigation School; Electronic Surveillance and Wire Tap School; Drug Recognition Seminar; Basic Criminal Investigation Seminar; MAGLOCLEN Interview and Interrogation Conference; BCoPD Interview and Interrogation Seminar; Cellular Phone Fraud Investigation; Search and Seizure Seminar.

RDB-14-0186

SW6-0003
BYRD-1696
BYRD-1696

4. During your Affiant's tenure with the Baltimore County Police Department, he has participated in the writing, preparation, and execution of numerous search and seizure warrants, which have resulted in the seizure of quantities of controlled dangerous substances, assorted items of packaging materials, paraphernalia related to the narcotics trade, ledger sheets, customer lists, currency and weapons used in the furtherance of illegal narcotics trafficking.

5. While assigned to the Narcotics Section for the Baltimore County Police Department, your Affiant has made several controlled purchases of controlled dangerous substances while acting in an undercover capacity.

6. Your Affiant has participated in numerous prior investigations that have utilized court ordered interception of wire communications as an investigative tool; therefore, your Affiant is familiar with the lawful use of electronic and wire surveillance equipment in investigations of distribution of controlled dangerous substances. Through these experiences your Affiant has lawfully intercepted conversations and become familiar with jargon related to the distribution of controlled dangerous substances.

7. As a result of his law enforcement experience, your Affiant, TFO Phillips, has debriefed numerous defendants, cooperating witnesses, and others who have had experience in the distribution, packaging, and distribution of controlled dangerous substances. Consequently, your Affiant has become familiar with the phraseology and practices of those that abuse and illegally distribute controlled dangerous substances.

8. Your Affiant knows based on his knowledge, training, and experience that persons involved in the illegal distribution of narcotics often keep and maintain records of their various illegal activities. These records may take the form of documents or are kept electronically on computers and other electronic storage devices. Experience in similar cases has

established that such records are regularly concealed in a suspect's automobile, residence, office, on his person, in warehouses and storage lockers, and that they take various forms. Documents commonly concealed by traffickers, include but are not limited to notes in code, deposit slips, wired money transactions, savings pass books, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled dangerous substances or other such documents which will contain identifying data on the co-conspirators. The aforementioned items are kept in locations that are considered safe by the drug traffickers such as safety deposit boxes, residences, stash houses, warehouses, vehicles and on their person, where they have ready access to them. I know that drug traffickers often maintain several residences decreasing the likelihood of detection by law enforcement.

9.   Your Affiant has also participated in joint narcotics and money laundering investigations, which included interviewing individuals who have been involved in money laundering activities and reviewing financial records. As a result of your Affiant's experience, your Affiant has been exposed to the various techniques and methods used to disguise and conceal proceeds derived from illegal activity.

10.  In addition, based on your Affiants training and experience, narcotics traffickers frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities and frequently maintain numerous such electronic devices in an effort to conceal their activities.

SW6-0005
RDB-14-0186
BYRD-1698
BYRD-1698

## II. LOCATION TO BE SEARCHED

11. This affidavit is submitted in support of an application to search the following location (the "SUBJECT LOCATION); and any mobile devices (including cell phones) discovered at the SUBJECT LOCATION.

### A. INVESTIGATIVE SUBJECT

a. Kimberly Renee **REID**, DOB 07/11/79, black female, 5'-00" tall, 150 lbs., black hair, brown eyes.



### B. SUBJECT LOCATION

a. **12315 Queens River Drive, Houston, Texas 77044** is described as two story single family home with white siding on the top level of the house and red brick on the bottom section of the house. The residence has an attached two car garage with a white garage door. To the right of the garage door there is a white placard with numbers "12315" in back. This location is the residence of **Kimberly REID**. Your Affiant is familiar with this location.

4



### III. BASIS OF INFORMATION

12. Your Affiant makes this affidavit based upon personal knowledge derived from his participation in this investigation and upon information your Affiant believes to be reliable from the following sources: (a) his experience investigating drug trafficking and money laundering organizations; (b) oral and written reports, and documents about this investigation that your Affiant has received from members of DEA, HSI, local law enforcement, and other federal law enforcement agencies; (c) discussions your Affiant has had personally concerning this investigation with experienced narcotics and money laundering investigators; (d) physical surveillance conducted by DEA, HSI, and local law enforcement agencies, the results of which have been reported to your Affiant either directly or indirectly; (e) public records; and (f) telephone toll records, pen register and trap and trace information, and telephone subscriber information.

13. Since this Affidavit is being submitted for the limited purpose of securing search and seizure warrants, your Affiant has not included each and every fact known to him concerning this investigation. Your Affiant has set forth only the facts that your Affiant believes are

SW6-0007
RDB-14-0186
BYRD-1700
BYRD-1700

necessary to establish the foundation of probable cause needed for the authorization of search and seizure warrants. Your Affiant has not excluded facts that would defeat probable cause.

## IV.   BACKGROUND AND PROBABLE CAUSE

**Investigation (Richard BYRD Drug Trafficking Organization)**

14.   The Richard BYRD Drug Trafficking Organization ("DTO") is responsible for the procurement, transportation, distribution and sale of large amounts of marijuana and cocaine between the states of California, Arizona, Texas, North Carolina, Pennsylvania, Ohio and Maryland. Richard BYRD has been identified by several individuals, some of whom are willing to testify, as a major narcotics trafficker in the United States. Additionally, Richard BYRD's organization is extremely complex and utilizing numerous identified and unidentified individuals in the organization to carryout there criminal activities to include drug importation, money laundering, drug and currency transportation, and drug distribution. A preliminary indictment has been returned by a grand jury sitting for the District of Maryland under Case No. GLR-14-0186. The Indictment charges Richard Byrd and Rasan Byrd with Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine and Marijuana. Additional defendants and charges pertaining to money laundering offenses will be presented to the grand jury for consideration in the coming weeks.

15.   Since April of 2011, investigators from the Drug Enforcement Administration (DEA), Arizona Financial Crimes Task Force (AZFCTF), Internal Revenue Service Criminal Investigation (IRS-CI) and Homeland Security Investigations (HSI) have been conducting an investigation into the activities of Richard BYRD and other co-conspirators within this drug organization. Investigators have determined that Richard BYRD is obtaining multi-thousand pound quantities of marijuana and kilogram quantities of cocaine from sources of supply in

Texas, Arizona, California, distributing the controlled substances in the Baltimore Metropolitan area and other states listed above, and laundering the drug proceeds through various financial institutions.

16. During the month of February 2011, Richard BYRD was arrested by Chandler, Arizona Police Department as part of a reversal operation involving the sale of marijuana and additional money laundering charges. Since Richard BYRD's arrest, investigators have seized over $1,000.000.00 in U.S. Currency that has been directly tied to the Richard BYRD drug trafficking organization.

17. On February 22, 2011, **Kimberly REID** allowed bank wires and cash deposits totaling $145,900.00 to be made into her Bank of America account # ending in 7354 knowing or having reason to know that these deposits were derived from drug proceeds. **REID** then used $145,000.00 to purchase a Cashier's check to pay for part of Richard BYRD's $150,000 bond from his February 17, 2011 Chandler drug arrest. On February 23, 2011 a cash deposit of $8,000 was made into the account. On February 24, 2011, check number 1173 for $8000 was made out to Brian Russo, who is one of Richard BYRD's Phoenix-based attorneys.

18. On February 25, 2011, **Kimberly REID** attempted to hinder AZFCTF's criminal investigation into the Richard BYRD DTO by attempting to hide evidence at Extra Space Storage located at 4028 N. 7th Street, Phoenix, AZ in Unit A331. This activity was captured on video which reflected **REID** carrying a Lindsay Lou shopping bag into the storage container.

19. On March 7, 2011, AZFCTF executed a search and seizure warrant at Extra Space Storage located at 4028 N. 7th Street, Unit A331, Phoenix, AZ which resulted in the recovery of the Lindsay Lou shopping bag which contained the following:

- Bank and financial documents under the name of Robert Smith (one of Richard BYRD's fictitious identities), to include:

- A Bank of America check book box addressed to Robert Smith at 6310 Calhoun Rd, Houston, TX.

- Robert Smith 6301 Calhoun Rd, Houston, TX Citibank account opening information; checking: 9107212944, money market: 9107212952, Catonsville, MD

- Wachovia account opening, Robert Smith, 6310 Calhoun Road, Houston, TX 77021 checking XXXX6606, savings: 1135, signed Robert Smith & deposit receipt in book for same account, $100 cash deposit

- 13 Western Union, $500.00 money order receipts dated 02/14/2011, purchased at agent locations in Bel Air, Baltimore and Owings Mills, Maryland.

- BYRD and Stacie Stewart insurance and medical documents

- Documents pertaining to a lawsuit where Richard BYRD brought about a civil claim in Miami, using the identity of Robert Smith. (This is from an auto accident September, 2010. Billing summary showed a $41,840.87 net to "Smith" and Stewart. (Bank records show that this payout was deposited, in the form of a check, into the Comerica account of Thumbs Up Marketing on 02/07/2011. Thumbs Up wired $41,000.00 into **Kimberly REID**'s account on 02/22/2011 for BYRD's bond.

- Hand notes with Andrea Shelly Ann King's SSN and account numbers written on them.[1]

- Hand note: 832-576-7726 Lincoln Davis, Social 130649483, 11-28-63, 6310 Calhoun Rd. 77021, 4104 8912 0198 3110, exp 01/13 -491 with the name Lincoln Davis. (Lincoln Davis is the name on some of the utilities at 5346 E. Royal Palm)

20. Additional evidence obtained through subpoenaed information revealed that **REID** was listed as an alternate lease on the rental contract for storage unit A331, dated October 19, 2010. The primary occupant listed was Stacie Stewart, 6310 Calhoun Road, Houston, TX 77921.[2]

21. In 2010 several trash collections were conducted at 5346 E. Royal Palm Rd, Paradise Valley, AZ 85253, then a residence of Richard BYRD. Several large mailing envelopes

---

[1] Andrea Shelly Ann King is the sister of Richard BYRD and suspected money launder for the Richard BYRD DTO.
[2] Stacie Stewart is the wife of Richard BYRD who is the head of the Richard BYRD DTO.

RDB-14-0186

SW6-0010
BYRD-1703
BYRD-1703

were in the trash from 5346 E. Royal Palm Rd, Paradise Valley, AZ 85253 addressed to Stewart at her PO Box in Arizona and sent from **Kimberly REID** in Houston, Texas.

22. On March 7, 2011, **REID** was arrested for Participating in a Criminal Syndicate, Money Laundering and Hindering Prosecution (1st Degree) regarding Richard Byrd's arrest in Arizona for the several hundred marijuana reversal on February 16, 2011. **REID** was booked into Maricopa County jail. She had the following items in her possession at the time of her arrest:

- Richard BYRD's wallet containing his California driver's license in the name of Richard Christopher BYRD and $800.00 cash, all 100 dollar bills.

- $880.00 cash (all 20s secured with a rubber band) from interior purse pocket (**REID** stated that was for her rent)

- Bank of America check book for account 586003277354

- Check 1173 carbon print, showing $8,000.00 check to Brian Russo as a retainer fee, signed by **REID** (from Bank of America account: 586003277354)

- One I-Phone that **REID** claimed belonged to her

23. On March 7, 2011, AZFCTF executed a search and seizure warrant at 5346 E. Royal Palm Lane, Phoenix, AZ in reference to Richard BYRD's money laundering activities. Investigators seized $749,000 in U.S. currency.

24. On July 30, 2012, Phoenix Police Department conducted a consensual interview at a residence which was occupied by Richard BYRD and his brother Rasan BYRD.[3] Based on events that occurred during the consensual interview, Phoenix Police Department obtained a

---

[3] From investigative interviews, Rasan BYRD was identified as a senior member of the Richard BYRD DTO in charge of collecting money and orchestrating the purchase and transportation of controlled substances in Phoenix, Arizona back to distribution cities located on the East Coast of the United States. On April 17, 2014, Rasan BYRD was indicted by a Federal Grand Jury in United States District Court, District of Maryland for the distribution of 5 kilograms or more of cocaine. Rasan BYRD was subsequently arrested on April 29, 2014 in Houston, Texas in reference to that indictment.

9

RDB-14-0186

SW6-0011
BYRD-1704
BYRD-1704

search and seizure warrant which yielded approximately 1 ½ pounds of marijuana and approximately $372,540.00 in U.S. Currency.

25. During March 2013, DEA agents learned that large freight shipments containing drugs were being sent from Airpark Pak-N-Ship in Scottsdale, Arizona, to 5819 Moravia Road, Baltimore, Maryland 21230.

26. On April 22, 2013, pursuant to the execution of the search and seizure warrants sought by your Affiant, 340 pounds of marijuana, eleven (11) kilograms of cocaine, cocaine press, ten (10) handguns, one (1) assault rifle and body armor were seized at various locations utilized by the Byrd organization in Maryland. On the same day, AZFCTF conducted a traffic stop and the execution of several search and seizure warrants in Phoenix, Arizona that resulted in the seizure 700 pounds of marijuana, sixteen (16) kilograms of cocaine and one (1) handgun.

## MONEY LAUNDERING TRANSACTIONS

**LOC MARKETING LLC Bank of America Accounts**

27. LOC MARKETING LLC is an entertainment/promotion business that was established in March 2007, located in Washington, DC. LOC MARKETING LLC is owned by Lamont WANZER. **KIM REID** became a signatory on one of the company bank accounts after Richard Byrd made an investment of $80,000 in the business. Additionally, your Affiant has received information from a DEA Confidential Source, hereinafter referred to as CS-1. Your Affiant has found the information provided by CS-1 to be truthful and accurate. CS-1 advised your Affiant that LOC MARKETING LLC was utilized to launder large amounts of currency on behalf of Richard BYRD. CS-1 also provided information that **REID** was responsible for a majority of those transactions. CS-1 stated that **REID** utilized various e-mails accounts to communicate with other co-conspirators in reference to the money laundering activities. Your

RDB-14-0186

SW6-0012
BYRD-1705
BYRD-1705

Affiant knows through his training and experience that money launders will utilized their computers, tablets and other electronic devices to conduct deposits, transfers and other financial activities.

28   A review of LOC MARKETING LLC Bank of America accounts revealed a significant increase in cash deposits into these accounts beginning in April 2012, after Richard Byrd had invested in the business and **REID** was granted access to the accounts. Below is a chart summarizing the deposits into LOC MARKETING LLC Bank of America accounts:

Account # ending 5083:

|  | 2010 | 2011 | 2012 |
|---|---|---|---|
| Total Deposit (Approx) | $305,000 | $295,000 | $2,230,000 |
| Cash Deposits (Approx) | $37,100 | $33,750 | $1,050,000 |
| Wires (Approx) | $74,000 | $59,000 | $530,000 |
| Transfers from acct. end 5070 (Approx) | $6,500 | $75,000 | $150,000 |

Account # ending 5070:

|  | 2010 | 2011 | 2012 |
|---|---|---|---|
| Total Deposit (Approx) | $94,000 | $167,000 | $1,500,000 |
| Cash Deposits (Approx) | $0.00 | $32,000 | $215,000 |
| Wires (Approx) | $2,500 | $1,000 | $160,000 |
| Transfers from acct. end 5083 (Approx) | $90,000 | $50,000 | $700,000 |

29   Numerous Currency Transactions Reports (CTRs) were filed on LOC MARKETING LLC Bank of America accounts # ending in 5070 and 5083. A CTR is a document which financial institutions are required to file when a customer conducts a transaction

SW6-0013
RDB-14-0186
BYRD-1706
BYRD-1706

in U.S. currency in an amount greater than $10,000. Below is a chart summarizing over $2.2 million dollars in transactions which required the filing of CTRs on LOC MARKETING LLC:

| DATE | ACCOUNT ENDING # | AMOUNT | TRANSACTION | TRANSACTOR | STATE |
|---|---|---|---|---|---|
| 07-01-13 | 5083 | $99,990 | Cash In | **Kimberly REID** | TX |
| 05-22-13 | 5083 | $25,000 | Cash In | **Kimberly REID** | TX |
| 04-25-13 | 5083 | $66,000 | Cash In | Kamisha Mickey | TX |
| 04-15-13 | 5083 | $48,800 | Cash In | Kamisha Mickey | TX |
| 03-01-13 | 5070 | $65,000 | Cash In | Jennifer Izumi | DC |
| 02-20-13 | 5083 | $15,358 | Cash In | Jackie Wiley** | TX |
| 02-19-13 | 5070 | $25,320 | Cash In | Lamont Wanzer | TX |
| 02-14-13 | 5070 | $25,850 | Cash In | Unknown | TX |
| 02-07-13 | 5070 | $14,000 | Cash In | Unknown | MD |
| 01-22-13 | | $40,000 | Cash In/ Purchase of Negotiable Instrument | **Kimberly REID** | TX |
| 12-19-12 | 5083 | $40,000 | Cash In | **Kimberly REID** | TX |
| 11-26-12 | 5070/5083 | $15,170 | Cash In | **Kimberly REID** | TX |
| 11-20-12 | 5070 | $76,000 | Cash In | Armored Car | GA |
| 11-19-12 | 5070 | $12,600 | Cash In | **Kimberly REID** | TX |
| 10-31-12 | 5083 | $23,980 | Cash In | **Kimberly REID** | TX |
| 10-12-12 | 5070 | $117,000 | Cash In | Armored Car | GA |
| 09-27-12 | 5083 | $27,000 | Cash In | Lamont Wanzer | TX |
| 09-13-12 | 5083 | $156,000 | Cash In | Armored Car | GA |
| 09-04-12 | 5070 | $62,500 | Cash Withdrawal | **Kimberly REID** | TX |

SW6-0014
RDB-14-0186
BYRD-1707
BYRD-1707

| | | | | | |
|---|---|---|---|---|---|
| 07-31-12 | 5083 | $37,000 | Cash In | **Kimberly REID** | TX |
| 07-19-12 | 5083 | $75,000 | Cash Withdrawal | Lamont Wanzer | GA |
| 07-09-12 | 5083 | $253,980 | Cash In | **Kimberly REID** | FL |
| 05-29-12 | 5083 | $71,500 | Cash In | Lamont Wanzer | NV |
| 05-25-12 | 5083 | $62,500 | Cash Withdrawal | Lamont Wanzer | NV |
| 05-23-12 | 5083 | $283,528 | Cash In | Armored Car | TX |
| 05-21-12 | | $100,000 | Currency Exchange | **Kimberly REID** | TX |
| 05-09-12 | | $18,000 | Cash In/ Purchase of Negotiable Instrument | Lamont Wanzer | MD |
| 05-01-12 | 5070 | $200,000 | Cash Withdrawal | **Kimberly REID** | TX |
| 04-30-12 | 5083 | $173,205 | Cash In | Armored Car | TX |
| 12-09-11 | 5070 | $25,000 | Cash In | Lamont Wanzer | MD |
| 12-06-11 | 5083 | $13,000 | Cash In | Unknown | MD |

CS-1 states that **REID** made the cash deposits to the LOC accounts, but that the deposits had no relationship to any ongoing business promotions by LOC Marketing. Your affiant believes that the cash deposits were drug proceeds collected by the Byrd organization and given to **REID** to launder.

### KIMBERLY REID's BANK ACCOUNT

**Bank of America**

30   On February 22, 2011, the following monies were transferred into **Kimberly REID**'s Bank of America account # ending in 7354:

| Sender | Amount | Source of funds prior to transfer |
|---|---|---|

SW6-0015
RDB-14-0186
BYRD-1708
BYRD-1708

| | | |
|---|---|---|
| Thumbs Up Marketing (Owned by James Bowie II and Terence Peters) | $41,000 | Check from a law office made payable to Robert Smith |
| James Bowie II | $29,000 | $32,000 cash deposited into Bowie's account on 2/22/11 |
| Andrea King (Byrd's sister) | $25,000 | Unknown |
| Derwin Ware | $23,000 | $23,000 cash deposited into Ware's account on 2/22/11 |
| James Bailey | $11,000 | Unknown |

31   **REID** used these funds to purchase a cashier's check in the amount of $145,000 to bond BYRD out of jail.

## SURVEILLANCE OF KIM REID

32   On February 26, 2014 at approximately 6:55 a.m., TFO Phillips and TFO Ermer responded to the area of 12315 Queens River Drive, Houston, Texas 77044 in order to conduct a spot check of the location.

33   At approximately 7:00 a.m., TFO Ermer observed Corey WILLIAMS, the boyfriend of **REID**, dragging trash cans to the curb side in front of 12315 Queens River Drive, Houston, Texas 77044. Cory WILLIAM's truck, Texas registration BXB6713 was observed in the drive way of the location.[4]

34   Shortly thereafter, a silver/gray Audi A6, Texas registration BWT 8958, pulled out of the garage and drove out of the neighborhood. TFO Phillips and TFO Ermer followed the Audi A6. A check of Texas registration BWT8958 through the Texas Motor Vehicle Administration revealed the following:

- 2011 Audi 4D, VIN #WAUFGAFB8BN062253, Grey, listed to **Kimberly REID**, 3139 W. Holcombe Blvd #373, Houston, Texas 77025.

---

[4] Corey WILLIAMS is a suspected drug distributor in the BYRD DTO.

RDB-14-0186

SW6-0016
BYRD-1709
BYRD-1709

35      At approximately 7:55 a.m., the Audi A6 arrived at the law firm of Beirne, Maynard, & Parsons located at 1300 Post Oak Blvd, Houston, Texas, which is **REID**'s known place of employment.

36      TFO Phillips subpoenaed CenterPoint Energy for the utility service account information for the address of 12315 Queens River Drive, Houston, Texas 77044. The utilities for 12315 Queens River Drive, Houston, Texas 77044 are in the name of Ebunoluwa Akinola with a contract date of December 6, 2013. Your Affiant knows from this investigation that Kim **REID** had previously lived at 936 Mickinney Park Lane, Houston, Texas 77003. During the time that **REID** resided at 936 Mickinney Park Lane, Houston, Texas 77003, subpoenaed records from CenterPoint Energy reflected that the utility service was in the name of Ben Akinola. Your Affiant knows through his training, knowledge and experience that parties engaged in drug conspiracies will utilize third parties to obtain utilities for their residence. This is an attempt to avoid detection from law enforcement.

37      On April 29, 2014 Richard BYRD was arrested in Phoenix, Arizona in reference to the Maryland indictment. Found on Richard BYRD at the time of his arrest was a false Louisiana State Identification card with Richard BYRD's picture in the name of Ebunoluwa Ebenezer Akinola, the same name provided for the utility service for the residences of **REID**.

## V.    CONCLUSION

38      Based on the information provided in this affidavit, probable cause exists to believe that **Kimberly REID**, did knowingly conspire with Richard BYRD and other member in the BYRD DTO to conceal and disguise drug proceeds and engage in monetary transactions in criminally derived property of a value greater than $10,000 in violation of Title 18, United States Code Sections 1956h, 1956(a)(1)(b)(i) and 1957.

RDB-14-0186

SW6-0017
BYRD-1710
BYRD-1710

39  Based on my training and experience, I am aware that:

a. Person who are involved in illegal financial crimes, such as money laundering, and amass large amounts of cash from the transactions, they often attempt to legitimize these profits or to disguise or hide them. To accomplish this, these individuals may utilize domestic and foreign banks, financial institutions, casinos, and/or currency exchange houses, security brokers, professionals such as accountants and attorneys, real estate purchases, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency. They may invest the proceeds in a manner designed to hide their ownership or to hide the very existence of the investment. These individuals often utilize relatives or associates to funnel their own money to them in the form of loans or gifts. It is common in these situations that few if any loan repayments are made or loan documents are maintained. The individuals committing these types of crimes may accomplish the laundering of their illegal profits by engaging in the purchase of securities, investments such as stocks and bonds, annuities and real estate (including personal residences), cashier's checks, money drafts, money orders, letters of credit and maintaining safe deposit boxes at banks and financial institutions, by utilizing the talents of accountants and attorneys who are willing to establish layers of paper insulations in the acquisition of assets and by funneling the currency earned from the criminal fraud activities through corporate entities. It is common for these individuals to maintain the instruments identifying these transactions in their residences and businesses.

b. Due to the difficulty in moving large amounts of currency into and/or through the domestic banking system, and due to the difficulty in transporting large amount of currency to foreign locations because of the bulk of currency, individuals engaged in money laundering schemes and often convert the currency to a different form such as money orders or bank checks.

RDB-14-0186

SW6-0018
BYRD-1711
BYRD-1711

This conversation then allows the individuals to transport, deposit and/or otherwise spend the currency proceeds in ways which will avoid detection by the law enforcement methods presently in place in the United States.

    c. Individuals involved in financial crimes will keep items in their residence, which indicate they are spending more money than they report as income on their tax returns. These items are usually assets such as jewelry, precious metals, furs, artwork, furnishings, firearms, large hoards of currency, documents and investments. Most of these are items that are difficult to trace the purchase of and easy to sell.

    d. Persons involved in money laundering commonly maintain at their residence, business and on their property, books, records, receipts, computer diskettes, computers, notes, ledgers, airline tickets, money orders and other papers relating to legitimate and illegal source income.

    e. Persons involved in money laundering commonly maintain in their residence, business and on their property, books or papers, which reflect the names, addresses, and telephone numbers of their customers, and other associates in the illegal drug trade.

    f. Persons involved in money laundering commonly maintain books, papers, and documents in secure locations within their residence, business and their property, so they can have ready access to such information.

    g. Persons involved in narcotics distribution very often place assets, including real and personal property, such as vehicles and businesses in names other than their own to avoid the detection and forfeiture of such assets by government agencies and continue to use these assets and to exercise dominion and control over them.

RDB-14-0186

SW6-0019
BYRD-1712
BYRD-1712

h. WHEREFORE, based on the information provided in this affidavit, probable cause exists to believe that evidence of the crimes of conspiracy to money laundering in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(b)(i) and 1957, specifically those items set forth in Attachment B, will be found 12315 Queens River Drive, Houston, Texas 77044. Wherefore, your Affiant, requests a search warrant for the premises located at 12315 Queens River Drive, Houston, Texas 77044 be issued by this Court.

X /s/ David Phillips
Task Force Officer David Phillips
Drug Enforcement Administration

Sworn to before me this __8__ day of May 2014, at __3pm__ hours.

/s/ Frances Stacy
Honorable Frances Stacy
United States Magistrate Judge

RDB-14-0186

SW6-0020
BYRD-1713
BYRD-1713