| **Sealed** | United States Courts<br>Southern District of Texas<br>~~FILED~~ |
|---|---|
| Public and unofficial staff access<br>to this instrument are<br>prohibited by court order. | |

UNITED STATES DISTRICT COURT

AUG  6 2013

David J. Bradley, Clerk of Court

**SOUTHERN**     DISTRICT OF     **TEXAS**

### UNITED STATES OF AMERICA

**HOUSTON DIVISION**

v.

**PREMISES KNOWN AND DESCRIBED AS:**

Cellular Telephone bearing number
786-503-3482, IMSI 310410556710679

**APPLICATION AND AFFIDAVIT
FOR WARRANT FOR PRECISE
LOCATION INFORMATION**

Case Number:   H  13-778 M

I, _____ DEA Task Force Officer Brandon Bond _____ being duly sworn depose and say:

I submit this application for an order directing AT&T (the Provider) to assist the Drug Enforcement Administration by providing all information, facilities and technical assistance needed to ascertain the physical location of the Cellular Telephone bearing number 786-503-3482, IMSI 310410556710679, including but not limited to data indicating the specific latitude and longitude of (or other precise location information concerning) which is believed to be in the Southern District of Texas.

Probable cause exists to believe that the Requested Information will lead to evidence of, as well as the identification of individuals who are engaged in, the commission of offenses

concerning a violation of Title ____21____ United States code, Section(s) ____841(a)(1); 843(b) and 846____
The facts to support a finding of probable cause are as follows:

See Affidavit in Support of Application

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, Clerk of Court
By Kathleen Murphy
                                    Deputy Clerk

Continued on the attached sheet and made a part hereof:     ☑ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

Aug 6, 2013 @ 1.50pm    at    Houston              Texas
Date                                      City                    State

Nancy Johnson        United States Magistrate Judge
Name of Judge            Title of Judge

_____
Signature of Judge

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA AUTHORIZATION TO OBTAIN PRECISE LOCATION DATA CONCERNING A CELLULAR TELEPHONE ASSIGNED CALL NUMBER (786) 503-3482 AND IMSI NUMBER310410556710679 | Case No. _____<br><br>Under Seal |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CELLULAR TELEPHONE PRECISION LOCATION DATA

I, Brandon Bond, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an Application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (786) 503-3482 **(herein after the "SUBJECT PHONE")** whose service provider is AT & T, a wireless telephone service provider headquartered at 308 S Akard St., 14th Floor M, Dallas TX 75202. Phone number **SUBJECT PHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Your affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

3.    Your affiant, Task Force Officer Brandon Bond, is a duly sworn member of Drug Enforcement Administration, and is currently assigned to HIDTA Group 31 in Houston, Texas.

4.    Your affiant, Task Force Officer Brandon Bond, has been a member of the Houston Police Department since 2001. In September 2005, I became an investigator in the Narcotics Division and was subsequently assigned as a Task Force Officer (hereafter referred to as "TFO") with the Drug Enforcement Administration (hereafter referred to as DEA), HIDTA Group 31. I have been serving as a TFO with the DEA since August 2012. As part of my law enforcement training, I successfully completed a six month entrance level training course in the Houston Police Department Academy. I have also participated in the writing and execution of numerous Search & Seizure warrants. Additionally, I know based on my training, knowledge and experience that drug traffickers commonly use vehicles to pickup and deliver drugs; meet with drug customers, sources and co-conspirators; transport drugs and proceeds to stash locations and transport money to suppliers or third-parties to pay for the drugs. I also know through my knowledge training and experience that drug traffickers often use phones to communicate and carryout criminal activities.    Specifically, I know through this investigation that members of the Richard BYRD DTO often carry numerous phones, sometimes in access of twenty phones in order to thwart detection from law enforcement.

4.    The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all information about this matter.

2

5.      Based upon the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Codes, Sections 846 and 841, conspiracy to distribute and possession with intent to distribute a controlled substance and distribution of a controlled substance, and money laundering in violation of Title 18 United States Code, Sections 1956 and 1957 and possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g) and other firearms offenses have been committed, are being committed, and will be committed by the user of the Target Telephone Cell Phones, and other unknown persons.   There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses and locations being utilized in furtherance of these offenses.

6.      This affidavit is made in support of an application made for a Warrant authorizing the tracking of cellular phone **(786) 503-3482, "SUBJECT PHONE"**

7.      Because this affidavit is being submitted for the limited purpose of obtaining a Warrant for the tracking to include E911 Location Based Services or Global Positioning Systems Information including latitude and longitude derived from real time phone pings, on the **SUBJECT PHONE**, it is not intended to include each and every fact known to your affiants or to the government.   Agents and TFO's in Baltimore have set forth only those facts necessary to support probable cause.

8.      The Richard BYRD Drug Trafficking Organization ("DTO") is a poly-drug trafficking organization responsible for the procurement, transportation, distribution and sale of large amounts of marijuana and cocaine between the states of California, Arizona, Texas, North Carolina, Pennsylvania, Ohio and Maryland.   Richard BYRD has been identified by several

3

individuals, some of whom are willing to testify, as a major narcotics trafficker in the United States.     Additionally,  Richard  BYRD's  organization  is  extremely  complex  and  utilizing numerous identified and unidentified individuals in the organization to carryout there criminal activities to include drug importation, money laundering, drug and currency transportation, and drug distribution.     Additionally, agents and TFO's in Baltimore have learned through this investigation that Richard BYRD and other members of his organization utilize third parties, principally females, as facilitators to register vehicles, lease residences, subscribe and purchase cellular phones, make bank deposits, make hotel reservations, launder drug proceeds and book airline travel.

9.         Since April of 2011, investigators from the Drug Enforcement Administration (DEA), Arizona Financial Crimes Task Force (AZFCTF) and Homeland Security Investigations (HSI) have been conducting an active investigation involving the importation and distribution of Marijuana, and Cocaine into the Baltimore Metropolitan area and various other areas in the country by Richard BYRD and other co-conspirators within this drug organization. Through information provided by Confidential Informants, surveillance, interviews and telephone records as well as other methods of investigation, investigators have corroborated that Richard BYRD is obtaining multi-thousand pound quantities of marijuana and kilogram quantities of cocaine from sources of supply in Texas, Arizona, California and distributing the controlled substances in the Baltimore Metropolitan area and other states listed above.

10.         During  the  month  of  February  2011,  Richard  BYRD  was  arrested  by Chandler Police Department as part of a reverse sting involving approximately 2,700 pounds of marijuana and additional money laundering charges.  Since Richard BYRD's arrest, investigators

4

have seized over $1,000.000.00 in U.S. Currency that has been directly tied to the Richard BYRD drug trafficking organization.

11.       On February 22, 2011, Kimberly REID allowed bank wires and cash deposits totaling $145,900.00 to be made into her Bank of America account # 586003277354 knowing or having reason to know that these deposits were derived from drug proceeds. REID then used $145,000.00 to purchase a Cashier's check to pay for part of Richard BYRD's $150,000 bond from his February 17, 2011 Chandler drug arrest. On February 23, 2011 a cash deposit of $8,000.00 was made into the account. On February 24, 2011, check number 1173 for $8000 was made out to Brian Russo, Richard BYRD's attorney.

12.       On February 25, 2011, Kimberly REID assisted Richard BYRD by attempting to hide valuable evidence at Extra Space Storage located at 4028 N. 7th Street, Phoenix, AZ in unit A331. This activity was captured on video which reflected REID carrying Lindsay Lou shopping bag into the storage container.

13.       On March 7, 2011, AZFCTF executed a search and seizure warrant at Extra Space Storage located at 4028 N. 7th Street, Unit A331, Phoenix, AZ which resulted in the recovery of the Lindsay Lou shopping bag which contained the following:

- -Bank and financial documents under the name of Robert Smith (Richard Byrd's fictitious identity), to include:
- -A Bank of America check book box addressed to Smith at 6310 Calhoun Rd, Houston, TX (REID's residence).
- -Robert Smith 6301 Calhoun Rd, Houston, TX Citibank account opening information; checking: 9107212944, money market: 9107212952, Catonsville, MD
- -Wachovia account opening, Robert Smith, 6310 Calhoun Road, Houston, TX 77021 checking XXXX6606, savings: 1135, signed Robert Smith & deposit receipt in book for same account, $100 cash deposit
- -13 Western Union, $500.00 money order receipts dated 02/14/2011, purchased at agent locations in Belair, Baltimore and Owings Mills, MD.
- -Byrd/Stewart insurance and medical documents

5

- -Documents pertaining to a lawsuit where Richard Byrd brought about a civil claim in Miami, using the identity of Robert Smith. (This is from an auto accident September, 2010. Billing summary showed a $41,840.87 net to "Smith" and Stewart. (Bank records show that this payout was deposited, in the form of a check, into the Co America account of Thumbs Up Marketing on 02/07/2011. Thumbs Up wired $41,000.00 into Kimberly REID's account on 02/22/2011 for Byrd's bond.
- -Hand notes with Andrea Shelly-Ann Kings SSN and account numbers written on them.
- -Hand note: 832-576-7726 Lincoln Davis, Social 130649483, 11-28-63, 6310 Calhoun Rd. 77021, 4104 8912 0198 3110, exp 01/13 -491with the name Lincoln Davis. (Lincoln Davis is the name on some of the utilities at 5346 E. Royal Palm)
- -Additional evidence obtained through subpoena's revealed that REID was listed as an alternate occupant name on the rental contract for storage unit A331, dated October 19, 2010. The primary occupant listed was Stacie Stewart, 6310 Calhoun Road, Houston, TX 77921.

14.       Further evidence obtained through public records and subpoenaed

information revealed Stacie Stewart and Kimberly REID lived together at 8726 Magnolia Forest

Dr, Sugar Land, TX in 2007. Stewart and Richard BYRD (using the name Robert Smith) also

used that address as their mailing address. Large mailing envelopes found in trash collections at

5346 E. Royal Palm throughout 2010 were located, addressed to Stewart at her PO Box in

Arizona and sent from REID in Texas.

15.       On March 7, 2011, REID was arrested and booked into Maricopa County jail.

She had the following items in her possession at the time of her arrest:

- -Richard BYRD's wallet containing his California driver's license in the name of Richard Christopher BYRD and $800.00 cash, all 100 dollar bills.
- -$437.58 cash and coin in Kim REID's wallet along with her TX driver's license
- -$880.00 cash (all 20s secured with a rubber band) from interior purse pocket (REID stated that was for her rent)
- -Bank of America check book for account 586003277354
- -Check 1173 carbon print, showing $8,000.00 check to Brian Russo for retaining fee, signed by Kim REID (from Bank of America account: 586003277354)
- -One I-Phone that REID claimed belonged to her
- -Four additional cell phones, one broken in half.

16.       On Mach 7, 2011, AZFCTF conducted a search and seizure warrant at 5346

E. Royal Palm Lane, Phoenix, AZ in reference to Richard BYRD's money laundering activities.

While conducting the search warrant at 5346 E. Royal Pam Lane, Phoenix, AZ, Detective

Shallue discovered that there was a bedroom in the house that contained documents and clothing,

believed to belong to James BOWIE II. Almost all of these items pertained to travel, including

rental car receipts, hotel bills and flight information.  The following is a list of some items

located in that room:

- -Alamo car rental under the name James BOWIE II, 706 Whitney, Houston, for a luxury car from July 23, 2010 to July 30th, 2010, rented at the Las Vegas airport.
- -Southwest Airlines Receipt dated August 25th, 2010 from San Diego to San Francisco for James Smith BOWIE, paid $189.70 cash.
- -Four Points by Sheraton receipt for the Sacramento International Airport under the name James BOWIE, 706 Whitney St, Houston, TX for the night of August 23, 2010.
- -Spirit Airlines receipt, signed by James S. BOWIE II dated 07/31/2010.
- -Payless Car Rental, Las Vegas, receipt for James Smith BOWIE, 706 E Whitney, Houston, TX, phone: (713) 691-4960 for a Toyota Camry from 07/20/2010 to 07/23/2010.
- -W Atlanta Midtown receipt showing guest James BOWIE with a check-in 08/12/2010 and check-out 08/14/2010 and another for a check-in of 08/14/2010 with the checkout of 08/15/2013.
- -AirTran receipt; James BOWIE, flight from Atlanta to Houston 06/08/10, paid for with cash.
- -W New York, Times Square receipt for James BOWIE arriving on 06/11/10 and departing on 06/18/2010.
- -AirTran receipts; James BOWIE flight from Houston to Atlanta to NY on 06/11/10.
- -National Hotel South Beach hotel receipt showing rooms booked under Thumbs Up Marketing.  Two rooms for James BOWIE, one for Terence Peters, one for Josef BYRD, one for Roderick Rowan, one for one for Aaron THOMPSON, one for Trina Thomas and one for James MCMILLAN with arrival dates on 05/27/10, 05/28/20 05/29/10 and a check out all on 06/01/10. Additional information shows that Kim REID checked in with Terance PETERS.  Jocelyn Britton checked in with Josef BYRD, Dontwon BURRIS also had a room.
- -Credit Card payment authorization showing the guest name; James S. BOWIE II, Phone: (832)748-0082, (713) 691-4960 and email james_bowie_ii@hotmail.com for securing 75 room nights for $17,797.50, signed James S. BOWIE, President of Thumbs Up Entertainment, dated 05/18/2010.
- -CVS pharmacy records showing prescriptions for James BOWIE, 706 E Whitney, Houston, TX.

7

- -Aloft Phoenix Airport receipt under the name James BOWIE, 112 Travis St, Houston, Tx 77002, arrival 07/20/10 and departure 07/22/10 paid ½ cash and the rest on Visa.
- -SLS Hotel at Beverly Hills receipt for James BOWIE, arrival 07/25/2010 and departure 07/26/2010.
- -W Atlanta Downtown receipt for James BOWIE; arrival 08/11/10 and departure 08/12/10.
- -W Atlanta Midtown receipt for James BOWIE; arrival 08/12/10 and departure 08/14/10.
- -Additionally, photographs of James BOWIE standing in Richard BYRD's bedroom at Royal Palm were located as well as California Highway Patrol Notice to Appear dated 10/28/09 showing James Smith BOWIE was cited for speed on I-10 eastbound in Ontario, California while driving an Avis rental car.

17.     AZFCTF also located documents indicating that Andrea KING, Richard BYRD's sister, was a facilitator within the organization. During April of 2011, DEA Group 51 obtained a search and seizure warrant for KING's residence located at 9500 Sidebrook Road, Apt. 407, Owings Mills, MD 21117. The execution of the warrant resulted in the seizure of approximately $40,000.00 in U.S. Currency and money orders, in addition to bank statements, documents, and computers. Upon entry to the location, Richard BYRD was present along with Andrea KING. Richard BYRD, who was released from custody on bond, is awaiting state prosecution for his February 2011 Arizona arrest but investigation has shown that Richard BYRD has continued his drug trafficking and money laundering activities.

18.     During this investigation, DEA Group 51 received information from a reliable HSI Confidential Informant that Richard BYRD's Baltimore Lieutenant was Jerome CASTLE, who oversees the importation and distribution of controlled substances in the Baltimore Metropolitan area for Richard BYRD's organization. Investigation has revealed that CASTLE was using an alias name of Dontwon BURRIS. Additionally, the HSI Confidential Informant identified Joseph BYRD as the half-brother and an upper level distributor for the Richard BYRD DTO.

19.     During the month of July 2012, investigators observed Richard BYRD traveling to various areas in the Baltimore Metropolitan Area and meeting with members of his DTO, including Jerome CASTLE, in various empty parking lots. Richard BYRD then traveled back to Houston, Texas. Agents and TFO's in Baltimore further believe that Richard BYRD was in Baltimore collecting money and organizing future drug shipments. Additionally, while Richard BYRD was in Baltimore he was operating a Cadillac Escalade, bearing Texas registration DW1L678. During surveillance, investigators observed Richard BYRD park the vehicle in a shopping center parking lot on Reisterstown Road in Pikesville, Maryland, and was picked up by Jerome CASTLE in a Toyota Avalon, tan in color, bearing Maryland registration 09083CE. Surveillance quickly lost light of the vehicle as it left the shopping center. Hours later Richard BYRD and CASTLE returned to the location, at which point BYRD left the area in the Escalade and was later followed by CASTLE to the hotel district near BWI Airport. CASTLE appeared to be escorting Richard BYRD's vehicle, which agents and TFO's in Baltimore believes was a counter surveillance tactic in attempt to detect the presence of law enforcement.

20.     On July 30, 2012, Phoenix Police Department conducted a consensual interview at a residence which was occupied by Richard BYRD and his brother Rasan BYRD. Based on events that occurred during the consensual interview, Phoenix Police Department obtained a search and seizure warrant which yielded approximately 1 ½ pounds of marijuana and approximately $372,540.00 in U.S. Currency. Additionally, investigators seized over twenty (20) cellular phones from the residence. Based on your affiant's knowledge, training and experience, this large number of cellular phones is consistent with drug trafficking because drug

9

dealers frequently use a large number of phones to confuse law enforcement and to compartmentalize and conceal their illegal activities.

21.      During March 2013, DEA agents learned that large freight shipments were sent from "Airpark Pak N Ship" in Scottsdale, Arizona, to 5819 Moravia Road, Baltimore, Maryland. Investigators in Maryland conducted surveillance of 5819 Moravia Road, and on March 20, March 30, and April 5, 2013, saw freight shipments delivered. Each delivery consisted of two, large, cardboard boxes attached to a pallet.

22.      On April 22, 2013, pursuant to the execution of the search and seizure warrants sought by your Affiant, 340 pounds of marijuana, 11 kilograms of cocaine, 10 handguns, 1 assault rifle and body armor were seized. Additionally, in relation to the execution of the search and seizure warrants, Jerome CASTLE, Joseph BYRD, Harold BYRD and Maurice JONES, members of the Richard BYRD DTO were arrested. During the execution of the warrants, agents found records showing prior shipping information from Airpark Pak N Ship and records of payments made to Airpark Pak N Ship.

23.      On the same day, in coordination DEA HIDTA Group 51, The Arizona Financial Crimes Task Force conducted a traffic stop and the execution of several search and seizure warrants that resulted in the seizure 700 pounds of marijuana, 16 kilograms of cocaine and 1 handgun. In relation to the execution of the search and seizure warrant, Daniel WILLIAMS, a member of the Richard BYRD DTO was also arrested in Phoenix, Arizona.

24.      In an interview on April 25, 2013, the owner of Airpark Pak N Ship in Scottsdale identified Richard BYRD as the owner of a cabinet company who came into the store approximately three years ago and stated that his company would be shipping cabinets to various locations on the East Coast. The owner also stated that, since that time, two individuals have

10

shipped multi-hundred pound shipments as representatives of the cabinet company from his store to Maryland and Georgia on a weekly basis. The owner provided records showing shipments sent to 5819 Moravia Road, Baltimore, Maryland 21206, beginning in January 2010.

25.        During this investigation, agents and TFO's in Baltimore have learned that James BOWIE and Kimberly Reid are principle money launderers for Richard BYRD's DTO, and that they have direct knowledge of BYRD's involvement with criminal activity and that BYRD's assets are derived from the sale of distributing controlled substances. Surveillance, bank records, various seizures, and corroborated information provided confidential source's whom are willing to testify show that BOWIE and REID are currently funneling large cash deposits and withdrawals through various business bank accounts on behalf of Richard BYRD.

26.        A review of subpoenaed bank records from Bank of America revealed that on April 17, 2012, Lamont WANZER added Kimberly REID and Terence Peters as the Vice President of LOC MARKETING LLC on Bank of America account #446005505070. LOC MARKETING has been identified as promotional company that has been used to launder drug proceeds by Richard BYRD's organization.

27.        A review of LOC MARKETING LLC Bank of America accounts #446005505070 and #446005505083 revealed a significant increase in deposits into these accounts beginning in April 2012. Below is a chart summarizing the deposits into LOC MARKETING LLC Bank of America accounts:

Account #446005505083:

|  | 2010 | 2011 | 2012 |
|---|---|---|---|
| **Total Deposit (Approx)** | $305,000 | $295,000 | $2,230,000 |
| **Cash Deposits (Approx)** | $37,100 | $33,750 | $1,050,000 |

11

| | | | |
|---|---|---|---|
| **Wires (Approx)** | $74,000 | $59,000 | $530,000 |
| **Transfers from acct. end 5070 (Approx)** | $6,500 | $75,000 | $150,000 |

Account #44605505070:

| | 2010 | 2011 | 2012 |
|---|---|---|---|
| **Total Deposit (Approx)** | $94,000 | $167,000 | $1,500,000 |
| **Cash Deposits (Approx)** | $0.00 | $32,000 | $215,000 |
| **Wires (Approx)** | $2,500 | $1,000 | $160,000 |
| **Transfers from acct. end 5083 (Approx)** | $90,000 | $50,000 | $700,000 |

28.     Numerous Currency Transactions Reports (CTRs) were filed on LOC MARKETING LLC Bank of America accounts #446005505070 and #446005505083. A CTR is a document which financial institutions are required to file when a customer conducts a transaction in U.S. currency in an amount greater than $10,000. Below is a chart summarizing the CTRs filed on LOC MARKETING LLC:

| DATE | ACCOUNT ENDING # | AMOUNT | TRANSACTION | TRANSACTOR | STATE |
|---|---|---|---|---|---|
| 07-01-13 | 5083 | $99,990 | Cash In | Kimberly REID | TX |
| 05-22-13 | 5083 | $25,000 | Cash In | Kimberly REID | TX |
| 04-25-13 | 5083 | $66,000 | Cash In | Kamisha Mickey | TX |
| 04-15-13 | 5083 | $48,800 | Cash In | Kamisha Mickey | TX |
| 03-01-13 | 5070 | $65,000 | Cash In | Jennifer Izumi | DC |
| 02-20-13 | 5083 | $15,358 | Cash In | Jackie Wiley** | TX |

12

| 02-19-13 | 5070 | $25,320 | Cash In | Lamont Wanzer | TX |
|----------|------|---------|---------|---------------|-----|
| 02-14-13 | 5070 | $25,850 | Cash In | Unknown | TX |
| 02-07-13 | 5070 | $14,000 | Cash In | Unknown | MD |
| 01-22-13 | | $40,000 | Cash In/ Purchase of Negotiable Instrument | Kimberly REID | TX |
| 12-19-12 | 5083 | $40,000 | Cash In | Kimberly REID | TX |
| 11-26-12 | 5070/5083 | $15,170 | Cash In | Kimberly REID | TX |
| 11-20-12 | 5070 | $76,000 | Cash In | Armored Car | GA |
| 11-19-12 | 5070 | $12,600 | Cash In | Kimberly REID | TX |
| 10-31-12 | 5083 | $23,980 | Cash In | Kimberly REID | TX |
| 10-12-12 | 5070 | $117,000 | Cash In | Armored Car | GA |
| 09-27-12 | 5083 | $27,000 | Cash In | Lamont Wanzer | TX |
| 09-13-12 | 5083 | $156,000 | Cash In | Armored Car | GA |
| 09-04-12 | 5070 | $62,500 | Cash Withdrawal | Kimberly REID | TX |
| 07-31-12 | 5083 | $37,000 | Cash In | Kimberly REID | TX |
| 07-19-12 | 5083 | $75,000 | Cash Withdrawal | Lamont Wanzer | GA |
| 07-09-12 | 5083 | $253,980 | Cash In | Kimberly REID | FL |
| 05-29-12 | 5083 | $71,500 | Cash In | Lamont Wanzer | NV |
| 05-25-12 | 5083 | $62,500 | Cash Withdrawal | Lamont Wanzer | NV |
| 05-23-12 | 5083 | $283,528 | Cash In | Armored Car | TX |
| 05-21-12 | | $100,000 | Currency Exchange | Kimberly REID | TX |
| 05-09-12 | | $18,000 | Cash In/ Purchase of Negotiable | Lamont Wanzer | MD |

13

| | | | Instrument | | |
|---|---|---|---|---|---|
| 05-01-12 | 5070 | $200,000 | Cash Withdrawal | Kimberly REID | TX |
| 04-30-12 | 5083 | $173,205 | Cash In | Armored Car | TX |
| 12-09-11 | 5070 | $25,000 | Cash In | Lamont Wanzer | MD |
| 12-06-11 | 5083 | $13,000 | Cash In | Unknown | MD |

29.     A review into the information detailed on the CTR filed on "Jackie Wiley" on February 20, 2013, revealed that the individual who conducted this transaction used a fraudulent Maryland driver license. A review of Maryland Department of Motor vehicle records revealed that the driver license for "Jackie Wiley" with a date of birth of 09/03/1977, or DL#W52688122404 was not issued by Maryland Department of Motor Vehicle.

30.     A review of Bank of America security camera for the aforementioned transaction on February 20, 2013, revealed that Kamisha Mickey was the individual that utilized the Maryland fake identification in the name of "Jackie Wiley" to conduct the financial transaction.

31.     A review of the monies disbursed from LOC MARKETING LLC Bank of America accounts #446005505083 and #446005505070 revealed that REID disbursed a total of $37,500 to James BOWIE II, on March 4, 2013 and wired $7,000 and $25,000 to James BOWIE II's Wells Fargo Bank account on April 15th and 17th 2013, respectively.

32.     During the month of May 2013, a DEA confidential source provided a cellular phone number for Richard BYRD of (786) 503-3482. Based on phone records, phone number (786) 503-3482 is an AT & T cellphone subscribed to LOCUS COMMUNICATIONS,

14

with an address of 111 SYLVAN AVE, ENGLEWOOD CLIFFS, NJ 07632. During the investigation, agents and TFO's in Baltimore has learned that Richard BYRD, James BOWIE, and other members of the organization move around on a regular basis throughout various states in the country to carryout there criminal activity, and prevent detection from law enforcement. Investigators are currently attempting to identify the location of Richard BYRD for future enforcement activities. Additionally, investigators are anticipating a future indictment on Richard BYRD and believe that he is a flight risk. Agents and TFO's in Baltimore know through their investigation that the SUBJECT PHONE is currently being used by Richard BYRD, and according to the CS, BYRD is currently in Houston, Texas.

33.     Based on the information in this investigation by other agents and TFO's in Baltimore are aware that narcotics distributors and money launderers frequently maintain multiple stash houses to conceal, store, and transport narcotics and the proceeds of narcotics trafficking. Agents and TFO's in Baltimore believe that the information obtained from tracking data for **the SUBJECT PHONE** will assist law enforcement efforts to identify the user of the **SUBJECT PHONE**; to establish their patterns of travel relating to the transportation of drugs and drug proceeds; to identify vehicles, stash houses used by user of **the SUBJECT PHONE**; and identify their sources of supply and other members of this narcotics trafficking conspiracy.

34.     Based on information, agents and TFO's in Baltimore have learned that Sprint is a company that provides cellular telephone access to the general public. Agents and TFO's in Baltimore also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or

15

cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

35.     Based on the information, agents and TFO's in Baltimore know that Sprint can collect E-911 Phase II data about the location of the **SUBJECT PHONE**, including by initiating a signal to determine the location of the **SUBJECT PHONE** on Sprint's network or with such other reference points as may be reasonably available.

36.     Based on the training and experience by agents and TFO's in Baltimore know that Sprint can collect cell-site data about the **SUBJECT PHONE**.

## AUTHORIZATION REQUEST

32.     Based on the foregoing by agents and TFO's in Baltimore request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

33.     Agents and TFO's in Baltimore further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing

16

immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. §
2705. Providing immediate notice to the subscriber or user of the **SUBJECT PHONE** would
seriously jeopardize the ongoing investigation, as such a disclosure would give that person an
opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from
prosecution. Moreover, to the extent that the warrant authorizes the seizure of any tangible
property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored
wire or electronic information, there is reasonable necessity for the seizure for the reasons set
forth above.

34. Agents and TFO's in Baltimore further request that the Court direct Sprint to
disclose to the government any information described in Attachment B that is within the
possession, custody, or control of AT&T. Agents and TFO's in Baltimore also request that the
Court direct Sprint to furnish the government all information, facilities, and technical assistance
necessary to accomplish the collection of the information described in Attachment B
unobtrusively and with a minimum of interference with Sprint's services, including by initiating
a signal to determine the location of the **SUBJECT PHONE** on Sprint's network or with such
other reference points as may be reasonably available, and at such intervals and times directed by
the government. The government shall reasonably compensate Sprint Mobility for reasonable
expenses incurred in furnishing such facilities or assistance.

35. Agents and TFO's in Baltimore further request that the Court authorize execution
of the warrant at any time of day or night, owing to the potential need to locate **the SUBJECT
PHONE** outside of daytime hours. Agents and TFO's in Baltimore further request that the Court
order that all papers in support of this application, including the affidavit and search warrant, be
sealed until further order of the Court. These documents discuss an ongoing criminal

17

investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Task Force Officer Brandon Bond
Drug Enforcement Administration

Sworn and subscribed before me on August 6, 2013.

Nancy Johnson
United States Magistrate Judge

18

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(786) 503-3482**, (**"SUBJECT PHONE"**), whose service provider is AT & T, a wireless telephone service provider headquartered at 308 S Akard St., 14th Floor M, Dallas TX 75202.   Information about the location of **SUBJECT PHONE** that is within the possession, custody, or control of AT & T including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be seized**

All information about the location of the **SUBJECT PHONE** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **SUBJECT PHONE"** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within its possession, custody, or control, AT & T and any other service provider who provides service to **SUBJECT PHONE** during the time period set forth in the tracking warrant are required to disclose the Location Information to the government. In addition, AT & T and any other service provider who provides service to **SUBJECT PHONE** during the time period set forth in the tracking warrant must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT & T Communications services, including by initiating a signal to determine the location of the **SUBJECT PHONE** on AT & T network or the network any other service provider who provides service to **SUBJECT PHONE** during the time period set forth in the tracking warrant, with such other reference points as may be reasonably available, and at such intervals and times directed by the government. AT & T and its agents and employees, any other service provider

2

who provides service to **SUBJECT PHONE** during the time period set forth in the tracking warrant and its agents and employees shall not disclose the existence of this tracking warrant or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the Court. The government shall compensate AT & T and any other service provider who provides service to **SUBJECT PHONE** during the time period set forth in the tracking warrant for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure, and AT & T Communications shall provide such information. *See* 18 U.S.C. § 3103a(b)(2).

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

# UNITED STATES DISTRICT COURT

**SOUTHERN** _____ District of _____ **TEXAS**

**UNITED STATES OF AMERICA**     **HOUSTON DIVISION**

v.

**PREMISES KNOWN AND DESCRIBED AS:**

Cellular Telephone bearing number
786-503-3482, IMSI 310410556710679

**WARRANT FOR PRECISE
LOCATION INFORMATION**

Case Number:   H   13-778 M

TO:   DEA Task Force Officer Brandon Bond   and any Authorized Officer of the United States

Affidavit having been made before me to obtain precise location information concerning the
following mobile telephone:

Cellular Telephone bearing number 786-503-3482, IMSI 310410556710679

and as I am satisfied that there is good cause for the acquisition of precise location information
concerning  the cellular telephone  as described above.

YOU ARE HEREBY COMMANDED to acquire precise location data concerning the Target
Device named above for a period of 30 days starting within 10 calendar days of the date of this
order, during any time of day; to return this warrant to the U.S. Magistrate Judge designated in
this warrant within 10 calendar days after the execution of the warrant has ended; and, pursuant
to 18 U.S.C. § 3103a(b)(3), authorizing delayed notification, to serve notice within 30 days after
the monitoring period authorized by the warrant has ended.

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, Clerk of Court
By _Kathleen Murphy_
                                    Deputy Clerk

Aug 6 2013 @ 1:50 pm   at

Date and Time Issued

Nancy Johnson, United States Magistrate Judge

Name and Title of Judge

Houston, TX
City and State

Signature of Judge

| **RETURN** | **Case Number:** | H  13 - 778 M |
|---|---|---|

DATE AND TIME ACQUISITION OF LOCATION DATA FIRST INITITATED AND PERIOD DURING WHICH IT WAS ACQUIRED:

**CERTIFICATION**

I swear that this information contained on this return is true and accurate:

_____

Subscribed, sworn to, and returned before me this date.

_____          _____

Signature of Judge                                            Date