| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | IN THE UNITED STATES |
| *Plaintiff* | * | DISTRICT COURT FOR |
| v. | * | THE DISTRICT OF |
| RICHARD BYRD, | * | MARYLAND |
| *Defendant* | * | CRIMINAL NO.: RDB-14-0186 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S RESPONSE TO GOVERNMENT'S CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS

Now comes the Defendant, Richard Byrd, by and through his attorney, David R. Solomon, Esquire, and hereby submits the following Response to Government's Consolidated Memorandum of Law in Opposition to Defendant's Motions, and states, as follows:

**I.  The Search of 5346 East Royal Palm, Scottsdale, AZ, on March 7, 2011 Pursuant to a Search Warrant Was Illegal and The Evidence Obtained Is Inadmissible.**

The Government argues that Byrd does not have standing to contest the search of the residence because he lacks a reasonable expectation of privacy.  (Dkt 314).  In Smith v. Maryland, 442 U.S. 735, 740 (1979), the Court outlined the following two relevant questions regarding expectation of privacy are: whether there is a subjective expectation of privacy and whether the expectation, "viewed objectively, is 'justifiable' under the circumstances."  (omitted citations).  Byrd satisfies both of these inquires.

The Government bases its argument on the fact that the house was leased under the alias of his wife, Stacey Stewart.  (Dkt 314).  However, they fail to mention that the same affidavit referenced in their argument also mentions Byrd's previous presence at the house, indicia of his presence through trash runs, references to the house as the residence of Stacey and Byrd, and the connection of the house to Byrd's alleged drug trafficking organization (DTO) as part of the

basis for why the warrant was valid.  The Government's argument suggests that the reason that the warrant was granted was due to the nexus with Byrd yet, ironically, the Government now argues that Byrd should have no standing because the residence has no connection to him.

The sole fact that Byrd does not have his name on any legal documents that pertain to the property, such as the lease, does not eliminate his expectation of privacy.  In Ford v. State, 184 Md. App. 535 (2009), the Court held that "the legitimacy of a defendant's privacy expectations in the search premises will not always turn upon whether his name appears on the deed, lease, or certificate of registration."  *Id*. at 554 (Holding that the defendant had standing in the vehicle of his long-term girlfriend).  As such, the Government's argument that standing I slacking because Byrd does not have his name on any of the legal papers pertaining to the house does not preclude Byrd from establishing standing.

Byrd possesses a subjective expectation of privacy as evidenced by in the presence of Byrd's effects discovered at the subject premises.  Byrd also possesses an objective expectation of privacy.  The fact that the house was leased to his wife, the proof of his presence at the location, and other indicia of occupancy provides ample evidence of Byrd's objective expectation.  Furthermore, Byrd was seen by the affiants at the property and trash runs confirmed Byrd's frequent presence at the property.  Additionally, as Stacey Stewart's husband, the property constituted marital property and, as such, Byrd had an equal interest in the property (The funds used to maintain the property were most likely paid through their marital funds).  *See* United States v. Fernandez, 430 F. Supp. 794, 798 (N.D. Cal. 1976) (Holding that the defendant had a reasonable expectation of privacy in a residence when he frequently visited, made contributions to the rent, maintained residency, and was free to come and go); Bernadyn v. State, 390 Md. 1 (2005) (discussing that medical bills addressed to the defendant could indicate

occupancy); Jones v. United States, 362 U.S. 257 (1960) (Holding that Jones had standing to challenge a search of his friend's apartment in as much as Jones was given use of the apartment and a key).

While Byrd may not claim this house as his primary residence, it does not mean that he did not reside at this location from time to time. The fact that Byrd was seen at the location, received mail and disposed of trash at the location, along with the indisputable fact that his wife and children lived at this location, are sufficient to show that Byrd had a legitimate and reasonable expectation of privacy in the residence. *See* Rakas v. Illinois, 439 U.S.128, 143 (1978); Minnesota v. Carter, 525 U.S. 83, 89 (1998) (Holding that a person "may have a legitimate expectation of privacy in the house of someone else."). In Minnesota v. Carter, 525 U.S. 83, 90 (1998), the Court declined to find that there was a legitimate expectation of privacy in an apartment which was "simply a place to do business" without any more connection. *See also* Fernandez, 430 F. Supp. 794 (N.D. Cal. 1976). Byrd did not use the subject house as a place of business and he had a legal relationship with all well-established residents of the house. Even if one were to argue that the home was not Byrd's primary residence, the fact that property of Byrd was found along with indicia of occupancy allows Byrd to raise a Fourth Amendment interest. *See* Venner v. State, 279 Md. 47, 51 (1977) ("What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area.") (quoting Hoffa v. United States, 385 U.S. 293, 301 (1966)).

## II.  The Search of Storage Unit A331 at 4028 N. 7th Street, Phoenix, AZ on March 7, 2011 Was Illegal and The Evidence Recovered Is Inadmissible.

Again, the Government maintains that without Byrd's name on the unit, he does not have standing to contest the search. (Dkt 314). Again, because Stacey Stewart's name was on the unit

and because of the spousal relationship Byrd has standing. In its memorandum, the Government has cited United States v. Johnson, 584 F.3d 995 (10th Cir. 2009), where the Court held that that defendant only lacked standing because his girlfriend used identification stolen from someone to register for the storage unit. (Dkt 314). This presented legal dangers and problems for the victim of the identity theft. Presently, the same problem does not exist. Stacie used her real name but gave a fictitious address.

The fact that Ms. Stewart registered the unit under a different address does not minimize her expectation of privacy in that unit. *See* United States v. Domenech, 623 F.3d 325 (6th Cir 2010) (Holding that use of an alias and subsequent invalid registration at a hotel did not eliminate defendant's expectation of privacy in hotel room); United States v. Watson, 950 F.2d 505 (8th Cir. 1991) (Holding that Watson had standing in a residence under a fictitious name because he resided there and had control over it). Byrd is further connected to the unit because his wife listed him under the alias of Robert Smith as one of the people who was allowed access to it. As Byrd's wife, Ms. Stewart gave Byrd access to the unit and extended to him a shared expectation of the privacy. *See generally* Minnesota v. Olson, 495 U.S. 91, 99 (1990). Also found in the unit was property of Byrd, including pieces in the name of Robert Smith, a known alias of Byrd (Dkt 314) further buttressing the argument that Byrd had a subjective expectation of privacy in the property found in the "constitutionally protected area" of the unit. *See* Venner, 279 Md. 47 (1977). On the basis of the foregoing, Byrd had a reasonable expectation of privacy.

### III. The May 8, 2014 Search of 12315 Queens River Drive, Houston, TX Was Illegal and The Evidence Is Inadmissible.

Byrd maintains he had a reasonable expectation of privacy in Kimberly Reid's house and standing to challenge the search of the same. Byrd had an objective and subjective expectation

4

of privacy as required by Smith, 442 U.S. 735 (1979). Reid was an alleged co-conspirator in Byrd's alleged DTO. The utilities in this residence were in the name of Ebunoluwa Akinola, a known alias of Byrd. It is without dispute that law enforcement knew of this alias prior to the execution of the search warrant on Reid's house (Byrd was arrested on April 29, 2014, during which he possessed identification under that alias). Byrd's legal obligation to pay utilities at the residence conferred on him a reasonable expectation of privacy in that residence. *See* Venner, 279 Md. at 53 (legal responsibility to pay utilities conferred on the defendant an expectation of privacy in trash seized by the State). Byrd's Arizona license and a copy of his Arizona indictment were found during a search of the subject property. Ergo, Byrd enjoyed an expectation of privacy in the house.

### IV. The July 30, 2012 Search of 8941 W. Montevista Road, Phoenix, AZ Was Illegal and The Evidence Recovered Is Inadmissible.

Byrd maintains he had a reasonable expectation of privacy in the premises. He was present at the time of the search. Additionally, the police report records that Byrd's brother, Rasan Byrd, stated that he resided at the residence with the permission of their uncle, the homeowner. Byrd's brother maintained control over the subject location in the absence of their uncle. As such, his brother enjoyed an expectation of privacy in the house as an overnight guest. Minnesota v. Olson, 495 U.S. 91 (1990) (Holding that the status as an overnight guest alone, is enough to show an expectation of privacy).

Byrd asserts that he has an expectation of privacy as a social guest in the house. In United States v. Gary, 491 F.3d 138 (4th Cir. 2007), the Court stated, "a social host often shares not only his home but also his privacy with his guest" and that "many social guests entrust their hosts with the safety and security of both their persons and their belongings." *Id*. at 146 (citing

to <u>Olson</u>, 495 U.S. at 99).  When Byrd entered the subject premises, he placed himself "within a constitutionally protected area" and reasonably expected to be free from intrusion.  <u>Venner</u>, 279 Md. at 51 (1977); <u>Olson</u>, 495 U.S. at 99 (1990) ("a temporary private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable") (quoting <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).  Byrd possessed a reasonable subjective and objective expectation of privacy in the subject premises and maintains standing.

Byrd challenges the search of the subject premise on the grounds that the protective sweep done prior to the execution of the search warrant was improper.  A protective sweep is conducted to "dispel the reasonable suspicion of danger" for the purpose of officer safety. <u>United States v. Green</u>, 599 F.3d 360, 367 (4th Cir. 2010).  There was no suggestion that officer safety was implicated or at risk to justify a protective sweep.  A common reason that officers feel the need to conduct a protective sweep is when there is a possibility that a third party may be present within the location.  <u>Maryland v. Buie</u>, 494 U.S. 325, 334 (1990).  Such a scenario did not exist in the present case.  In the police report, it was stated that officers saw only one car in the driveway prior to approaching the house suggesting that there was no apparent reason to be suspicious of the presence of multiple people therein.  Upon being arrested, Rasan Byrd, told officers, when asked, that the only other occupant in the house was the defendant.  The officers called out to Byrd and he came out as requested and reiterated that no one else was inside of the house.

On the basis of the foregoing, there existed no reasonable suspicion of danger after Byrd was detained.  All facts pointed to the absence of a third party.  Furthermore, there was no prior report of unseemly noise emanating from the house or any other basis for suspicion that there

6

was a third party or other danger lurking within the premises.  Despite these facts, officers still proceeded to conduct a protective sweep of the subject premises.

The fruits of this illegal search formed the basis for a subsequent search warrant thereby constituting "fruits of the poisonous tree."  Wong Sun v. United States, 371 U.S. 471, 488 (1963).  By extension, having conducted a protective sweep wholly unsupported by probable cause precluded the possibility that law enforcement can rely on the good faith doctrine to salvage their search of the premises.  Therefore, the evidence should be suppressed.

## V.     The Search on April 29, 2014 of Byrd's Wallet Was Illegal and The Evidence Recovered Is Inadmissible.

Byrd maintains that he did not give consent to police to search his wallet.  The Government cites to several cases in support of the proposition that Byrd impliedly gave consent and/or the search was pursuant to a lawful arrest.  (Dkt 314).  Neither of these arguments applies to the present fact pattern.

The officers search fell outside the reasonable parameters of Byrd's consent.  The Government cites to United States v. Banks, 482 F.3d 733 (4th Cir. 2007).  (Dkt 314).  This case is inapplicable.  In Banks, after the defendant was arrested an inventory was done after the defendant requested that he be allowed to have his bags.  The Court held that for safety reasons, it was reasonable that the detective inventory the bags as well as to make sure nothing illegal was contained in the bags.  In this case, Byrd simply requested medicine from the bag.  The resulting wholesale search of the entire bag was therefore unlawful and outside of the reasonable parameters of Byrd's consent.  The Government also cites to United States v. Hylton and United States v. Williams but the present search is distinguishable from those cases.  (Dkt 314).  In

7

Hylton, 349 F.3d 781 (4th Cir. 2003), the police had a broad concern for the safety of the woman and her children in her request to get into her apartment where her upset boyfriend was present with a possible gun. Here, the same broad concern did not exist in Byrd's request for his medicine. In Williams, 106 F.3d 1173 (4th Cir. 1997), the fact pattern involved the search of a package sent to an informant. Here, Byrd did not send his bag to anyone. These cases are inapplicable.

Byrd's consent was explicit, clear and limited. Byrd's request for his medicine implicitly consented that the officers search his bag only in places which physically could have contained medicine. Sifrit v. State, 383 Md. 77 (2004). The resulting search of Byrd's wallet, in which the Government seized a Louisiana identification card and prepaid American Express card, clearly falls outside of the objectively reasonable scope of the given consent. The items within the wallet also were not "immediately apparent" to the officer during his search for Byrd's medicine. *See* United States v. Davis, 690 F.3d 226, 233 (4th Cir. 2012). Based on the foregoing, the Government exceeded the scope of Byrd's consent and any evidence obtained therefore should be excluded.

The search of Byrd's wallet was also not pursuant to a valid arrest. A search of the area or containers within the immediate control of the arrestee immediately prior to or after an arrest is a well-established exception to the Fourth Amendment's warrant requirement. Chimel v. California, 395 U.S. 752, 762-63 (1969). The reasons for such search must be based on concerns for officer safety or evidence destruction. *Id*. The Court also requires that there is no more than a "reasonable delay" in the execution of the search. United States v. Nelson, 102 F.3d 1344, 1346-47 (4th Cir. 1996). The subject search was performed after Byrd was arrested and left the scene. As such, there was no concern for officer safety nor suspicion that the evidence would be

imminently destroyed.  Thornton v. United States, 541 U.S. 615, 632 (2004).  Additionally, Byrd was not arrested in close proximity to the bag.  When Byrd was arrested, he was outside the car where the bag was located.  But for Byrd's request, the police wouldn't have been alerted to its presence in the vehicle.

On the basis of the foregoing, the search of Byrd's wallet was illegal and the evidence obtained is inadmissible and should be suppressed.

**VI.    The Search on June 9, 2010 in Avondale, AZ of The Rental Enterprise Truck in Which Byrd Was Riding Was Illegal and The Evidence Gathered During That Stop Is Inadmissible.**

The search of the rental vehicle was a "substantial intrusion on [Byrd's] privacy." Arizona v. Gant, 556 U.S. 332, 347 (2009).  Under Arizona v. Gant, 556 U.S. 332 (2009), the Court held that it was unlawful to search a vehicle when there was no reason to believe that the defendant had access to the vehicle and no reason to suspect that there was evidence of the offense he was arrested for within the vehicle.  The defendant in that case was already handcuffed and placed in the police car at the time of the search.  Id.  At the time, there was no access to the contents of the vehicle.  Because the defendant was arrested for driving on a suspended license there was no reason to believe that evidence of that offense would be present in the vehicle.  Id.  The court concluded that, "When these justifications are absent, a search of an arrestee's vehicle be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." Id. at 351.  When arrested, Byrd was outside the truck.  Additionally, he was arrested for a suspended license.  Without a warrant, the search of the rental truck was unreasonable.

Because both occupants had suspended licenses, the Government argues that the search of the vehicle was conducted as a proper inventory search. (Dkt 314). The Defendant maintains there were less intrusive means of removing the vehicle from the roadway. The truck did not need to be towed as Byrd or his friend could have called someone to pick up the truck and return it to Enterprise. The Government has failed to describe the basis and procedures for an inventory search in order to prove that the search was valid. In United States v. Brown, 787 F.2d 929, 931-32 (4th Cir. 1986), the Court held that as a predicate to impounding and inventorying a vehicle, the prosecution must first prove that they had lawful custody of the vehicle. The absence of lawful custody renders a subsequent inventory search unlawful. In order to establish lawful custody, the Government must provide evidence that the custody of the vehicle was based on standard procedures and not on suspicion of criminal activity. Id. (citing Colorado v. Bertine, 479 U.S. 367, 375 (1987)). In the absence of establishing that law enforcement explored alternative methods of dealing with the vehicle, it would seem that the subsequent inventory of it was a subterfuge to rummage through the vehicle for incriminating evidence. The law enforcement interests do not justify the violation of Byrd's Fourth Amendment right to privacy. Arizona, 556 U.S. at 349; See Lee v. State, 139 Md. App. 79, 84 (2001) ("Preservation of the rights guaranteed by the Constitution is of greater moment than the detection of any crime or the punishment of any single offender."); Briscoe v. State, 422 Md. 384, 396 (2011) (holding that without evidence of a policy, it is impossible to distinguish between a valid inventory search and a general investigatory search).

It is the prosecution's burden to overcome the presumption of unreasonableness in warrantless searches. Welsh v. Wisocnsin, 466 U.S. 740, 750 (1984); Payton v. New York, 445 U.S. 573, 586-87 (1980). The Government does not dispute the lack of a warrant and has not

10

shown that search of the vehicle was conducted pursuant to an exception to the warrant requirement.  Consequently, the search is presumed to be unreasonable and the evidence obtained pursuant to the search is inadmissible.

**VII.    The Search of Byrd's Vehicle Following The February 17, 2011 "Sting Operation" in Chandler, AZ Was Illegal and the Evidence Obtained From It Is Inadmissible.**

The search of Byrd's vehicle was a violation of Byrd's Fourth Amendment rights.  The Government's argument relies on the fact that the search of Byrd's vehicle was done as an inventory search.  (Dkt 314).  However, the Government fails to elaborate enough to prove that the search was a valid inventory search.  The Government must first prove that they had lawful custody of the vehicle prior to the impound of the vehicle and its subsequent inventory search.  Brown, 787 F.2d at 931-32 (4th Cir. 1986).  The absence of lawful custody renders the inventory search unlawful.  In order to establish lawful custody, the Government must provide evidence that the custody of the vehicle was based on standard police procedures.  *Id*. (citing Colorado v. Bertine, 479 U.S. 367, 375 (1987)).

The Government must prove that they had a proper basis to seize the vehicle as well as proof of a valid inventory search.  Warrantless searches carry the presumption of unreasonableness and it is the prosecution's burden to overcome that presumption.  Welsh v. Wisocnsin, 466 U.S. 740, 750 (1984); Payton v. New York, 445 U.S. 573, 586-87 (1980).  The Government's declaration that it was an inventory search and that it complied with Arizona police departmental procedures is insufficient to overcome this burden.  (Dkt 314); *See* Briscoe, 422 Md. 384, 396 (2011) (holding that without evidence of a policy, it is impossible to distinguish between a valid inventory search and a general investigatory search); *See* Sellman v.

11

State, 152 Md. App. 1, 23 (2003) ("there must be proof that the search was carried out pursuant to an existing policy regulating police inventory searches…regardless of whether the total circumstances seem more consistent with the search's having been performed for a community caretaking purpose than for an investigatory purpose."). The Court has held that more evidence is required in order to deter the police from conducting searches for the purpose of rummaging through one's property for criminal evidence. *See* Florida v. Wells, 495 U.S. 1, 4 (1990). In the absence of evidence of a policy that permits, authorizes, or otherwise regulates a search, the search is held to be "not 'sufficiently regulated to satisfy the Fourth Amendment' to qualify as an inventory search." Briscoe, 422 Md. at 400 (quoting Wells, 495 U.S. at 5)). The Government has yet to provide proof of a valid inventory search, therefore, the warrantless search of Byrd's vehicle is presumed to be unreasonable and any evidence obtained from the search is inadmissible.

### VIII. Law Enforcement's Use Of GPS Tracking Devices Was Illegal and Evidence Obtained Pursuant to The Tracking of 786-503-3482 is Inadmissible.

The Government almost exclusively relies on the opinion in United States v Gibbs, 547 Fed. Appx. 174 (4th Cir. 2013), for its argument against the suppression of the GPS on 786-503-3482. (Dkt 314). However, this case is inapposite. In Gibbs, the warrant for tracking the defendant's phone stemmed from his known involvement and commission in a confirmed drug transaction with another well-suspected drug trafficker. Additionally, the warrant was granted for thirty (30) days, providing another basis for the Court's conclusion that the Government agents, "were not seeking to go on a fishing expedition." In the present case, the warrant contained multiple allegations of mere suspicious activity. Lastly, the Government did not seek to use less intrusive measures before resorting to the GPS tracking device. In conclusion, the

warrant should not have been granted and tracking information obtained pursuant to the warrant is inadmissible.

## CONCLUSION

WHEREFORE, the Defendant respectfully requests that the Honorable Court decide on the motions consistent with the positions of the Defendant as set forth herein.

>Respectfully Submitted,
>
>/s/ David R. Solomon____
>David R. Solomon, Esquire
>Law Offices of David R. Solomon, LLC
>201 N. Charles Street, Suite 1717
>Baltimore, Maryland 21201
>(410) 244-8822
>Fax: (410) 625-1028
>*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of August, 2016, I electronically filed the Defendant's Response to Government's Consolidated Memorandum of Law in Opposition to Defendant's Motions with the Clerk of Court via CM/ECF and thereby served all counsel of record.

>/s/ David R. Solomon____
>David R. Solomon, Esquire