UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>       Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD BYRD, )<br>       Defendant. ) | NO. 1:14-CR-00186-RDB-1 |

## CORRECTED MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Defendant, through undersigned counsel, hereby respectfully moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Defendant is in federal custody and is presently incarcerated at the Chesapeake Detention Facility in Baltimore, Maryland. On November 2, 2016, the Defendant, pursuant to a plea agreement, pleaded guilty to an indictment charging him with a conspiracy to "distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine . . . and one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana," in violation of 18 U.S.C. § 846, and to "engage in monetary

1

transactions . . . in a criminally derived property that was of a value greater than $10,000" which was derived from "the distribution of controlled substances" in violation of 18 U.S.C. §§ 1956(h) and 1957. Pursuant to the plea agreement which was entered under Fed. R. Crim. P. Rule 11(c)(1)(C), this Court sentenced defendant to a term of imprisonment of 312 months on Count 1 and 120 months on count two to be served concurrently. The Court also required the Defendant to serve ten years on supervised release, and ordered a special assessment of $200. Although the plea agreement contemplated a waiver of all appellate rights, save for those that cannot be constitutionally waived, the Defendant appealed his conviction and his sentence, and his appeal was denied on August 9, 2018. *See United States v. Byrd*, No. 17–4086 (4th Cir. Aug. 9, 2018). No petition for certiorari was filed and this is defendant's first § 2255 motion. Defendant seeks this Court to set aside his plea and his sentence on the grounds that he was denied counsel of his choice and effective assistance of counsel, all in violation of the Sixth Amendment to the United States Constitution.

## **BACKGROUND**

Defendant Richard Byrd was indicted on April 17, 2014, and charged with conspiracy to "distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine . . . and

one thousand kilograms or more of a mixture or substance containing a detectable amount of marijuana," both in violation of 21 U.S.C. §§ 841(a)(1) and 846. On July 24 of the same year, the Government filed first superseding indictment further alleging that the Defendant conspired to "engage in monetary transactions . . . in a criminally derived property that was of a value greater than $10,000" which was derived from "the distribution of controlled substances" in violation of 18 U.S.C. §§ 1956(h) and 1957. The Government also sought forfeiture of assets pursuant to 21 U.S.C. §§ 853(a) and 982(a)(1). On October 20, 2015, the Government filed a second superseding indictment. The second superseding indictment mirrored the first superseding indictment, except that it was more detailed with respect to assets to be seized. The Defendant and the Government entered into a plea agreement on November 2, 2016 whereby Mr. Byrd agreed to plead guilty to the indictment in exchange for sentences of 26 years on Count 1, and 10 years on Count 2, to be served concurrently. Mr. Byrd formally entered his plea on the same day. The sentencing hearing was held on February 9, 2017 and final judgment was entered on the same day.

Mr. Byrd's timely appeal was considered by the Fourth Circuit which handed down its judgment on August 9, 2018. The Fourth Circuit affirmed in part and dismissed in part. As relevant to the present motion, the Fourth Circuit noted that the record at that time did not *conclusively* demonstrate that Mr. Byrd's trial

counsel was ineffective. Under the governing Fourth Circuit precedent, *see United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014), in cases where the record on direct appeal does not conclusively demonstrate counsel's deficient performance, the issue must be litigated under 28 U.S.C. § 2255. This is the purpose of the present motion.

Because defendant was denied adequate assistance of counsel or the counsel of his choice, his guilty plea, conviction, and sentence must be set aside. The present motion is timely because the Defendant's conviction became final less than one year before the filing of this motion. *See* 28 U.S.C. § 2255(6) ¶1.

## ARGUMENT

The Defendant acknowledges that as part of his guilty plea he waived a number of rights, including the right to appeal and the right to certain forms of post–conviction relief. However, it is well established that "a waiver of the right to appeal may not be knowing and voluntary if tainted by the advice of constitutionally ineffective trial counsel." *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005) (citing *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993)).

**I.      Ineffective Assistance of Counsel by David R. Solomon, Esq.**

*A.      Attorney Solomon Failed to Advise the Defendant of a Plea Bargain Offer*

4

It is well settled that "[t]he Sixth Amendment right to the effective assistance of counsel extends to the 'critical stage' of plea bargaining." *United States v. Aguiar*, 894 F.3d 351, 357 (D.C. Cir. 2018) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012); *see also Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). A fundamental requirement of effective assistance of counsel at the plea negotiation stage is advising the client that an offer has been made. For example, the American Bar Association guidelines require the "[d]efense counsel ... [to] promptly communicate and explain to the defendant *all* plea offers made by the prosecuting attorney." ABA Crim. Justice Standard 14–3.2 (emphasis added). As the Second Circuit explained "there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999). Failure to advise the client of a plea offer "is in effect a *per* se violation of the" attorney's duty to effectively represent his client. *Gaskin v. United States*, 591 F. Supp. 2d 247, 254 (W.D.N.Y. 2008), *aff'd sub nom. United States v. Cruickshank*, 378 F. App'x 82 (2d Cir. 2010).

While Mr. Byrd was represented by David R. Solomon, Esq. the Government made an oral representation that in exchange for a guilty plea it would recommend a term of imprisonment of no more than 22 years, in contrast to the

5

later–presented (and accepted) plea bargain which resulted in a term of incarceration of 26 years. This offer was never conveyed to the Defendant. When the undersigned counsel requested Attorney Solomon to confirm that the offer was relayed to Mr. Byrd and to provide any documents or contemporaneous notes confirming this fact, Attorney Solomon was unable to do so. Attorney Solomon's failure to advise his client of the Government's offer violated Mr. Byrd's Sixth Amendment right to effective assistance of counsel. *See* U.S. Const. am. VI.

It is true that under the governing Supreme Court precedent in order to obtain relief under the ineffective assistance of counsel claim the Defendant must show that the deficiency in performance was prejudicial to the Defendant's interests. *See Strickland v. Washington*, 466 U.S. 668, 693 (1984). In the context of an attorney's failure to advise the client of a plea offer, a Defendant "must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it ....'" *Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013) (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

There is no reason to believe that Mr. Byrd would not have accepted a plea agreement which called on him to serve a 22 year term of incarceration when he

6

accepted a plea that required him to serve a longer (26 years) term of imprisonment. This case is unlike *Merzbacher* where a state prisoner serving multiple life sentences argued on *habeas* that he was denied effective assistance of counsel because the counsel failed to advise him of a plea offer which would have resulted in a sentence of only 10 years. In that case, the Fourth Circuit concluded that while failure to inform the defendant of the offer was indeed ineffective assistance, the defendant suffered no prejudice because at no point was he willing to enter any plea of guilty and maintained his innocence through trial and was unwilling to make any admissions in light of co–pending civil litigation. *Id.* at 366–68.

In contrast, in the present case, Mr. Byrd entered a plea of guilty and admitted the underlying facts of his offense. To be sure, Mr. Byrd filed a variety of discovery and suppression motions, but attempting to win a case by making sure the government relies only on legally obtained evidence and assuring oneself that the government has sufficient evidence to convict is not the same as denying having done the act, something that Mr. Byrd, unlike the defendant in *Merzbacher* did not do.

Furthermore, although the Court always retains the authority to reject any plea agreement, *see* Fed. R. Crim. P. 11(c)(3), it rarely exercises such an option

and there is no specific reason to believe that it would have rejected a negotiated plea agreement in this case which would have still called for a significant period of incarceration.

### B. *Attorney Solomon Had a Conflict of Interest*

As further evidence of Attorney Solomon's ineffective assistance was his failure to zealously represent Mr. Byrd's interests during the time he served as Mr. Byrd's attorney. Indeed, instead of attempting to achieve the best possible outcome for his client, Attorney Solomon boasted that he is going to celebrate when Mr. Byrd gets put away. The Supreme Court has held that in order to be constitutionally deficient attorney's representation must fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Neither *Strickland* nor its progeny have given an exhaustive list of failures that would meet that standard. *See id.* ("More specific guidelines are not appropriate. The Sixth Amendment refers simply to 'counsel,' not specifying particular requirements of effective assistance."). The proper question is therefore whether the attorney has met "the legal profession's ... standards" and "fulfill[ed] the role in the adversary process that the Amendment envisions." *Id.*

The *sine que non* of an attorney–client relationship is "a duty of loyalty." *Id.* Certainly, rooting against the client is a violation of such a duty. Although the

8

mere fact that an attorney dislikes the client is insufficient to show that he breached a duty of loyalty, *see Hale v. Gibson*, 227 F.3d 1298, 1313 (10th Cir. 2000), where the "animosity affected counsel's performance," *Davis v. Chapman*, No. 2:18-CV-10391, 2019 WL 1923184, at *13 (E.D. Mich. Apr. 30, 2019), 2019 WL 2419017 (E.D. Mich. June 7, 2019), the counsel's assistance is deemed ineffective. In other words, where "the interests of counsel and defendant [are] divergent ... such that the attorney has an interest in the outcome of the particular case at issue that is adverse to that of the defendant," a conflict of interest (and therefore a breach of duty of loyalty to the client) is apparent. *Hale*, 227 F.3d at 1313. When a Defendant makes a showing that his interest and that of his counsel "'diverged with respect to a material factual or legal issue or to a course of action,' ... prejudice is presumed and [the Defendant is] entitled to habeas relief." *Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir.1998) (*en banc*) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3, (Marshall, J., concurring in part and dissenting in part)). It is hard to imagine a more clear–cut divergence of interest than a client attempting to stay out of prison and an attorney hoping that he will remain there forever. This conflict, borne out of antipathy to Mr. Byrd, may well be the reason why Attorney Solomon failed to apprise his then–client of the plea bargain offer. Thus, not only can this Court *presume* prejudice to Mr. Byrd, *see* Gilbert, 134 F.3d at 652, but such prejudice can be readily shown on the facts of this case.

9

Given that Mr. Byrd's subsequent and more disadvantageous plea was a direct result of Attorney Solomon's dereliction of duty with respect to his then-client, this Court should set aside that plea and the conviction and sentence that followed. *See id.*

## II. Ineffective Assistance of Counsel by Michael E. Lawlor, Esq.

Mr. Byrd's next court-appointed counsel also failed to discharge his duties in conformance with the minimally required standards of competent representation. Furthermore, as has been discovered after Mr. Byrd's conviction became final, Attorney Lawlor also had a significant conflict of interest which precluded him from adequately representing the Defendant.

*A. Attorney Lawlor Failed to Prepare for Trial and therefore Failed to Render Effective Assistance with Respect to the Plea Agreement*

Attorney Lawlor represented the Defendant when he entered into his plea agreement. Although this Court found that the Defendant entered into the agreement and waived his rights knowingly and voluntarily, in practice he had little choice but to do so. On several occasions in the days preceding the re-arraignment, Attorney Lawlor met with the Defendant in order to convince him to accept the Government's (now-less favorable) plea offer. One of the main arguments Attorney Lawlor used was his own lack of preparation for trial.

10

Attorney Lawlor impressed on Mr. Byrd that going to trial would be highly disadvantageous not just because of the significant evidence that the Government has compiled against the Defendant, but because he failed to properly prepare for the impending trial where he would be required to cross-examine and challenge the Government's witnesses.

Although the Sixth Amendment does not guarantee that a defendant receives the most effective representation or the most thorough prepared attorney under the sun, it does "guarantee a person accused of a crime the right to the aid of a lawyer *in preparing* and presenting his defense." *Strickland*, 466 U.S. at 706 (Marshall, J., dissenting). Almost by definition, an unprepared counsel cannot meet "the legal profession's ... standards" or to "fulfill the role in the adversary process that the [Sixth] Amendment envisions." *Strickland*, 466 U.S. at 688. The adversarial system depends on the counsel being able to adequately challenge the Government's case. *See id.* at 685 ("The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled.") (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275 (1942)). This is why the Model Rules of Professional Conduct (and their Maryland counterpart) state that

11

"[c]ompetent representation requires ... preparation reasonably necessary for the representation." Model R. Prof. Conduct 1.1; Md. R. Atty. 19–301.1.

Attorney Lawlor's failure to adequately prepare was also prejudicial because it affected the Defendant's decision as to whether or not to accept the Government's plea bargain offer. As discussed *ante*, "[t]he Sixth Amendment right to the effective assistance of counsel extends to the 'critical stage' of plea bargaining." *Aguiar*, 894 F.3d at 357. Mr. Byrd was presented with an impossible choice, *viz.*, accept the plea on a "take it or leave it" basis or go to trial against the full power of the Federal Government while being represented by an unprepared attorney virtually guaranteeing a conviction even for a factually innocent person. *See, e.g.*, Tiffany R. Murphy, *"but I Still Haven't Found What I'm Looking for": The Supreme Court's Struggle Understanding Factual Investigations in Federal Habeas Corpus*, 18 U. Pa. J. Const. L. 1129, 1163 (2016) ("[T]he lack of competent counsel often leads to wrongful convictions."); Brandon L. Garrett, *Innocence, Harmless Error, and Federal Wrongful Conviction Law*, 2005 Wis. L. Rev. 35, 75 (2005) (noting that "one of the most intractable causes for wrongful convictions [is] the gross inadequacy of counsel provided to indigent defendants....").

To be sure, the evidence the Government complied against Byrd was

substantial, and the likelihood of conviction after trial quite high. Nonetheless, the choice whether or not to plead guilty belongs to the defendant and must be made voluntarily rather than as a result of ineffective assistance of counsel.

### B. *Attorney Lawlor Had a Conflict of Interest*

Throughout his representation of Mr. Byrd and unbeknownst to him, Attorney Lawlor labored under a significant conflict of interest. Specifically, Attorney Lawlor used his representation of Mr. Byrd to aid Mr. Kenneth W. Ravenell in Mr. Ravenell's own legal problems.

As has become clear over the past several years, the U.S. Government has been investigating Mr. Ravenell for various misdeeds. *See, e.g.*, Jessica Anderson & Justin Fenton, *DEA, IRS Raid the Offices of Baltimore Defense Attorney Kenneth Ravenell and the Firm Representing Him*, Baltimore Sun, June 20, 2019, *available at* https://bit.ly/312kLiE. Indeed, this investigation is likely the reason why Mr. Ravenell, who had up until then served as Mr. Byrd's attorney for a number of years, was precluded from representing him in the present case. In other words, it is likely that whatever the Government is investigating Mr. Ravenell for is, in some way related to the Government's case against the Defendant. From these facts, it appears likely that the Government would have sought Mr. Byrd's cooperation in its investigation of Mr. Ravenell. The

Government may well have been willing to offer Mr. Byrd a more advantageous plea agreement in exchange for such cooperation. However, instead of advising Mr. Byrd of these possibilities, Attorney Lawlor took the position that Mr. Byrd's and Mr. Ravenell's interests are aligned rather than in conflict and instead of advising Mr. Byrd on the best course of action for *his* case, shared with Mr. Ravenell's attorneys strategy and confidential information.

To be clear, the sharing of the strategy and confidential materials is not in and of itself prejudicial to Mr. Byrd. However, this behavior is *evidence* as to where Attorney Lawlor's loyalties were. Instead of zealously representing Mr. Byrd, Attorney Lawlor, against all common sense and against the requirements of the rules of professional conduct, sought to assist Mr. Ravenell's attempt to escape whatever consequences were in store for his own actions.

Furthermore, during the time of his representation of Mr. Byrd, Attorney Lawlor advised Mr. Byrd that accepting the Government's plea bargain offer is likely to bring its investigation of Mr. Ravenell to a close which would then permit Mr. Byrd to reclaim the various moneys held in escrow accounts by Mr. Ravenell's firm. These discussions occurred on more than one occasion and the importance of reducing the pressure on Mr. Ravenell was continuously stressed. In short, much like Attorney Lawlor's sharing the strategy and confidential, this behavior

illustrates that Attorney Lawlor was hopelessly conflicted in his representation of Mr. Byrd and was more concerned about protecting Mr. Ravenell's rather than his client's interests.

Given that the Mr. Byrd's interests and the interests that Attorney Lawlor was trying to protect "'diverged with respect to a material factual or legal issue or to a course of action,' ... prejudice is presumed and [the Defendant is] entitled to habeas relief." *Gilbert*, 134 F.3d at 652.

### III. <u>Denial of Counsel</u>

Because of Attorney Lawlor's lack of preparation for trial and his insistence that the *only* course of action is acceptance of the Government's plea bargain offer, Mr. Byrd sought to employ new counsel, Vandy Jamison, Jr., Esq. On November 1, 2016, Mr. Jamison attempted to enter an appearance on behalf of Mr. Byrd, but was precluded from doing so by this Court as detailed in Mr. Jamison's memorandum filed on February 8, 2017. ECF 408. The reason for Mr. Jamison never formally entering his appearance on behalf of Mr. Byrd is the Court's insistence that the trial that had been previously scheduled will proceed without any delays, despite Mr. Jamison's obvious need to familiarize himself with the record.

On the record as it then stood, this Court cannot be faulted for its ruling.

While "the Sixth Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice,' ... this 'fair opportunity' for the defendant to secure counsel of choice has limits." *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Specifically, the defendant's right to substitute counsel is tempered by the courts' need to adhere to "orderly judicial procedure and [to] exercise ... their inherent power to control the administration of justice." *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988), *overruled on other grounds by Fields v. Murray*, 49 F.3d 1024, 1025 (4th Cir. 1995) (*en banc*). Because this Court had previously granted two of Mr. Byrd's requests to substitute counsel, it is understandable that it viewed this latest attempt merely as a ploy to further delay trial and to obstruct "orderly judicial procedure and ... the administration of justice." *Id.*

However, what the Court did not take into account is that Mr. Byrd sought to change counsel yet again not in order to needlessly delay trial, but in order to avail himself of an assistance of an attorney who would actually be prepared for trial. As discussed *ante*, Attorney Lawlor whom Mr. Byrd was trying to replace with Mr. Jamison openly admitted to Mr. Byrd that he was unprepared to go to trial at the scheduled date. The Fourth Circuit has held that substitution of counsel has to be permitted when "the attorney/client conflict was so great that it had

z

resulted in total lack of communication preventing an adequate defense." *United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014) (quoting *Gallop*, 838 F.2d at 108). This is precisely what happened here. Attorney Lawlor consistently admitted to Mr. Byrd that he has failed to prepare any, much less adequate, defense for the upcoming trial. Indeed, this lack of preparation result not from conflict with the Defendant where the Defendant and his attorney refused to work with one another, but from Attorney Lawlor's own negligence. In these circumstances to deny Mr. Byrd a counsel who was willing to actually prepare for trial was a violation of his Sixth Amendment right to counsel.

## **CONCLUSION**

For the reasons stated above, defendant respectfully requests that this Court vacate his plea, conviction, and sentence and return the case to the posture it had on November 2, 2016.

Respectfully submitted,

_____
Gregory Dolin
Associate Professor of Law
University of Baltimore School of Law
1420 N. Charles Street
Baltimore, MD 21201
(410) 837–4610
gdolin@ubalt.edu

*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 was served by hand delivery on the 9th day of August, 2019, upon James G. Warwick, Assistant United States Attorney, United States Attorney's Office, 36 S Charles St, Baltimore, MD 21201.

_____
Gregory Dolin
Associate Professor of Law
University of Baltimore School of Law
1420 N. Charles Street
Baltimore, MD 21201
(410) 837–4610
gdolin@ubalt.edu

*Counsel for the Defendant*